No. 24-7157

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

EPOCH EVERLASTING PLAY, LLC AND AMAZON.COM SERVICES LLC,
DEFENDANTS/APPELLANTS,

v.

WILLIENE JACKSON-JONES
PLAINTIFF/APPELLEE.

On Appeal from the United States District Court
for the Northern District of California
No. 2:23-cv-02567-ODW
Hon. Otis D. Wright, II

**APPELLEE'S SUPPLEMENTAL EXCERPTS OF RECORD**
**VOLUME 1 of 1**

Gillian L. Wade
Sara D. Avila
Marc A. Castaneda
WADE KILPELA SLADE LLP
2450 Colorado Ave., Suite 100E,
Santa Monica, CA 90404
Telephone: (310) 667-7273

Justin R. Kaufman
Philip Kovnat
DURHAM, PITTARD &
SPALDING, LLP
505 Cerillos Rd., Ste. A209
Santa Fe, NM 87501
Telephone: (505) 986-0600

David F. Slade
WADE KILPELA SLADE LLP
1 Riverfront Place, Suite 745
North Little Rock, AR 72114
Telephone: (501) 417-6445

**INDEX**

| Document | File Date | USDC Dkt. No. | SER No. |
|---|---|---|---|
| **VOLUME 1** | | | |
| Exhibit D to Declaration of Gillian L. Wade, Esq. in Support of Plaintiff's Reply in Support of Motion for Class Certification *(Reply to Motion for Class Certification)* | 06/07/24 | 82-5 | 4-21 |
| Exhibit C to Declaration of Gillian L. Wade, Esq. in Support of Plaintiff's Reply in Support of Motion for Class Certification *(Reply to Motion for Class Certification)* | 06/07/24 | 82-4 | 22-25 |
| Exhibit A to Declaration of Gillian L. Wade, Esq. in Support of Plaintiff's Reply in Support of Motion for Class Certification *(Reply to Motion for Class Certification)* | 06/07/24 | 82-2 | 26-48 |
| Declaration of Alyssa Masterson in Support of Defendants' Opposition to Plaintiff's Motion for Class Certification *(Opposition to Motion for Class Certification)* | 05/17/24 | 81-5 | 49-51 |
| Declaration of Plaintiff Williene Jackson-Jones in Support of Plaintiffs' Motion for Class Certification *(Motion for Class Certification)* | 03/11/24 | 63-14 | 52-55 |
| Excerpt of Exhibit 3 to Declaration of Gillian L. Wade, Esq. in Support of Plaintiff's Motion for Class Certification [Defendant Epoch Everlasting Play, LLC's Objections/ Responses to Plaintiffs' Interrogatory No. 13] *(Motion for Class Certification)* | 03/11/24 | 63-5 | 56-63 |
| Declaration of Gillian L. Wade, Esq. in Support of Plaintiff's Motion for Class Certification *(Motion for Class Certification)* | 03/11/24 | 63-2 | 64-77 |
| Plaintiffs' Redacted Motion for Class Certification *(Motion for Class Certification)* | 03/11/24 | 63-1 | 78-113 |
| Notice of Removal by Defendant Epoch Everlasting Play, LLC | 04/05/23 | 1 | 114-217 |

Date:  March 7, 2025                    Respectfully submitted,

                                        **WADE KIIPELA SLADE LLP**
                                        Gillian L. Wade
                                        David F. Slade
                                        Sara D. Avila
                                        Marc A. Castaneda

                                        */s/ Gillian L. Wade*
                                        Gillian L. Wade

                                        *Attorneys for Plaintiff-Appellee Williene Jackson-Jones*

# EXHIBIT D

1              IN THE UNITED STATES DISTRICT COURT

2          FOR THE CENTRAL DISTRICT OF CALIFORNIA

3    --------------------------x

4    WILLIENE JACKSON-JONES, et  :

5    Al., on behalf of themselves:

6    And all others similarly    :

7    Situated,                   :

8                  Plaintiffs, :

9      v.                       :  Civil Action No.:

10   EPOCH EVERLASTING PLAY,     : 2:23-cv-02567-ODW-SK

11   LLC, et al.,                :

12                  Defendants. :

13   --------------------------x

14

15      Video deposition of WILLIAM INGERSOLL, PH.D.

16                 Conducted Virtually

17                Friday, April 26, 2024

18                  10:01 a.m. EST

19   Job No.: 533958

20   Pages: 1 - 136

21   Stenographically reported by: Judith E. Bellinger,

22   RPR, CRR, CSR-TX, CCR-WA, CCR-NM

23

24

25

**SER-5**

Transcript of William Ingersoll, Ph.D.
Conducted on April 26, 2024                    30

| | | |
|---|---|---|
| 1 | A    Sure.  So I have a Ph.D. in economics | 10:36:36 |
| 2 | from the University of Arizona.  My | 10:36:41 |
| 3 | specializations are in microeconomic theory, | 10:36:44 |
| 4 | industrial organization, and econometrics, which | 10:36:47 |
| 5 | is applying economic models -- applying statistics | 10:36:51 |
| 6 | to economic models. | 10:36:54 |
| 7 |          And so, within that context, you know, | 10:36:56 |
| 8 | hedonic regression is used, often in microeconomic | 10:37:00 |
| 9 | theory and industrial organization, to understand | 10:37:03 |
| 10 | the demand, the characteristics of different goods | 10:37:08 |
| 11 | and understanding what characteristics or | 10:37:10 |
| 12 | attributes are contributing to explaining, you | 10:37:13 |
| 13 | know, the price in particular cases. | 10:37:15 |
| 14 | Q    So, have you personally carried out a | 10:37:21 |
| 15 | hedonic regression analysis? | 10:37:27 |
| 16 | A    In my academic, like, in classwork and | 10:37:30 |
| 17 | training, when I teach at the University, in | 10:37:35 |
| 18 | econometrics, that is something we'll do.  We'll | 10:37:39 |
| 19 | talk about the housing market and how we would | 10:37:44 |
| 20 | apply it there, that kind of thing. | 10:37:46 |
| 21 | Q    But have you actually conducted a | 10:37:49 |
| 22 | hedonic regression analysis? | 10:37:52 |
| 23 | A    I've done hedonic regressions for | 10:38:00 |
| 24 | exercises for homework.  I've done plenty of | 10:38:02 |
| 25 | regressions in my time as a Ph.D. economist.  I | 10:38:07 |

| | | |
|---|---|---|
| 1 | don't think I've ever submitted one for litigation | 10:38:10 |
| 2 | purposes, though, no. | 10:38:13 |
| 3 | Q    Can you identify any hedonic regression | 10:38:21 |
| 4 | analysis that you have conducted in a | 10:38:26 |
| 5 | non-litigation setting? | 10:38:28 |
| 6 | A    I don't believe I have any published | 10:38:34 |
| 7 | work with hedonic regression. | 10:38:35 |
| 8 | Q    I'm not limiting my question to | 10:38:39 |
| 9 | published work, Doctor. | 10:38:42 |
| 10 | Do you want me to repeat it? | 10:38:44 |
| 11 | A    Please. | 10:38:46 |
| 12 | Q    Sure.  Can you identify any hedonic | 10:38:46 |
| 13 | regression analysis that you have conducted | 10:38:49 |
| 14 | outside of the litigation setting? | 10:38:52 |
| 15 | A    Like, just run a regression sometime in | 10:38:58 |
| 16 | my life? | 10:39:01 |
| 17 | Q    Well, you used the phrase hedonic | 10:39:02 |
| 18 | regression. | 10:39:06 |
| 19 | A    Uh-huh. | 10:39:07 |
| 20 | Q    So I'm specifically asking you about | 10:39:07 |
| 21 | hedonic regression. | 10:39:09 |
| 22 | A    I'd have to look through old schoolwork | 10:39:14 |
| 23 | and things like that.  But, I mean, this is a | 10:39:18 |
| 24 | standard technique that economists use that falls | 10:39:20 |
| 25 | within the purview of my expertise.  So I'm | 10:39:23 |

Transcript of William Ingersoll, Ph.D.
Conducted on April 26, 2024                          32

| | | |
|---|---|---|
| 1 | certainly comfortable making use of that in this | 10:39:28 |
| 2 | situation. | 10:39:31 |
| 3 | Q    Dr. Ingersoll, can you give me your | 10:39:33 |
| 4 | definition of damages? | 10:39:34 |
| 5 | A    So, damages, my understanding of | 10:39:36 |
| 6 | damages is, particularly in the context of a court | 10:39:44 |
| 7 | case, has to do with once the trier of fact has | 10:39:50 |
| 8 | determined liability, then there might be some | 10:39:58 |
| 9 | damage that has been caused to someone, and | 10:40:00 |
| 10 | there's an award in that amount to make | 10:40:02 |
| 11 | restitution, essentially. | 10:40:06 |
| 12 | Q    Okay.  So you said, "There might be | 10:40:08 |
| 13 | some damage that has been caused to someone and | 10:40:11 |
| 14 | there's an award in that amount to make | 10:40:14 |
| 15 | restitution, essentially." | 10:40:18 |
| 16 | What did you mean by "there's an award | 10:40:23 |
| 17 | in that amount"? | 10:40:24 |
| 18 | A    In the amount that's relevant to the | 10:40:31 |
| 19 | context, say, like, a loss that has been | 10:40:33 |
| 20 | experienced by someone. | 10:40:37 |
| 21 | Q    Are you familiar with the term | 10:40:40 |
| 22 | compensatory damages? | 10:40:41 |
| 23 | A    I think I've heard it before. | 10:40:45 |
| 24 | Q    Are you familiar with the term | 10:40:49 |
| 25 | non-compensatory damages? | 10:40:50 |

Transcript of William Ingersoll, Ph.D.
Conducted on April 26, 2024                              36

| | | |
|---|---|---|
| 1 | MS. WADE:  Vague and ambiguous. | 10:46:39 |
| 2 | A    I believe that's what that's saying. | 10:46:40 |
| 3 | Q    And is that in line with your | 10:46:44 |
| 4 | understanding of restitution? | 10:46:46 |
| 5 | A    To the extent that you're restoring | 10:46:50 |
| 6 | something, then, you probably can't restore more | 10:46:51 |
| 7 | than has been given. | 10:46:55 |
| 8 | Q    Okay.  And do you agree with the | 10:46:57 |
| 9 | California Supreme Court in this paragraph, that | 10:47:02 |
| 10 | restitution must account for the value that the | 10:47:06 |
| 11 | plaintiff has received from the defendant? | 10:47:09 |
| 12 | MS. WADE:  Vague and ambiguous.  Calls | 10:47:13 |
| 13 | for speculation.  Lacks foundation. | 10:47:13 |
| 14 | A    I don't want to get into interpreting | 10:47:19 |
| 15 | the judge's order and the law.  I mean, there | 10:47:23 |
| 16 | might be huge years of context I don't understand | 10:47:25 |
| 17 | or something that might speak into this. | 10:47:28 |
| 18 | Q    Okay.  So is it your understanding that | 10:47:32 |
| 19 | in calculating restitution, you must account for | 10:47:35 |
| 20 | the value that the plaintiff has received from the | 10:47:39 |
| 21 | defendant? | 10:47:42 |
| 22 | MS. WADE:  Vague and ambiguous. | 10:47:46 |
| 23 | A    So, as I've been asked in this case, | 10:47:48 |
| 24 | right, there's two methods I've been asked to | 10:47:51 |
| 25 | calculate.  It's not my opinion whether one or the | 10:47:54 |

| | | |
|---|---|---|
| 1 | other applies here.  It seems like, to me, that's | 10:47:57 |
| 2 | a matter of law and something that is at issue in | 10:47:59 |
| 3 | this case.  And that's not something I'm speaking | 10:48:02 |
| 4 | to as an expert or anything like that.  And my | 10:48:06 |
| 5 | understanding would be that's why I've been asked | 10:48:09 |
| 6 | to calculate two different potential models, | 10:48:10 |
| 7 | right, one which would be the full refund amount | 10:48:13 |
| 8 | and one would be kind of an offset method that | 10:48:18 |
| 9 | would account for some amount of the value that | 10:48:21 |
| 10 | they've received here. | 10:48:24 |
| 11 |     Q    So, do you have an opinion, one way or | 10:48:25 |
| 12 | the other, on whether restitution must account for | 10:48:28 |
| 13 | the value that the plaintiff has received from the | 10:48:31 |
| 14 | defendant? | 10:48:34 |
| 15 |     MS. WADE:  Vague and ambiguous. | 10:48:36 |
| 16 |     A    I don't -- I mean, as I read the | 10:48:43 |
| 17 | sentence, it seems to say that.  But, again, I | 10:48:45 |
| 18 | lack context or training to really feel confident | 10:48:49 |
| 19 | in trying to interpret a judgment. | 10:48:52 |
| 20 |     Q    Okay.  I'm not asking you to interpret | 10:48:54 |
| 21 | this.  I'm asking you for your own opinion. | 10:48:57 |
| 22 |     Do you have an opinion as to whether | 10:49:00 |
| 23 | restitution must account for the value that the | 10:49:02 |
| 24 | plaintiff received from the defendant? | 10:49:05 |
| 25 |     A    That seems reasonable, yes. | 10:49:16 |

Transcript of William Ingersoll, Ph.D.
Conducted on April 26, 2024                    54

| | |
|---|---|
| 1 | then I find out that there's e.coli in it, or | 11:14:02 |
| 2 | something like that, then I have to deal with | 11:14:07 |
| 3 | the -- it's costly for me to have it.  So that | 11:14:10 |
| 4 | would be a case where I have something that has a | 11:14:13 |
| 5 | negative benefit. | 11:14:15 |
| 6 | Q    So you're saying that you could imagine | 11:14:16 |
| 7 | a scenario where the product would have negative | 11:14:19 |
| 8 | value, would be less than worthless, correct? | 11:14:22 |
| 9 | A    Yeah. | 11:14:25 |
| 10 | THE WITNESS:  I'm sorry. | 11:14:27 |
| 11 | MS. WADE:  That's all right. | 11:14:28 |
| 12 | Q    That's correct, Doctor? | 11:14:29 |
| 13 | A    That's correct. | 11:14:32 |
| 14 | Q    Okay.  Putting aside whether the | 11:14:32 |
| 15 | product has any negative value or not, the only | 11:14:41 |
| 16 | scenario where a plaintiff would be entitled to a | 11:14:44 |
| 17 | full refund is where the product had no value at | 11:14:46 |
| 18 | all; isn't that right? | 11:14:49 |
| 19 | MS. WADE:  Vague and ambiguous.  Lacks | 11:14:51 |
| 20 | foundation.  Calls for speculation.  Incomplete | 11:14:51 |
| 21 | hypothetical. | 11:14:56 |
| 22 | A    What was the first part of your | 11:15:10 |
| 23 | question?  What was the initial there?  It was | 11:15:11 |
| 24 | something about it's only -- | 11:15:14 |
| 25 | Q    Putting aside whether the product has | 11:15:17 |

| 1 | any negative value, the only scenario where a | 11:15:19 |
| 2 | plaintiff would be entitled to a full refund is | 11:15:22 |
| 3 | where the product has no value at all, correct? | 11:15:24 |
| 4 | MS. WADE:  Same objections. | 11:15:29 |
| 5 | A    If negatives aren't possible to the net | 11:15:31 |
| 6 | benefit, then the only time you'd get the full | 11:15:34 |
| 7 | amount and compensatory, according to, you know, | 11:15:38 |
| 8 | again, I don't have a full understanding, | 11:15:42 |
| 9 | necessarily, of the law or what applies or | 11:15:45 |
| 10 | whatever, but the math would work out that, yeah, | 11:15:47 |
| 11 | the only way you get $10 back is if you have a | 11:15:50 |
| 12 | zero there, if negatives aren't allowed. | 11:15:53 |
| 13 | Q    And by if you have a zero there, you | 11:15:57 |
| 14 | mean the product has no value? | 11:16:00 |
| 15 | A    Correct.  That's what I meant by that, | 11:16:02 |
| 16 | in my last answer. | 11:16:03 |
| 17 | Q    Okay.  Thank you for clarifying that. | 11:16:05 |
| 18 | Okay.  So you would agree, then, that | 11:16:12 |
| 19 | where the plaintiff has received some value from | 11:16:14 |
| 20 | the product, however much or little that value is, | 11:16:17 |
| 21 | a full refund is an inappropriate measure of | 11:16:21 |
| 22 | restitution? | 11:16:25 |
| 23 | MS. WADE:  Vague and ambiguous.  Calls | 11:16:27 |
| 24 | for speculation.  Lacks foundation. | 11:16:27 |
| 25 | A    I mean, assuming that there aren't | 11:16:33 |

Transcript of William Ingersoll, Ph.D.
Conducted on April 26, 2024                    71

```
1    the overall product."                              11:52:06

2              And my question is, how are you going     11:52:08

3    to do that?                                         11:52:10

4              MS. WADE:  Vague and ambiguous.           11:52:14

5        A    Sorry, where does it say I'll determine    11:52:15

6    the offending portion?  Maybe that will help me     11:52:15

7    understand what I need to clarify.                  11:52:22

8        Q    Sure.  Paragraph 9, "if it is found        11:52:24

9    that the appropriate measure of restitution is the  11:52:28

10   portion of price attributable to the offending      11:52:30

11   portion of the subject product."  Paragraph 13,     11:52:34

12   "if the trier of fact determines that the proper    11:52:37

13   measure of refund restitution is a refund of the    11:52:40

14   portion of price attributable to the offending      11:52:43

15   portion of the product."  Paragraph 14, "I propose  11:52:46

16   measuring the portions of the price attributable    11:52:50

17   to the offending portion of the product."           11:52:53

18       A    So, as I testified to earlier, what I      11:52:57

19   mean by portion of the product there is the subset  11:53:00

20   of the pieces that, you know, are flagged as         11:53:03

21   offending.  Also, in none of those places do I say   11:53:09

22   I'm determining those myself.  And as I stated      11:53:14

23   earlier, I would rely on either the Court or        11:53:17

24   guidance from counsel to tell me which of those     11:53:20

25   subset, subset of those parts are the ones that     11:53:23
```

Transcript of William Ingersoll, Ph.D.
Conducted on April 26, 2024                                    72

| | | |
|---|---|---|
| 1 | are problematic in this case. | 11:53:30 |
| 2 | Q    Okay.  So you just used the term | 11:53:31 |
| 3 | "subset," okay? | 11:53:33 |
| 4 | So the small parts are a subset of | 11:53:35 |
| 5 | something else, correct? | 11:53:39 |
| 6 | A    Of the overall product, yes. | 11:53:43 |
| 7 | Q    Okay.  And that subset is what you call | 11:53:45 |
| 8 | the offending portion of the product, correct? | 11:53:50 |
| 9 | A    Yes, by which I mean the discrete parts | 11:53:55 |
| 10 | of it.  I'm not talking about a continuous | 11:53:57 |
| 11 | percentage. | 11:54:01 |
| 12 | Q    I don't understand what that means. | 11:54:01 |
| 13 | Can you try to explain that more? | 11:54:02 |
| 14 | A    Yeah.  I literally mean the portion of | 11:54:05 |
| 15 | the product, if we say, put in a bucket, like, we | 11:54:07 |
| 16 | empty the box of the parts or of the toy and we | 11:54:12 |
| 17 | separated out the ones that I was told were the | 11:54:17 |
| 18 | problematic ones, then I'd have, you know, one | 11:54:19 |
| 19 | portion, which is the problematic ones, and I'd | 11:54:22 |
| 20 | have some other portion of the product which were | 11:54:25 |
| 21 | not the problematic ones. | 11:54:29 |
| 22 | I mean, maybe there's a better word | 11:54:31 |
| 23 | than portion that would suggest something else to | 11:54:33 |
| 24 | you, but I'm clarifying to you right now, that's | 11:54:35 |
| 25 | what I mean when I say portion here. | 11:54:37 |

Transcript of William Ingersoll, Ph.D.
Conducted on April 26, 2024                           73

| | | |
|---|---|---|
| 1 | Q    So when you use the term "portion," | 11:54:45 |
| 2 | you're not saying it to denote any particular | 11:54:47 |
| 3 | percentage of the overall product, you're simply | 11:54:50 |
| 4 | using it to denote the number of small parts that | 11:54:55 |
| 5 | are in the overall product; is that correct? | 11:54:59 |
| 6 | MS. WADE:  Vague and ambiguous. | 11:55:03 |
| 7 | A    Assuming that small parts is the | 11:55:06 |
| 8 | correct definition of what would be the | 11:55:07 |
| 9 | problematic parts, yes. | 11:55:09 |
| 10 | Q    Okay.  So, for example, when you say, | 11:55:14 |
| 11 | in paragraph 14, "I propose measuring the portion | 11:55:33 |
| 12 | of the price attributable to the offending portion | 11:55:37 |
| 13 | of the product using hedonic regression analysis," | 11:55:41 |
| 14 | you're really saying, I propose measuring the | 11:55:47 |
| 15 | portion of the price attributable to the number of | 11:55:50 |
| 16 | offending pieces in the product. | 11:55:53 |
| 17 | Correct? | 11:55:56 |
| 18 | MS. WADE:  Vague and ambiguous. | 11:56:00 |
| 19 | A    I think, in this case, that is | 11:56:08 |
| 20 | equivalent.  So I think the answer is yes. | 11:56:11 |
| 21 | Q    Okay.  Now, let's go to paragraph 16. | 11:56:15 |
| 22 | MR. SPEYER:  Thank you, Henry. | 11:56:35 |
| 23 | Q    Okay.  So, directing your attention to | 11:56:36 |
| 24 | the second sentence "If we account for other | 11:56:41 |
| 25 | price-relevant characteristics (for example, | 11:56:46 |

Transcript of William Ingersoll, Ph.D.
Conducted on April 26, 2024

74

| | | | |
|---|---|---|---|
| 1 | | number or presence of larger pieces, number or | 11:56:50 |
| 2 | | presence of medium pieces, number or presence of | 11:56:52 |
| 3 | | smaller allegedly offending pieces, et cetera) the | 11:56:55 |
| 4 | | resulting hedonic regression price estimate for | 11:56:58 |
| 5 | | the smaller allegedly offending pieces will give | 11:57:01 |
| 6 | | us a value of how much of the price of the product | 11:57:03 |
| 7 | | was due to that characteristic compared to a | 11:57:05 |
| 8 | | similar product without this characteristic." | 11:57:08 |
| 9 | | I read that correctly? | 11:57:10 |
| 10 | A | Yes, although it's the third sentence. | 11:57:13 |
| 11 | Q | Okay. Thank you. | 11:57:15 |
| 12 | | Okay. So, your proposed methodology | 11:57:19 |
| 13 | | requires you to count the number of small parts, | 11:57:24 |
| 14 | | the number of medium parts, and the number of | 11:57:26 |
| 15 | | larger parts, correct? | 11:57:29 |
| 16 | | MS. WADE: Vague and ambiguous. | 11:57:32 |
| 17 | A | Correct. | 11:57:34 |
| 18 | Q | Okay. And did -- | 11:57:37 |
| 19 | A | You know, some appropriate set of | 11:57:40 |
| 20 | | characteristics. | 11:57:41 |
| 21 | Q | In addition to the size of the | 11:57:46 |
| 22 | | product -- of the pieces? | 11:57:47 |
| 23 | A | I think size is important here because | 11:57:51 |
| 24 | | the smaller ones are potentially the ones that are | 11:57:52 |
| 25 | | the offending ones. So I don't know if there | 11:57:56 |

Transcript of William Ingersoll, Ph.D.
Conducted on April 26, 2024                    85

| | | |
|---|---|---|
| 1 | for speculation.  Lacks foundation. | 12:11:58 |
| 2 | A    That seems to be my understanding -- | 12:12:03 |
| 3 | Q    Okay. | 12:12:05 |
| 4 | A    -- as a layperson. | 12:12:07 |
| 5 | Q    Okay.  And earlier we talked about how | 12:12:08 |
| 6 | the plaintiff's theory of causation is that she | 12:12:12 |
| 7 | would not have bought the product had she known | 12:12:15 |
| 8 | the product was a banned hazardous substance, | 12:12:18 |
| 9 | correct? | 12:12:24 |
| 10 | A    Yes. | 12:12:26 |
| 11 | MS. WADE:  Vague -- okay. | 12:12:27 |
| 12 | Q    So, Plaintiff's theory has nothing to | 12:12:28 |
| 13 | do with the number of small parts in a particular | 12:12:30 |
| 14 | item; isn't that right? | 12:12:34 |
| 15 | MS. WADE:  Vague and ambiguous.  Calls | 12:12:36 |
| 16 | for speculation.  Lacks foundation. | 12:12:36 |
| 17 | A    It does have to do with the number | 12:12:45 |
| 18 | because the number needs to be more than zero, I | 12:12:48 |
| 19 | think. | 12:12:50 |
| 20 | Q    With that proviso, you understand that | 12:12:54 |
| 21 | Plaintiff's theory has nothing to do with the | 12:12:59 |
| 22 | number of small parts in a particular item, as | 12:13:03 |
| 23 | long as there is at least one small part in the | 12:13:06 |
| 24 | item, right? | 12:13:09 |
| 25 | MS. WADE:  Vague and ambiguous.  Calls | 12:13:11 |

Transcript of William Ingersoll, Ph.D.
Conducted on April 26, 2024                              86

| | | |
|---|---|---|
| 1 | for speculation.  Lacks foundation. | 12:13:12 |
| 2 | A    I'm not sure if I know the entirety of | 12:13:17 |
| 3 | their theory.  In my proposed model, I do use the | 12:13:20 |
| 4 | number of small parts here.  I do suggest that, if | 12:13:27 |
| 5 | it was more appropriate, I could just use the | 12:13:29 |
| 6 | presence of small parts, which, perhaps, would | 12:13:32 |
| 7 | match up more closely. | 12:13:35 |
| 8 | Q    You suggest that if it was more | 12:13:38 |
| 9 | appropriate, I could just use the presence of | 12:13:42 |
| 10 | small parts?  Where do you suggest that? | 12:13:45 |
| 11 | A    Paragraph 16.  Number or presence. | 12:13:49 |
| 12 | Q    Okay.  So, have you determined whether | 12:14:02 |
| 13 | your methodology will consist -- let me rephrase | 12:14:07 |
| 14 | that. | 12:14:12 |
| 15 | Have you determined whether your | 12:14:13 |
| 16 | methodology will count the number of small parts | 12:14:15 |
| 17 | or just take into account whether small parts | 12:14:18 |
| 18 | exist or not in each particular item? | 12:14:23 |
| 19 | A    I don't know I've determined that with | 12:14:29 |
| 20 | 100 percent certainty.  But I anticipate using the | 12:14:32 |
| 21 | number of small parts this time. | 12:14:36 |
| 22 | Q    So how does your theory, that involves | 12:14:47 |
| 23 | using the number of small parts, fit with the | 12:14:51 |
| 24 | plaintiff's theory of causation? | 12:14:56 |
| 25 | MS. WADE:  Vague and ambiguous.  Lacks | 12:14:59 |

Transcript of William Ingersoll, Ph.D.
Conducted on April 26, 2024                        87

| | | |
|---|---|---|
| 1 | foundation.  Calls for speculation. | 12:15:01 |
| 2 | A    I'm not a lawyer, and I'm not sure if I | 12:15:08 |
| 3 | fully know what their theory is, from a legal | 12:15:13 |
| 4 | sense.  So I'm not sure how to answer that | 12:15:19 |
| 5 | question. | 12:15:22 |
| 6 | Q    Okay.  Well, are you familiar with the | 12:15:22 |
| 7 | principle that any theory of restitution should | 12:15:26 |
| 8 | fit the plaintiff's theory of liability? | 12:15:30 |
| 9 | MS. WADE:  Vague and ambiguous.  Calls | 12:15:34 |
| 10 | for speculation.  Lacks foundation. | 12:15:35 |
| 11 | A    I do know of something like that, yeah. | 12:15:39 |
| 12 | Q    Okay.  So that's my question.  How does | 12:15:43 |
| 13 | your theory of restitution, in which you count the | 12:15:45 |
| 14 | number of small parts, fit with the plaintiff's | 12:15:48 |
| 15 | theory of causation? | 12:15:50 |
| 16 | MS. WADE:  Vague and ambiguous.  Calls | 12:15:52 |
| 17 | for speculation.  Lacks foundation. | 12:15:53 |
| 18 | A    I mean, I don't know what the | 12:15:58 |
| 19 | appropriate specific version of this is, if it's | 12:16:01 |
| 20 | the full refund or if it is some portion of it. | 12:16:05 |
| 21 | So my calculations are there, depending on what | 12:16:08 |
| 22 | the Court decides or the trier of facts decides | 12:16:12 |
| 23 | what would be the appropriate measure. | 12:16:14 |
| 24 | Q    Okay.  So -- I'm sorry, are you | 12:16:18 |
| 25 | finished? | 12:16:24 |

Transcript of William Ingersoll, Ph.D.
Conducted on April 26, 2024                    116

| | | |
|---|---|---|
| 1 | presence of competitors and other products are | 13:18:00 |
| 2 | irrelevant in a differentiated goods market, in | 13:18:05 |
| 3 | terms of an appropriate method? | 13:18:12 |
| 4 |       MS. WADE:  Vague and ambiguous. | 13:18:22 |
| 5 |   A   I mean, here, we're trying to | 13:18:25 |
| 6 | understand the damages to the consumers, or the | 13:18:27 |
| 7 | losses to the consumer and, so, the amount that | 13:18:31 |
| 8 | the consumer paid seems to be the most crucial | 13:18:34 |
| 9 | portion of that. | 13:18:40 |
| 10 |   Q   Okay.  You're trying to understand the | 13:18:49 |
| 11 | losses to the consumer. | 13:18:51 |
| 12 |       What are the losses to the consumer? | 13:18:54 |
| 13 |       MS. WADE:  Vague and ambiguous.  Lacks | 13:18:58 |
| 14 | foundation.  Calls for speculation.  Outside the | 13:18:59 |
| 15 | scope. | 13:19:01 |
| 16 |   A   So, it depends on what the Court | 13:19:04 |
| 17 | decides is the appropriate measure of how people | 13:19:08 |
| 18 | were wronged, if the Court decides that way.  And | 13:19:10 |
| 19 | so, I'm providing a way of measuring those | 13:19:15 |
| 20 | different possible ways that the trier of fact | 13:19:18 |
| 21 | could rule. | 13:19:22 |
| 22 |   Q   Well, you're providing a way to | 13:19:23 |
| 23 | estimate the portion of the product's price that | 13:19:25 |
| 24 | is attributable to the small parts, correct? | 13:19:29 |
| 25 |       MS. WADE:  Vague and ambiguous. | 13:19:33 |

Transcript of William Ingersoll, Ph.D.
Conducted on April 26, 2024                                    136

```
1        CERTIFICATE OF REPORTER - NOTARY PUBLIC

2              I, JUDITH E. BELLINGER, RPR, CRR, CSR,

3    the officer before whom the foregoing deposition

4    was taken, do hereby certify that the foregoing

5    transcript is a true and correct record of the

6    testimony given; that said testimony was taken by

7    me and thereafter reduced to typewriting under my

8    direction; that reading and signing was not

9    requested; and that I am neither counsel for,

10   related to, nor employed by any of the parties to

11   this case and have no interest, financial or

12   otherwise, in its outcome.

13             IN WITNESS WHEREOF, I have hereunto set

14   my hand and affixed my notarial seal this 29th day

15   of April, 2024.

16   My Commission Expires:  November 3, 2024

17

18

19

20   _____

21   E-NOTARY PUBLIC IN AND FOR

22   THE STATE OF MARYLAND

23

24

25
```

# EXHIBIT C

**In the Matter Of:**

*Schmidt vs*

*International Playthings LLC*

---

*ALYSSA MASTERSON*

*July 01, 2020*

---



Alyssa Masterson - July 01, 2020

---

37

1  A.    I am responsible for managing the person who
2  oversees compliance.
3      Q.    You're her -- she reports to you?
4  A.    Correct.
5      Q.    Do you have any background, education
6  or training with regard to CPSC compliance?
7  A.    Formally, no.
8      Q.    And with regard to CPSC compliance, how
9  long has that been your job to oversee product
10  safety and compliance?
11  A.    Since February of this year.
12      Q.    I'm looking at your resume and it
13  indicates that you are responsible for managing a
14  team of one support staff member overseeing product
15  safety and compliance within North America; is that
16  right?
17  A.    Yes.
18      Q.    Okay.  And that one support staff
19  member is -- is that Ms. Dimitrovski?
20  A.    Yes.
21      Q.    And does Ms. Dimitrovski have
22  education, training, relative to CPSC compliance?
23  A.    I don't know.
24      Q.    And as I see it, she's in -- she is the
25  one who oversees it and you manage her?

---

39

1      Q.    Okay.  And do you know how to define
2  small parts under the CPSC?
3  A.    I do not.
4      Q.    Do you know what the small parts
5  cylinder is?
6  A.    Yes, I am aware of it.
7      Q.    Is it your understanding that if a part
8  fits into the small part cylinder, that it's defined
9  as a small part under the CPSC?
10  A.    I don't know the specifics of how the testing
11  is performed.
12      Q.    Okay.  Now, you are in -- you've been
13  designated by EEP as the corporate representative to
14  testify with regard to CPSC compliance, correct?
15  A.    Yes.
16      Q.    And you are actually the manager of the
17  team who oversees CPSC compliance at EEP, correct?
18  A.    Yes.
19      Q.    And you're telling me that you do not
20  know how to define a small part under the CPSC
21  regulations, is that correct?
22  A.    Yes.
23      Q.    Now, you understand that EEP is the
24  certifier of these products in North America?  When
25  I say these products, I'm talking about the Calico

---

38

1  A.    Yes.
2      Q.    Is there anybody else at EEP that's
3  involved with the product and safety compliance team
4  other than you and Ms. Dimitrovski?
5  A.    No.
6      Q.    All right.  Now, Ms. Masterson, you
7  would agree that the Calico Critters Yellow Labrador
8  Twins presents a choking hazard to children because
9  of small parts as defined by the CPSC, correct?
10      MR. BIEHLER:  Object to form.
11  BY MR. WALKER:
12      Q.    You can answer.
13  A.    I am aware that the products are labeled as a
14  choking hazard.
15      Q.    And would you agree that they are a
16  choking hazard because of the definition of small
17  parts under the CPSC?
18      MR. BIEHLER:  Object to form.
19      THE WITNESS:  I am aware that they are
20  labeled as a choking hazard.
21  BY MR. WALKER:
22      Q.    I'm sorry, Ms. Masterson, did you --
23  repeat your answer?
24  A.    I said I am aware that they are labeled as a
25  choking hazard.

---

40

1  Critter line of products, including the Yellow
2  Labrador Twins.  Do you understand that?
3  A.    Can you clarify what you mean by "certifier?"
4      Q.    Do you know what -- do you know what a
5  CPSC certifier is?
6  A.    I'm aware that our products comply to CPSC
7  regulations.
8      Q.    Are you aware that EEP is the certifier
9  of the products in North America and what that
10  certification means?
11  A.    I'm aware that we obtain CPSC -- we obtain
12  the requirements for CPSC for our products.
13      Q.    And how are you aware of that?
14  A.    We receive test reports from our third party
15  testing lab.
16      Q.    Okay.  But you don't know what the
17  requirements for your products are, correct?
18      MR. BIEHLER:  Object to form.
19      THE WITNESS:  Could you repeat your
20  question?
21  BY MR. WALKER:
22      Q.    You don't know what the CPSC
23  requirements for your products are, correct?
24      MR. BIEHLER:  Same objection.
25      THE WITNESS:  I'm aware that our

---

85

1  A.    Based on her record keeping.
2      Q.    Okay.  But she makes that decision.
3  She looks it up, makes a decision and then says this
4  needs to go back for testing; we need to get this
5  done?
6  A.    Correct.
7      Q.    Okay.  Who determines the sample size
8  for testing?
9  A.    I don't know.
10        MR. WALKER:  I'll pass the witness.
11        I do have some housekeeping we need to
12  do before I get off with the Court Reporter to make
13  sure we got exhibits, but I'll pass the witness.
14        THE VIDEOGRAPHER:  Can I take down this
15  document.
16        MR. WALKER:  Oh, sure.  Yeah.
17        MR. HARRISON:  I don't have any
18  questions.  Thank you.
19        MR. BIEHLER:  We'll reserve our
20  questions for trial.  She'll read and sign.
21        MR. WALKER:  Okay.
22        THE VIDEOGRAPHER:  Are we ready to
23  conclude?
24        MR. WALKER:  Yes, I'm -- Bill, I want to
25  just make sure you've got a copy of the exhibits,

86

1  but I didn't use everything so I want to make sure
2  that I've identified the exhibits that we used,
3  okay.
4        Exhibit 1 was the resume; Exhibit 2 was
5  the notice; Exhibit 3 was the parents info; Exhibit
6  4 is the SGS report; Exhibit 5 was the Amazon
7  review; 6 was the age grading evaluation; 7 was the
8  frequently asked questions; 8 was the children
9  product certificate; 9 was 1501, and I skipped to I
10  think 11, and that's it.  There is no 10.  Does that
11  sound right for everybody?
12        MR. BIEHLER:  Yeah, I think so.
13        MR. WALKER:  Okay.  That's all I got.
14        MR. BIEHLER:  All right.  Have a good
15  day.
16        THE VIDEOGRAPHER:  This is the end of
17  the deposition.  The time is 4:13.  We're off the
18  record.
19        MR. WALKER:  Okay, thanks.
20        (Time noted: 4:13 p.m. Central Time)
21
22
23
24
25

87

1              C E R T I F I C A T E
2
3
4      I, WILLIAM J. RICHARDS, JR., a Certified
5  Reporter of the State of New Jersey, authorized to
6  administer oaths pursuant to R.S. 41:2-2, do hereby
7  certify that prior to the commencement of the
8  examination, the witness, ALYSSA MASTERSON, was duly
9  sworn by me to testify to the truth, the whole truth
10  and nothing but the truth.
11      I DO FURTHER CERTIFY that the foregoing is a
12  true and accurate transcript of the testimony as
13  taken stenographically by and before me at the time,
14  place and on the date hereinbefore set forth.
15      I DO FURTHER CERTIFY that I am neither a
16  relative, nor employee, nor attorney, nor counsel of
17  any of the parties to this action, and that I am not
18  financially interested in the action.
19
20
21
22      WILLIAM J. RICHARDS, JR., CSR
      License No. 30X100067300
23
24
25

# EXHIBIT A

1           IN THE UNITED STATES DISTRICT COURT

2          FOR THE CENTRAL DISTRICT OF CALIFORNIA

3   -----------------------------x

4   WILLIENE JACKSON-JONES, et   :

5   al., on behalf of themselves  :

6   and all others similarly    :

7   situated,                  :  Civil Action No.:

8        Plaintiffs,       :  2:23-cv-02567-ODW-SK

9     v.                 :

10  EPOCH EVERLASTING PLAY, LLC,  :

11  et al.,               :

12        Defendants.       :

13  -----------------------------x

14

15            Videotaped Deposition of

16          WILLIENE JACKSON-JONES

17            Conducted Virtually

18         Tuesday, March 19, 2024

19            8:34 a.m. PST

20

21

22  Job No.: 530054

23  Pages: 1 - 170

24  Reported By: DEBRA BOLLMAN FARFAN, RDR, CRR, CRC

25         CA CSR No. 11648

Transcript of Williene Jackson-Jones
Conducted on March 19, 2024                        16

| | | |
|---|---|---|
| 1 | A. I birthed two children, but I have a total | 08:43:46 |
| 2 | of five. I have three stepchildren. | 08:43:50 |
| 3 | Q. How old are they, approximately? Are they | 08:43:52 |
| 4 | adults? Or what's the age range? | 08:43:59 |
| 5 | A. They're all adults. My two children that I | 08:44:01 |
| 6 | birthed are 40 and 34 -- 40 -- yeah, 40 and 34. | 08:44:04 |
| 7 | And then my stepchildren are 38, 30, and 24. | 08:44:10 |
| 8 | Q. And do you have any grandchildren? | 08:44:19 |
| 9 | A. Yes. I have seven. Three biological. | 08:44:23 |
| 10 | Seven total. | 08:44:28 |
| 11 | Q. And could you go through and give me their | 08:44:32 |
| 12 | ages as best you recall. | 08:44:36 |
| 13 | A. Yes. Starting with the oldest, 12 -- I | 08:44:38 |
| 14 | mean, I'm sorry, he just turned 13. 13, 11, 8 and | 08:44:43 |
| 15 | 8 -- two granddaughters, they're both 8 -- a | 08:44:53 |
| 16 | grandson that's 5, and the two babies are 1 going | 08:44:58 |
| 17 | on 2. | 08:45:06 |
| 18 | Q. Got it. Just to make sure that I'm | 08:45:11 |
| 19 | tracking here. So seven grandchildren. Oldest to | 08:45:14 |
| 20 | youngest would be a 13-year-old, 11-year-old, | 08:45:19 |
| 21 | 8-year-old, 8-year-old, 5-year-old, and two | 08:45:22 |
| 22 | 1-year-olds? | 08:45:26 |
| 23 | A. Yes. | 08:45:26 |
| 24 | Q. All right. And I'm jumping ahead a little | 08:45:27 |
| 25 | bit, Ms. Jackson-Jones, but some of the papers in | 08:45:37 |

Transcript of Williene Jackson-Jones
Conducted on March 19, 2024                    73

| | | |
|---|---|---|
| 1 | park, and she'd have them on the Ferris wheel.  Any | 10:18:35 |
| 2 | little -- any little product that I had bought, | 10:18:39 |
| 3 | she -- she would play with it. | 10:18:44 |
| 4 | Q.  And she liked the small accessories too, | 10:18:46 |
| 5 | like the food and the handbags and things like | 10:18:49 |
| 6 | that? | 10:18:51 |
| 7 | A.  She liked the small accessories.  The house | 10:18:51 |
| 8 | came -- the house accessory had little soap bars | 10:18:57 |
| 9 | and little bathroom accessories and kitchen | 10:19:01 |
| 10 | accessory, plates and little tiny spoons and forks. | 10:19:04 |
| 11 | Yes, she'd play with all the little | 10:19:10 |
| 12 | accessories. | 10:19:12 |
| 13 | Q.  And that was part of her regular playtime | 10:19:13 |
| 14 | routine, was to play with the critters and those | 10:19:15 |
| 15 | accessories? | 10:19:17 |
| 16 | A.  Yes.  We had them in little bins, and she | 10:19:18 |
| 17 | would drag the bins out and pull everything out of | 10:19:21 |
| 18 | the bins. | 10:19:24 |
| 19 | Q.  Did C.J. play with the Calico Critters on | 10:19:24 |
| 20 | her own, sort of in that loft without your | 10:19:33 |
| 21 | supervision, or were you always right there with | 10:19:37 |
| 22 | her? | 10:19:38 |
| 23 | A.  No, sometimes she would play -- my | 10:19:39 |
| 24 | grandkids have bedrooms at my home.  And sometimes | 10:19:41 |
| 25 | I would go in her bedroom, and she'd have the bins | 10:19:44 |

Transcript of Williene Jackson-Jones
Conducted on March 19, 2024                    74

| | | |
|---|---|---|
| 1 | out in her bedroom playing with the items. | 10:19:47 |
| 2 | Q. Did it ever concern you, her playing with | 10:19:49 |
| 3 | these toys on her own? | 10:19:53 |
| 4 | A. I did grow concerned when I discovered how | 10:19:55 |
| 5 | tiny these little pieces were. | 10:20:02 |
| 6 | Q. Tell me more about that. When did you grow | 10:20:09 |
| 7 | concerned about how tiny the pieces were? | 10:20:12 |
| 8 | A. When I saw her playing with some of these | 10:20:14 |
| 9 | little items inappropriately, pieces in her mouth. | 10:20:19 |
| 10 | One time she had the whole bunny head in | 10:20:27 |
| 11 | her mouth. She was carrying the bunny -- she had | 10:20:29 |
| 12 | things in her hand, and she had the bunny in her | 10:20:32 |
| 13 | mouth because she was carrying it to go somewhere | 10:20:34 |
| 14 | else. | 10:20:36 |
| 15 | She had put the little tiny soap that -- I | 10:20:43 |
| 16 | didn't even know it was soap. I actually thought | 10:20:46 |
| 17 | it was a piece of trash on the floor. I picked it | 10:20:49 |
| 18 | up, and apparently it was the soap bar, and she had | 10:20:52 |
| 19 | stuck it in her ear. | 10:20:56 |
| 20 | We was able to get it out. She hadn't | 10:21:00 |
| 21 | pushed it further down. But at that time I made a | 10:21:04 |
| 22 | decision that she wasn't going to play with those | 10:21:10 |
| 23 | things anymore. | 10:21:12 |
| 24 | Q. And when you say "at that time," are you | 10:21:13 |
| 25 | referring to the time of that soap-in-the-ear | 10:21:18 |

Transcript of Williene Jackson-Jones
Conducted on March 19, 2024                    75

| | | |
|---|---|---|
| 1 | incident? | 10:21:20 |
| 2 | A.  Yes. | 10:21:20 |
| 3 | Q.  Okay.  Do you recall when that occurred? | 10:21:22 |
| 4 | A.  Probably -- let's see.  It was in -- I'd | 10:21:26 |
| 5 | say the last purchase was like July of '22.  So it | 10:21:43 |
| 6 | was before Christmas of 2022.  Because I remember | 10:21:50 |
| 7 | at Christmas she wanted more, and I -- she wasn't | 10:21:58 |
| 8 | getting any more.  We weren't going to purchase any | 10:22:03 |
| 9 | more. | 10:22:06 |
| 10 | Q.  I see.  So C.J. had asked for more Calico | 10:22:06 |
| 11 | Critters for Christmas, in Christmas of '22, but | 10:22:10 |
| 12 | you said no? | 10:22:15 |
| 13 | A.  I said no. | 10:22:16 |
| 14 | Q.  So your purchases of Calico Critters | 10:22:17 |
| 15 | spanned from around Christmas of 2019 through July | 10:22:43 |
| 16 | of '22, and it was sometime after July of '22 when | 10:22:46 |
| 17 | you stopped allowing C.J. to play with them; is | 10:22:52 |
| 18 | that right? | 10:22:55 |
| 19 | A.  Right. | 10:22:55 |
| 20 | Q.  You also hired counsel sometime before | 10:22:58 |
| 21 | July 7th of 2022; is that right? | 10:23:02 |
| 22 | A.  Right. | 10:23:04 |
| 23 | MR. CASTANEDA:  Objection.  Vague and | 10:23:06 |
| 24 | ambiguous. | 10:23:07 |
| 25 | /// | |

Transcript of Williene Jackson-Jones
Conducted on March 19, 2024                    81

| | | |
|---|---|---|
| 1 | And, Henry, I'll ask you to pull up | 10:31:54 |
| 2 | Exhibit 2 on the screen share, and let's go to page | 10:31:59 |
| 3 | 9. | 10:32:02 |
| 4 | And we'll scroll down, and I'm going to | 10:32:19 |
| 5 | direct your attention, Ms. Jackson-Jones, to the | 10:32:20 |
| 6 | paragraph starting line number 22. And it says: | 10:32:22 |
| 7 | Within one year. | 10:32:25 |
| 8 | Do you see where I am? | 10:32:26 |
| 9 | A. Uh-huh. | 10:32:27 |
| 10 | Q. Okay. This says: Within one year | 10:32:28 |
| 11 | following her last purchase, plaintiff -- | 10:32:31 |
| 12 | And that's you, right? | 10:32:34 |
| 13 | A. Yes. | 10:32:35 |
| 14 | Q. -- plaintiff wished to return the Calico | 10:32:36 |
| 15 | Critters products upon learning that they posed a | 10:32:39 |
| 16 | choking hazard. | 10:32:42 |
| 17 | Do you see that? | 10:32:43 |
| 18 | A. Yes. | 10:32:44 |
| 19 | Q. Is that a true and accurate statement? | 10:32:45 |
| 20 | A. Yes. | 10:32:46 |
| 21 | Q. And it says -- where it says "upon learning | 10:32:47 |
| 22 | that they posed a choking hazard," what is that | 10:32:54 |
| 23 | referring to? | 10:32:57 |
| 24 | A. A lot of the small accessories. | 10:32:57 |
| 25 | Q. And am I correct in understanding that your | 10:33:01 |

Transcript of Williene Jackson-Jones
Conducted on March 19, 2024                              82

| | | |
|---|---|---|
| 1 | contention is that you learned they posed a choking | 10:33:08 |
| 2 | hazard once these incidents occurred with C.J. | 10:33:12 |
| 3 | putting it in her mouth and having the soap in her | 10:33:15 |
| 4 | ear?  Is that what prompted the choking hazard | 10:33:19 |
| 5 | concern? | 10:33:23 |
| 6 | A.  No, that was the -- like the straw that | 10:33:23 |
| 7 | broke the camel's back.  I mean, a lot of these | 10:33:26 |
| 8 | pieces started disappearing.  So we were like, | 10:33:29 |
| 9 | "Where are they?  Where are they going to?" | 10:33:32 |
| 10 | Between my home and her mom's home, we | 10:33:38 |
| 11 | couldn't find these little pieces.  So her dad | 10:33:40 |
| 12 | started getting a little concerned, like, "What's | 10:33:45 |
| 13 | happening to these little small pieces?" | 10:33:48 |
| 14 | Q.  And what was the concern about them? | 10:33:51 |
| 15 | A.  That she probably had consumed some of | 10:33:54 |
| 16 | them. | 10:33:57 |
| 17 | Q.  So, Ms. Jackson-Jones, when did you learn | 10:33:58 |
| 18 | that the Calico Critters products posed a choking | 10:34:11 |
| 19 | hazard? | 10:34:16 |
| 20 | A.  When I -- when the suit came about. | 10:34:16 |
| 21 | Q.  So before you spoke with your lawyers, did | 10:34:31 |
| 22 | you know that the products, the Calico Critters | 10:34:34 |
| 23 | products, posed a choking hazard? | 10:34:37 |
| 24 | A.  Not really.  I did not pay attention to | 10:34:39 |
| 25 | that on any of the products when I purchased them. | 10:34:46 |

| | | |
|---|---|---|
| 1 | You know, like some products will have a warning on | 10:34:50 |
| 2 | the boxes. | 10:34:53 |
| 3 | If there was, I did not pay attention to | 10:34:59 |
| 4 | it. | 10:35:01 |
| 5 | Q.  Do you know, sitting here today, as to | 10:35:02 |
| 6 | whether the Calico Critters products have any | 10:35:07 |
| 7 | warnings like that? | 10:35:09 |
| 8 | A.  Just from what I've looked at since then, | 10:35:10 |
| 9 | there's warnings about age 3 and under or under 3. | 10:35:19 |
| 10 | Q.  Am I correct that you didn't learn about | 10:35:29 |
| 11 | those warnings until after this lawsuit began? | 10:35:31 |
| 12 | A.  Yes. | 10:35:34 |
| 13 | Q.  Okay.  Let's look at the sentence that | 10:35:35 |
| 14 | starts at line 23 of Exhibit 2 that's displayed | 10:35:54 |
| 15 | here.  It starts with "However." | 10:35:57 |
| 16 | Do you see that, Ms. Jackson-Jones? | 10:35:59 |
| 17 | A.  Yes. | 10:36:01 |
| 18 | Q.  Okay.  So I'll read that sentence. | 10:36:02 |
| 19 | It says:  However, instead of returning the | 10:36:03 |
| 20 | products to Amazon or disposing of them, plaintiff | 10:36:05 |
| 21 | gave them to a friend. | 10:36:08 |
| 22 | Is that a true and accurate statement? | 10:36:10 |
| 23 | A.  That is true.  There was some that did go | 10:36:14 |
| 24 | up in our vacuum cleaner that did get trashed. | 10:36:19 |
| 25 | But, for the most part, I gave them to a friend | 10:36:23 |

Transcript of Williene Jackson-Jones
Conducted on March 19, 2024                           84

| | | |
|---|---|---|
| 1 | with an 11-year-old daughter. | 10:36:27 |
| 2 | Q. So I'll ask you some questions about that | 10:36:33 |
| 3 | friend in a moment. But first I just want to focus | 10:36:36 |
| 4 | on the statement that says "instead of returning | 10:36:43 |
| 5 | the products to Amazon." | 10:36:47 |
| 6 | Why didn't you return the products to | 10:36:48 |
| 7 | Amazon? | 10:36:51 |
| 8 | A. One, they had been in and out of her mouth. | 10:36:51 |
| 9 | Two, some of them were missing. So I just didn't | 10:36:56 |
| 10 | feel it was worth returning them. It had been -- | 10:37:01 |
| 11 | it had been a while. | 10:37:10 |
| 12 | Q. Am I correct that you didn't take any steps | 10:37:17 |
| 13 | to start any sort of return process? | 10:37:19 |
| 14 | A. I did return some things to Amazon. I | 10:37:21 |
| 15 | don't -- not things that we had already had. I | 10:37:29 |
| 16 | stopped the return after I purchased. It never -- | 10:37:34 |
| 17 | you know, I stopped it before it was delivered, on | 10:37:39 |
| 18 | a few things, just a couple of things. | 10:37:42 |
| 19 | But I'm not for sure if I did that return | 10:37:47 |
| 20 | because of hazard or because I probably duplicated | 10:37:49 |
| 21 | the order. | 10:37:51 |
| 22 | But the things that I did have at home and | 10:37:53 |
| 23 | had been a while, I just didn't feel that it was | 10:37:57 |
| 24 | worth returning them. I didn't have the packaging, | 10:37:59 |
| 25 | for one. Two, they had been played with by my | 10:38:07 |

Transcript of Williene Jackson-Jones
Conducted on March 19, 2024                    87

| | | |
|---|---|---|
| 1 | what you recall about that. | 10:41:01 |
| 2 | A.  I was talking to my friend about it and | 10:41:04 |
| 3 | telling her, you know, what C.J. -- the problem we | 10:41:09 |
| 4 | were having with some of the small pieces and | 10:41:13 |
| 5 | things like that.  And I told her I was going to -- | 10:41:15 |
| 6 | just in GP conversation that I was going to throw | 10:41:23 |
| 7 | the items away. | 10:41:25 |
| 8 | She was like, "Hey, you know" -- her | 10:41:28 |
| 9 | daughter is a lot older, doesn't put things in her | 10:41:29 |
| 10 | mouth -- "don't throw them away.  Give them to me. | 10:41:32 |
| 11 | And if I can't use them, I'll find someone that I | 10:41:36 |
| 12 | can give them to." | 10:41:39 |
| 13 | This friend that I'm speaking of has family | 10:41:42 |
| 14 | in Mexico, and things are hard to come by for them. | 10:41:44 |
| 15 | So that was something that she said that she could | 10:41:49 |
| 16 | send if her daughter didn't want them. | 10:41:53 |
| 17 | Q.  What's the friend's name? | 10:41:59 |
| 18 | A.  Karla.  I don't know if she wants me saying | 10:42:00 |
| 19 | her name, but Karla. | 10:42:10 |
| 20 | Q.  Okay.  And what is Karla's last name? | 10:42:12 |
| 21 | A.  It's I-l-l-e-c-a.  And she was a co-worker | 10:42:15 |
| 22 | of mine.  So I don't always pronounce her last name | 10:42:22 |
| 23 | right. | 10:42:27 |
| 24 | Q.  So it's Carla?  Is that C-a-r-l-a?  Is that | 10:42:27 |
| 25 | right? | 10:42:31 |

Transcript of Williene Jackson-Jones
Conducted on March 19, 2024                    94

1    conversation that you would give them over to her?        10:51:08
2        A.  No.                                               10:51:11
3        Q.  Okay.  When did you decide to give them to        10:51:11
4    her?                                                      10:51:14
5        A.  I mentioned to her that if I give them            10:51:14
6    away, I would let her know.                               10:51:17
7        Q.  I see.  So the first time you spoke with          10:51:19
8    her about it, you hadn't actually decided to give         10:51:21
9    them away yet?                                            10:51:26
10       A.  At that point I hadn't decided to give them       10:51:28
11   away.  I was going to -- my thought was to trash          10:51:29
12   them.                                                     10:51:31
13       I had decided I wasn't going to keep them,            10:51:33
14   but I hadn't decided if I was going to give them          10:51:36
15   away or throw them away.                                  10:51:38
16       Q.  And when did you -- how long after that did       10:51:40
17   you come to a decision to give them to her instead        10:51:44
18   of throwing them away?                                    10:51:47
19       A.  It was before Christmas because I actually        10:51:48
20   went through C.J.'s stuff and was getting rid of a        10:51:54
21   lot of other things as well, gearing up to the           10:52:01
22   Christmas season coming up.  So it was probably          10:52:03
23   September, October, somewhere up in there, of 2022.       10:52:15
24       But I need to mention that prior to that we           10:52:25
25   put them away.  C.J. couldn't play with them at our       10:52:28

Transcript of Williene Jackson-Jones
Conducted on March 19, 2024                    95

| | | |
|---|---|---|
| 1 | house anymore, even way before I gave it away. | 10:52:32 |
| 2 | Q.  So that would have been sometime earlier in | 10:52:41 |
| 3 | 2022 you put them away; and then there was a window | 10:52:44 |
| 4 | of time, deciding what to do with them, before you | 10:52:46 |
| 5 | gave them to Karla? | 10:52:49 |
| 6 | A.  It was like mid-2022 because they were | 10:52:50 |
| 7 | put -- they were put away -- actually, I had put | 10:52:56 |
| 8 | them in her brother's room so that she couldn't | 10:53:00 |
| 9 | even see them.  They were in canisters. | 10:53:02 |
| 10 | And then we gave them away towards the end | 10:53:04 |
| 11 | of 2022, September or somewhere up in there. | 10:53:08 |
| 12 | Q.  And am I correct in understanding that | 10:53:15 |
| 13 | there was a time in which you were trying to decide | 10:53:19 |
| 14 | whether to just throw them all away or give them to | 10:53:23 |
| 15 | your friend Karla?  Is that right? | 10:53:26 |
| 16 | A.  Yes. | 10:53:27 |
| 17 | Q.  What ultimately made you decide to give | 10:53:28 |
| 18 | them to your friend Karla instead of throwing them | 10:53:30 |
| 19 | away? | 10:53:33 |
| 20 | A.  Just my daughter-in-law had packed up a | 10:53:33 |
| 21 | bunch of stuff to give to Karla, some clothes and | 10:53:37 |
| 22 | some other toys.  And I was the contact person | 10:53:41 |
| 23 | between giving that bag to my co-worker.  And so | 10:53:45 |
| 24 | once I was given -- since I was going to be giving | 10:53:49 |
| 25 | that bag to her, I put that stuff in there with it | 10:53:52 |

Transcript of Williene Jackson-Jones
Conducted on March 19, 2024                           99

| | | |
|---|---|---|
| 1 | Q.  Am I correct that by the time you contacted | 10:58:30 |
| 2 | -- strike that. | 10:58:34 |
| 3 | Am I correct that by the time you contacted | 10:58:36 |
| 4 | counsel -- | 10:58:40 |
| 5 | A.  In July. | 10:58:40 |
| 6 | Q.  -- in July you had concerns about the | 10:58:41 |
| 7 | Calico Critters product?  Is that right? | 10:58:49 |
| 8 | A.  Yes.  Some of the products. | 10:58:50 |
| 9 | Q.  And so why did you purchase the Calico | 10:58:53 |
| 10 | Critters school lunch set on July 12, 2022, if you | 10:58:57 |
| 11 | had those concerns? | 10:59:00 |
| 12 | A.  Because it didn't have the little tiny, | 10:59:01 |
| 13 | tiny things like the little bar of soap with it. | 10:59:04 |
| 14 | But, again, even my husband stated that | 10:59:10 |
| 15 | that was a waste, we shouldn't have purchased that | 10:59:16 |
| 16 | because of the concerns. | 10:59:19 |
| 17 | I had a lot invested into this.  So I | 10:59:23 |
| 18 | really didn't want to get rid of it, but I knew I | 10:59:26 |
| 19 | had to. | 10:59:29 |
| 20 | (Deposition Exhibit No. 22-A was marked for | 10:59:29 |
| 21 | identification.) | 10:59:44 |
| 22 | Q.  Okay.  Let's take a look at another | 10:59:44 |
| 23 | exhibit.  This one has been premarked as | 10:59:50 |
| 24 | Exhibit 22-A, as in Alpha, 22-A.  So Mr. Morris | 10:59:54 |
| 25 | will drop that into the chat and then share it on | 11:00:00 |

Transcript of Williene Jackson-Jones
Conducted on March 19, 2024                    104

| | | |
|---|---|---|
| 1 | Because when the product even came and I | 11:05:33 |
| 2 | saw the small items, I'm like talking to myself, | 11:05:35 |
| 3 | like:  Williene, why did you even purchase this? | 11:05:40 |
| 4 | So the only thing she was able to play | 11:05:43 |
| 5 | with, which was still too small, was that bunny. | 11:05:44 |
| 6 | Q.  Okay.  Thank you, Ms. Jackson-Jones. | 11:05:48 |
| 7 | You can take that down, Mr. Morris. | 11:05:56 |
| 8 | Ms. Jackson-Jones, do you need a break, or | 11:06:01 |
| 9 | are you good to keep trucking? | 11:06:04 |
| 10 | A.  No, I'm good to keep going. | 11:06:05 |
| 11 | Q.  Okay.  Just tell me if that changes, | 11:06:06 |
| 12 | please. | 11:06:08 |
| 13 | A.  Okay. | 11:06:09 |
| 14 | Q.  Why did you bring this lawsuit? | 11:06:09 |
| 15 | A.  Safety reasons.  I just -- I want to -- | 11:06:14 |
| 16 | it's a great product.  It could be improved.  Those | 11:06:20 |
| 17 | items, regardless of me purchasing or not, are way | 11:06:28 |
| 18 | too small for -- I think for anyone.  I mean, they | 11:06:33 |
| 19 | get lost in the carpet.  Like I said, a lot of them | 11:06:37 |
| 20 | end up in our vacuum cleaner. | 11:06:42 |
| 21 | But mainly for safety reasons; that no | 11:06:44 |
| 22 | child suffers or no one, you know, get hurt behind | 11:06:47 |
| 23 | these little pieces and that material. | 11:06:50 |
| 24 | Q.  Are there any other reasons you've brought | 11:07:01 |
| 25 | the lawsuit? | 11:07:03 |

| | | |
|---|---|---|
| 1 | off. | 11:23:33 |
| 2 | Q.  Did you ever try to return any of the | 11:23:35 |
| 3 | Calico Critters products because the flock material | 11:23:39 |
| 4 | was coming off? | 11:23:42 |
| 5 | A.  No, I did not.  I, like I said, during -- | 11:23:43 |
| 6 | because of the COVID virus, I didn't want to return | 11:23:50 |
| 7 | anything. | 11:23:52 |
| 8 | Again, my daughter -- my granddaughter had | 11:24:01 |
| 9 | this thing in her mouth, and that was during a | 11:24:04 |
| 10 | crucial time with the virus. | 11:24:07 |
| 11 | Q.  Ms. Jackson-Jones, do you believe you were | 11:24:15 |
| 12 | harmed by the purchase of Calico Critters? | 11:24:22 |
| 13 | MR. CASTANEDA:  Objection.  Vague and | 11:24:27 |
| 14 | ambiguous.  Calls for a legal conclusion. | 11:24:29 |
| 15 | THE WITNESS:  Financially, thank God that | 11:24:31 |
| 16 | financially I was harmed and not harmed in a way | 11:24:40 |
| 17 | where my granddaughter would have been hospitalized | 11:24:45 |
| 18 | or worst-case scenario dead from this product.  But | 11:24:52 |
| 19 | financially I was harmed. | 11:24:56 |
| 20 | BY MR. HOFFMAN: | 11:25:01 |
| 21 | Q.  So C.J. was never physically harmed from | 11:25:01 |
| 22 | any Calico Critters products, right? | 11:25:04 |
| 23 | A.  No, never had to seek medical help. | 11:25:06 |
| 24 | Q.  Please explain how you were financially | 11:25:12 |
| 25 | harmed by Calico Critters. | 11:25:19 |

Transcript of Williene Jackson-Jones
Conducted on March 19, 2024                          118

| | | |
|---|---|---|
| 1 | MR. CASTANEDA:  Objection.  Vague and | 11:25:21 |
| 2 | ambiguous.  Calls for a legal conclusion. | 11:25:23 |
| 3 | THE WITNESS:  I spent a lot of money on | 11:25:24 |
| 4 | this product, so, in that sense.  I mean, of | 11:25:28 |
| 5 | course, I didn't spend millions, but it was my | 11:25:36 |
| 6 | hard-earned money. | 11:25:44 |
| 7 | BY MR. HOFFMAN: | 11:25:45 |
| 8 | Q.  Is there any other way in which you believe | 11:25:46 |
| 9 | you were financially harmed by your purchase of | 11:25:49 |
| 10 | Calico Critters? | 11:25:51 |
| 11 | MR. CASTANEDA:  Objection.  Asked and | 11:25:52 |
| 12 | answered.  Vague and ambiguous. | 11:25:53 |
| 13 | THE WITNESS:  Just from what I spent.  Just | 11:25:59 |
| 14 | the funds that I put out for what I spent. | 11:26:02 |
| 15 | BY MR. HOFFMAN: | 11:26:05 |
| 16 | Q.  Just the funds you used to purchase the | 11:26:05 |
| 17 | products themselves, is that what you're referring | 11:26:07 |
| 18 | to? | 11:26:09 |
| 19 | A.  Yes.  And, you know, having to give | 11:26:09 |
| 20 | every -- give everything away between wanting to | 11:26:22 |
| 21 | throw them away to giving it away.  So it was like | 11:26:26 |
| 22 | a waste. | 11:26:30 |
| 23 | MR. CASTANEDA:  Counsel, we're approaching | 11:26:41 |
| 24 | 11:30.  I think it might be a good time for a | 11:26:42 |
| 25 | break.  I need to take one soon. | 11:26:45 |

Transcript of Williene Jackson-Jones
Conducted on March 19, 2024                              127

| | | |
|---|---|---|
| 1 | testimony. | 12:31:41 |
| 2 | THE WITNESS:  Yes. | 12:31:44 |
| 3 | BY MR. HOFFMAN: | 12:31:44 |
| 4 | Q.  And, again, if you had read this warning, | 12:31:45 |
| 5 | you would not have purchased this product either, | 12:31:49 |
| 6 | right? | 12:31:51 |
| 7 | A.  Well, honestly, when I think about it, I | 12:31:51 |
| 8 | probably would have, because at the time my baby | 12:31:57 |
| 9 | wasn't under 3. | 12:32:02 |
| 10 | Q.  Okay.  But you know that C.J. has an | 12:32:03 |
| 11 | affinity for putting things in her mouth, right? | 12:32:13 |
| 12 | A.  Yes. | 12:32:15 |
| 13 | Q.  And you came to believe that this product | 12:32:17 |
| 14 | posed a choking hazard -- you came to believe that | 12:32:24 |
| 15 | this product posed a choking hazard for C.J., | 12:32:30 |
| 16 | right? | 12:32:33 |
| 17 | A.  Potentially, yes, uh-huh.  Because she put | 12:32:33 |
| 18 | things in her mouth, yes. | 12:32:37 |
| 19 | Q.  And when you discovered that the product | 12:32:38 |
| 20 | posed a choking hazard, you decided to put them | 12:32:44 |
| 21 | away at first, not give them to C.J., and then give | 12:32:49 |
| 22 | them all away, right? | 12:32:52 |
| 23 | A.  Yes. | 12:32:53 |
| 24 | Q.  Let's go back to page 1 of Exhibit 12-A. | 12:32:54 |
| 25 | And, again, let's zoom in, Mr. Morris, and just to | 12:33:43 |

Transcript of Williene Jackson-Jones
Conducted on March 19, 2024                                    132

| | | |
|---|---|---|
| 1 | Q.  Why not? | 12:40:02 |
| 2 | A.  That would have been repeating the same | 12:40:03 |
| 3 | thing I did before.  I would have been buying them | 12:40:08 |
| 4 | to throw them away or to give them away. | 12:40:11 |
| 5 | Q.  So it's fair to say that you have no desire | 12:40:13 |
| 6 | to buy any more Calico Critters products, right? | 12:40:16 |
| 7 | A.  Not at this time, no. | 12:40:20 |
| 8 | Q.  And you don't have any plans to sell or | 12:40:21 |
| 9 | resell any Calico Critters products, right? | 12:40:27 |
| 10 | A.  No. | 12:40:29 |
| 11 | Q.  What age do you think Calico Critters are | 12:40:32 |
| 12 | intended for? | 12:40:43 |
| 13 | A.  Like I said earlier, I would think at least | 12:40:43 |
| 14 | 10.  I put it in the same class with, like, buying | 12:40:49 |
| 15 | beads to make bracelets with all those little | 12:40:59 |
| 16 | pieces.  That's not intended for a small child. | 12:41:02 |
| 17 | Q.  So you think they're really intended for | 12:41:05 |
| 18 | 10-year-old and up? | 12:41:07 |
| 19 | A.  Yeah, in my book, it definitely should be | 12:41:08 |
| 20 | at least 10 and up.  I don't -- honestly, I don't | 12:41:12 |
| 21 | think they should be sold.  They're just way too | 12:41:18 |
| 22 | little for any child. | 12:41:20 |
| 23 | Q.  And you certainly don't think Calico | 12:41:24 |
| 24 | Critters are intended for kids under 3, right? | 12:41:26 |
| 25 | MR. CASTANEDA:  Objection.  Calls for a | 12:41:29 |

Transcript of Williene Jackson-Jones
Conducted on March 19, 2024                          146

| | | |
|---|---|---|
| 1 | BY MR. HOFFMAN: | 12:59:58 |
| 2 | Q.  Go ahead. | 12:59:58 |
| 3 | A.  Larger pieces. | 12:59:59 |
| 4 | Q.  So you believe you're asking the Court to | 13:00:07 |
| 5 | direct the defendants to make the pieces larger; is | 13:00:09 |
| 6 | that right? | 13:00:11 |
| 7 | A.  Yes, not so small for that age. | 13:00:11 |
| 8 | Q.  Are you asking the Court to do anything | 13:00:26 |
| 9 | else? | 13:00:28 |
| 10 | MR. CASTANEDA:  Objection.  Calls for a | 13:00:30 |
| 11 | legal conclusion. | 13:00:34 |
| 12 | THE WITNESS:  Just -- just to -- mainly | 13:00:43 |
| 13 | just to make the product safer.  If not safer, | 13:00:45 |
| 14 | elimination of those small pieces. | 13:00:50 |
| 15 | BY MR. HOFFMAN: | 13:00:57 |
| 16 | Q.  When you say "small pieces," what do you | 13:01:04 |
| 17 | mean by that? | 13:01:06 |
| 18 | A.  Those little small accessory pieces. | 13:01:06 |
| 19 | Q.  What about the critters themselves?  Do you | 13:01:09 |
| 20 | believe that those should be eliminated as well? | 13:01:15 |
| 21 | A.  No, not necessarily.  Just if I had -- if I | 13:01:18 |
| 22 | had to say, if that's what this suit was about, a | 13:01:22 |
| 23 | better material. | 13:01:26 |
| 24 | Q.  A better material?  What do you mean by | 13:01:30 |
| 25 | that? | 13:01:32 |

Transcript of Williene Jackson-Jones
Conducted on March 19, 2024          147

| | | |
|---|---|---|
| 1 | A.  The flock removal. | 13:01:32 |
| 2 | Q.  And what would be a better material than | 13:01:34 |
| 3 | the flocked? | 13:01:37 |
| 4 | A.  Plastic.  Just what regular baby dolls are | 13:01:39 |
| 5 | made out of, with plastic. | 13:01:44 |
| 6 | Q.  And why do you think changing the material | 13:01:47 |
| 7 | would make the product safer? | 13:02:08 |
| 8 | MR. CASTANEDA:  Objection.  Vague and | 13:02:12 |
| 9 | ambiguous.  Calls for a legal conclusion.  Calls | 13:02:14 |
| 10 | for expert testimony. | 13:02:16 |
| 11 | BY MR. HOFFMAN: | 13:02:18 |
| 12 | Q.  Go ahead. | 13:02:18 |
| 13 | A.  Something that doesn't rub off in your | 13:02:20 |
| 14 | mouth or on your hands. | 13:02:23 |
| 15 | Q.  Are you asking the Court to award any money | 13:02:25 |
| 16 | in this case? | 13:02:37 |
| 17 | MR. CASTANEDA:  Objection.  Calls for a | 13:02:38 |
| 18 | legal conclusion. | 13:02:39 |
| 19 | THE WITNESS:  At the very least, what a | 13:02:41 |
| 20 | person put into it.  Pay for the products. | 13:02:44 |
| 21 | BY MR. HOFFMAN: | 13:02:48 |
| 22 | Q.  You mean like a refund? | 13:02:48 |
| 23 | A.  Yes. | 13:02:49 |
| 24 | Q.  Are you asking the Court to award you | 13:02:51 |
| 25 | anything other than a refund for the products that | 13:03:11 |

Transcript of Williene Jackson-Jones
Conducted on March 19, 2024                    156

| | | |
|---|---|---|
| 1 | BY MR. HOFFMAN: | 13:14:38 |
| 2 | Q.  Can you describe what you understand to be | 13:14:46 |
| 3 | your obligations and duties as a class | 13:14:48 |
| 4 | representative? | 13:14:51 |
| 5 | A.  Just to speak on what I've experienced with | 13:14:51 |
| 6 | the product.  And to reach out to others who may | 13:14:58 |
| 7 | have or did experience the same situation with the | 13:15:05 |
| 8 | product.  Or concerns that they had with the | 13:15:09 |
| 9 | product. | 13:15:14 |
| 10 | Q.  And what claims do you understand you're | 13:15:23 |
| 11 | pursuing on behalf of the class? | 13:15:26 |
| 12 | MR. CASTANEDA:  Objection.  Calls for a | 13:15:28 |
| 13 | legal conclusion. | 13:15:32 |
| 14 | THE WITNESS:  Safety. | 13:15:32 |
| 15 | Oh, sorry. | 13:15:33 |
| 16 | The safetiness of this product. | 13:15:37 |
| 17 | BY MR. HOFFMAN: | 13:15:44 |
| 18 | Q.  Are you willing to attend a trial, if this | 13:15:54 |
| 19 | case goes to trial, that could last several days or | 13:15:56 |
| 20 | weeks? | 13:15:58 |
| 21 | A.  Yes. | 13:15:58 |
| 22 | Q.  And you have the capability to do that? | 13:16:01 |
| 23 | A.  Yes. | 13:16:04 |
| 24 | Q.  And are you willing to testify in open | 13:16:06 |
| 25 | court if it comes to trial? | 13:16:11 |

Transcript of Williene Jackson-Jones
Conducted on March 19, 2024                                    170

```
1            IN THE UNITED STATES DISTRICT COURT
             FOR THE CENTRAL DISTRICT OF CALIFORNIA
2      ------------------------------x

3      WILLIENE JACKSON-JONES, et     :

4      al., on behalf of themselves   :

5      and all others similarly       :

6      situated,                      :   Civil Action No.:

7            Plaintiffs,              :   2:23-cv-02567-ODW-SK

8        v.                           :

9      EPOCH EVERLASTING PLAY, LLC,   :

10     et al.,                        :

11           Defendants.              :

12     ------------------------------x

13           I, DEBRA BOLLMAN FARFAN, Certified

14     Shorthand Reporter, License No. 11648, in the State

15     of California, hereby certify that the foregoing is

16     a true and accurate transcript of the proceedings

17     taken before me on Tuesday, March 19, 2024, as

18     thereon stated.

19           I declare under penalty of perjury that the

20     foregoing is true and correct.

21           Executed at Norco, California, on the

22     24th of March, 2024.

23

24     _____
       DEBRA BOLLMAN FARFAN, CSR 11648
25     RDR, CRR, CRC
```

**ARNOLD & PORTER KAYE
SCHOLER LLP**
JAMES F. SPEYER (Bar No. 133114)
james.speyer@arnoldporter.com
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Telephone: +1 213.243.4000
Facsimile: +1 213.243.4199

IAN S. HOFFMAN (*pro hac vice*)
ian.hoffman@arnoldporter.com
601 Massachusetts Avenue, NW
Washington, DC 20001-3743
Telephone: +1 202.942.6406
Facsimile: +1 202.942.5999

*Attorneys for Defendant*
EPOCH EVERLASTING PLAY, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIENE JACKSON-JONES, individually and on behalf of all others situated,<br><br>Plaintiff,<br><br>vs.<br><br>EPOCH EVERLASTING PLAY, LLC, a Delaware limited liability company, and AMAZON.COM SERVICES LLC, a Delaware corporation,<br><br>Defendants. | Case No.: 2:23-cv-02567-ODW-SK<br><br>**DECLARATION OF ALYSSA MASTERSON IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Date: June 24, 2024<br>Time: 1:30 p.m.<br>Judge: Hon. Otis D. Wright II<br>Crtrm.: 5D |

# DECLARATION

I, Alyssa Masterson, declare:

1.      I am the Vice President of Marketing and Product for Epoch Everlasting Play, LLC ("EEP").  My responsibilities include, among other things, overseeing marketing, creative services, and compliance of EEP's products, including Calico Critters products.  In this role I am familiar with Calico Critters products, including which products contain flocked figures and accessories, as well as the size of those flocked figures and accessories.

2.      I am generally familiar with the Small Parts Rule.  I possess and have used a cylinder conforming to the dimensions provided in the Small Parts Rule to determine whether a figure or accessory would be considered small under the rule.

3.      Based on my knowledge of Calico Critters products and familiarity with the small parts cylinder, I have an understanding of which Calico Critters figures and accessories clearly do or clearly do not fit inside the small parts cylinder.

4.      Some Calico Critters flocked figures fit inside the small parts cylinder (and thus are considered "small") and some do not, and some Calico Critters accessories fit inside the small parts cylinder and some do not.  Further, some Calico Critters products contain small figures and small accessories, while other products contain no small figures or small accessories.  Finally, some Calico Critters products contain no small flocked figures but do contain small accessories.

5.      The number of accessories included in Calico Critters product varies, and some products include large numbers (*i.e.*, 20 or more) of accessories.

6.      I have reviewed the list of Calico Critters products in Appendix A that is attached to Plaintiff's Motion.  The list includes dozens of Calico Critters products that do not contain small parts.

7.      For example, Appendix A includes a number of Calico Critters "Family" products, such as the Persian Cat Family (CC1865), the Marshmallow Mouse Family

- 1 -

(CC1802), and the Chocolate Rabbit Family (CC2028).  Each of the flocked figures in these "Family" products is too large to fit in the small parts cylinder.  Further, these products do not contain any accessories.

8.      Though all Calico Critters products on Plaintiff's Appendix A include a small parts warning on the package, that warning does not, and was never intended to, indicate that any parts of the product are small parts within the definition of the Small Parts Rule.  Rather, that warning is included out of an abundance of caution and refers to small parts in a colloquial sense.  As discussed above, many products that have that warning on the package do not in fact contain small parts as defined by the rule.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and was executed this 17th day of May, 2024, at Ridgewood, NJ.

By:  _Alyssa Masterson_____

Alyssa Masterson

VP of Marketing and Product

Epoch Everlasting Play, LLC

- 2 -

**MILSTEIN JACKSON**
**FAIRCHILD & WADE, LLP**
Gillian L. Wade, State Bar No. 229124
gwade@mjfwlaw.com
Sara D. Avila, State Bar No. 263213
savila@mjfwlaw.com
Marc A. Castaneda, State Bar No. 299001
mcastaneda@mjfwlaw.com
2450 Colorado Ave., Ste. 100E
Santa Monica, California 90404
Tel: (310) 396-9600
Fax: (310) 396-9635

[Additional counsel on signature page.]

*Attorneys for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIENE JACKSON-JONES, individually and on behalf of all others situated, KAREN SANTOS, individually and on behalf of all situated,<br><br>Plaintiffs<br><br>vs.<br><br><br>EPOCH EVERLASTING PLAY, LLC, a Delaware limited liability company, TARGET CORPORATION, a Minnesota corporation, and AMAZON.COM SERVICES LLC, a Delaware corporation,<br><br>Defendants. | Case No.  2:23-cv-02567-ODW-SK<br><br>**DECLARATION OF PLAINTIFF WILLIENE JACKSON-JONES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Date: June 10, 2024<br>Time: 1:30 p.m.<br>Judge: Hon. Otis D. Wright II<br>Crtrm.: 5D |

DECLARATION OF PLAINTIFF JACKSON-JONES

## **DECLARATION**

My name is Williene Jackson-Jones and I am a plaintiff in the above-captioned lawsuit.

1.     I have personal knowledge of the facts set forth in this Declaration and could and would testify competently to said information if called upon to do so.

2.     I respectfully submit this declaration in support of Plaintiffs' Motion for Class Certification in this action.

3.     I am willing and able to serve as a class representative. I am aware that as a class representative in this case, I may be called to testify at the trial of this case.

4.     I also understand that it is my responsibility to look after the interests of the other members of the class I seek to represent. This would include keeping in touch with my attorneys about the progress of the case, which I have been doing, as well as ensuring that any settlement of the claims is fair to the other class members.

5.     I purchased the following Calico Critters products online from Amazon.com:

a) Calico Critters Baby Airplane Ride, Dollhouse Playset with Maple Cat Figure Included (purchased on or about June 11, 2021);

b) Calico Critters Sunshine Nursery Bus for Dolls (purchased on or about June 6, 2021);

c) Calico Critters Baby Ferris Wheel, Dollhouse Playset with Toy Poodle Figure Included (purchased on or about June 4, 2021);

d) Calico Critters Town Chocolate Lounge (purchased on or about May 25, 2021);

e) Calico Critters, Doll House Furniture and Decor, Laundry & Vacuum Cleaner (purchased on or about May 25, 2021);

f) Calico Critters Dress Up Set (Lavender & Aqua) (purchased on or about May 25, 2021);

-1-
**DECLARATION OF PLAINTIFF JACKSON-JONES**

g) Calico Critters Town Girl Series - Silk Cat (purchased on or about May 25, 2021);

h) Calico Critters School Lunch Set, 3 inches (purchased on or about July 12, 2022);

i) Calico Critters Town Tea and Treats Set (purchased on or about May 22, 2021);

j) Calico Critters, Town Series, Ready to Play Set (purchased on or about May 22, 2021);

k) Calico Critters Town Fashion Showcase Set (purchased on or about May 22, 2021); and

l) Calico Critters, Doll House Furniture and Décor, Light and Curtain Play Set, Multicolor (purchased on or about May 22, 2021).

6.   I also purchased the following Calico Critters products online from Walmart.com:

a) Calico Critters Grocery Market, Over 30 Pieces of Furniture and Accessories (purchased on or about Jan. 24, 2020);

b) Calico Critters Deluxe Bathroom Set (purchased on or about Jan.24, 2020);

c) Calico Critters Dining Room Set (purchased on or about Jan. 24, 2020);

d) Calico Critters Comfy Living Room Set, Furniture Accessories (purchased on or about Jan. 24, 2020);

e) Calico Critters Children's Bedroom Set, Furniture Accessories (purchased or about Jan. 24, 2020); and

f) Calico Critters Grand Department Store (purchased Apr. 20, 2021).

7.   Had I known the products listed in paragraphs 5 and 6 above were banned hazardous substances, I would not have purchased them.

8.   I have participated actively in this lawsuit, including spending time communicating with my lawyers and searching for documents.

2

**DECLARATION OF PLAINTIFF JACKSON-JONES**

1     9.    To the best of my knowledge, I do not have any interests that are adverse

2    to those of the other class members.

3     10.   If a class is certified, I will continue to vigorously pursue my claims against

4    Defendants on behalf of a class of similarly-situated consumers.

5

6     I declare under the penalty of perjury under the laws of the State of California

7    that the foregoing is true and correct. Signed this _9_ day of March, 2024 in

8    _Lancaster_____, California.

9

10

11   Date: _03-09-2024_ By: _William Jackson-Jones_

12                      Plaintiff Williene Jackson-Jones

DECLARATION OF PLAINTIFF JACKSON-JONES

# EXHIBIT 3

**ARNOLD & PORTER KAYE SCHOLER LLP**
JAMES F. SPEYER (Bar No. 133114)
james.speyer@arnoldporter.com
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Telephone: +1 213.243.4000
Facsimile: +1 213.243.4199

IAN S. HOFFMAN (admitted *pro hac vice*)
ian.hoffman@arnoldporter.com
601 Massachusetts Avenue, NW
Washington, DC 20001-3743
Telephone: +1 202.942.6406
Facsimile: +1 202.942.5999

*Attorneys for Defendants*
EPOCH EVERLASTING PLAY, LLC
and TARGET CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIENE JACKSON-JONES, individually and on behalf of all others situated, KAREN SANTOS, individually and on behalf of all others situated,<br><br>Plaintiffs,<br><br>vs.<br><br>EPOCH EVERLASTING PLAY, LLC, a Delaware limited liability company, TARGET CORPORATION, a Minnesota corporation, and AMAZON.COM SERVICES LLC, a Delaware corporation,<br><br>Defendants. | Case No.: 2:23-cv-02567-ODW-SK<br><br>**DEFENDANT EPOCH EVERLASTING PLAY, LLC'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' INTERROGATORIES** |

### DEFENDANT EPOCH EVERLASTING PLAY, LLC'S RESPONSES TO PLAINTIFFS' INTERROGATORIES

Defendant Epoch Everlasting Play, LLC ("EEP"), by and through its undersigned counsel, submits the following objections and responses to Plaintiffs' Interrogatories.

### PRELIMINARY STATEMENT

EEP has conducted a diligent investigation to date and undertaken a good-faith effort to respond to the Interrogatories in a manner consistent with the Federal Rules of Civil Procedure. EEP's investigation of Plaintiffs' claims and for information responsive to these Interrogatories is ongoing. EEP therefore reserves the right to amend, supplement, correct, or clarify its responses, and to interpose additional objections if deemed necessary with subsequently discovered facts, witnesses, document, or things.

EEP's responses to any Interrogatory are without prejudice to any objections that it has asserted and/or may later assert at any hearing or trial in this action or in any other action.

To the extent these Interrogatories seek information that EEP deems confidential, EEP will provide such responsive information subject to, and only upon entry of, a protective order governing the production of confidential information relevant to the claims brought by Plaintiffs in this action. None of EEP's responses shall constitute an agreement to waive any protections provided by that protective order. EEP objects to any request for confidential or proprietary information to the extent that disclosing such information cannot occur until the parties reach a joint protective order and the Court enters such a joint protective order.

Finally, EEP objects to each Interrogatory to the extent it seeks information protected by the attorney-client privilege, the work product doctrine, and/or other privileges, immunities, or legal protections against disclosure. Nothing contained

- 1 -

DEFENDANT EPOCH EVERLASTING PLAY, LLC'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' INTERROGATORIES
Case No.: 2:23-cv-02567-ODW-SK

**SER-58**

herein is intended to be, nor shall in any way be construed as, waiving any attorney-client privilege, work product doctrine, right to privacy, or any other applicable privileges, immunities, or legal protections against disclosure.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.      EEP objects to the Definition of "Class Period" as "January 1, 2017 through the present." This date is beyond the applicable statute of limitations period and is arbitrary. EEP will provide information applicable to the period of time relevant to the allegations of this action. Specifically, EEP will provide information applicable to the time period Plaintiffs have selected to define the putative class: January 30, 2019 to present. Herein, wherever Plaintiffs' Requests for Production request information within the "Class Period," any EEP response will be confined to the putative class time period of January 30, 2019 to present.

2.      EEP objects to the Definition of "Identify (with respect to a person)" as overbroad and unduly burdensome, and for imposing a burden disproportionate to the needs of the case, including because it seeks identification of the present or last known place of employment. EEP will respond as relevant pursuant to Rule 26(b) of the Federal Rules of Civil Procedure.

3.      EEP objects to the Definition of "Calico Critters" and "Products" as vague, ambiguous, overly broad, and unduly burdensome. Plaintiffs fail to refer with any degree of certainty to which products "are at issue in this Action." EEP will treat "Calico Critters" and "Products" as referring to those Calico Critters branded products that contain a flocked figure.

4.      EEP objects to the Definition of "Plaintiffs" on the grounds that it inaccurately identifies "Priscilla Herrera" as a plaintiff and fails to identify all plaintiffs to this action. EEP will construe "Plaintiffs" to include only the named Plaintiffs in this action.

- 2 -

DEFENDANT EPOCH EVERLASTING PLAY, LLC'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' INTERROGATORIES
Case No.: 2:23-cv-02567-ODW-SK
SER-59

Plaintiffs' claims are not based on any personal injuries suffered by Plaintiffs or anyone else; Plaintiffs' alleged injuries are purely economic.

**INTERROGATORY NO. 13:**

Provide all information related to the March 9, 2023, recall of all Calico Critters Animal Figures and Sets sold with Bottle and Pacifier accessories, referred to at https://epocheverlastingplay.com/recalls/calico-critters/, including the following:

a. The identities of all persons who contacted you in response to the recall.

b. The product(s) or accessor(ies) each such person submitted for recall.

c. The receipts and photographs each such person submitted in response to the recall.

d. A description, including the retail price, of the replacement product(s) or accessor(ies) you provided to each such person

e. Any monetary compensation you provided to each such person as part of the recall.

**OBJECTIONS/RESPONSE TO INTERROGATORY NO. 13:**

EEP incorporates its General Objection and Objections to Definitions and Instructions herein. EEP further objects to this Request for Production as seeking identities and contact information of class members prior to class certification, as such information is irrelevant to any issues prior to the class certification. EEP further objects to this Request as it seeks consumers' personal data and information without a protective order entered by the Court to ensure appropriate treatment of such confidential information. EEP further objects that the information sought is irrelevant to Plaintiffs' claims.

Subject to and without waiving foregoing general and specific objections, EEP states that, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, EEP will produce documents from which Plaintiffs may determine the answer to Interrogatory 13 parts (a) through (c), subject to entry of an appropriate protective order and/or

DEFENDANT EPOCH EVERLASTING PLAY, LLC'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' INTERROGATORIES
Case No.: 2:23-cv-02567-ODW-SK

redaction of personally identifying consumer data, if feasible. EEP further states that it has provided consumers with a plastic vehicle accessory to replace each recalled bottle and pacifier accessory. That vehicle accessory does not have a retail price. EEP has not provided monetary compensation (including a refund) to any person in connection with the recall.

**INTERROGATORY NO. 14:**

Identify any and all international markets where the Products have been distributed or sold for the years 2017 through the present time.

**OBJECTIONS/RESPONSE TO INTERROGATORY NO. 14:**

EEP incorporates its General Objection and Objections to Definitions and Instructions herein. EEP objects to this Interrogatory as overbroad, unduly burdensome, and irrelevant to Plaintiffs' claims in this action, as it seeks information regarding EEP's international sales despite Plaintiffs' claims being limited to purchases by persons in California.

**INTERROGATORY NO. 15:**

Identify all members of your governing body, from January 1, 2017 to the present date, and the dates each identified person served as a member of your governing body.

**OBJECTIONS/RESPONSE TO INTERROGATORY NO. 15:**

EEP incorporates its General Objection and Objections to Definitions and Instructions herein. EEP objects to the term "governing body" as undefined, vague, and ambiguous. EEP further objects to this Interrogatory as overbroad, unduly burdensome, and irrelevant to Plaintiffs' claims. The identities of the members of EEP's "governing body" have no bearing on Plaintiffs' claims

- 13 -

1    Dated: January 19, 2024        ARNOLD & PORTER KAYE SCHOLER LLP

2

3                            By: */s/ James F. Speyer*
                              James F. Speyer

4                            Ian S. Hoffman

5                            Attorneys for Defendants
                            EPOCH EVERLASTING PLAY, LLC and

6                            TARGET CORPORATION

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of January, 2024, I served the foregoing document via e-mail, per agreement of the parties, on the following:

**MILSTEIN JACKSON**
**FAIRCHILD & WADE, LLP**
Gillian L. Wade, State Bar No. 229124
gwade@mjfwlaw.com
Sara D. Avila, State Bar No. 263213
savila@mjfwlaw.com
Marc A. Castaneda, State Bar No. 299001
mcastaneda@mjfwlaw.com
10990 Wilshire Blvd., 8th Floor
Los Angeles, California 90024
Tel: (310) 396-9600

*Counsel for Plaintiffs and the Proposed Class*

Dated: January 19, 2024        ARNOLD & PORTER KAYE SCHOLER LLP

By: */s/ Ian S. Hoffman*
Ian S. Hoffman

Attorney for Defendants
EPOCH EVERLASTING PLAY, LLC and
TARGET CORPORATION

**MILSTEIN JACKSON FAIRCHILD & WADE, LLP**
Gillian L. Wade, State Bar No. 229124
gwade@mjfwlaw.com
Sara D. Avila, State Bar No. 263213
savila@mjfwlaw.com
Marc A. Castaneda, State Bar No. 299001
mcastaneda@mjfwlaw.com
2450 Colorado Ave., Ste. 100E
Santa Monica, California 90404
Tel: (310) 396-9600
Fax: (310) 396-9635

[Additional counsel on signature page.]

*Attorneys for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIENE JACKSON-JONES, individually and on behalf of all others situated, KAREN SANTOS, individually and on behalf of all situated,<br><br>Plaintiffs<br><br>vs.<br><br>EPOCH EVERLASTING PLAY, LLC, a Delaware limited liability company, TARGET CORPORATION, a Minnesota corporation, and AMAZON.COM SERVICES LLC, a Delaware corporation,<br><br>Defendants. | Case No. 2:23-cv-02567-ODW-SK<br><br>**DECLARATION OF GILLIAN L. WADE, ESQ. IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Date: June 10, 2024<br>Time: 1:30 p.m.<br>Judge: Hon. Otis D. Wright II<br>Crtrm.: 5D |

**DECLARATION OF GILLIAN L. WADE, ESQ.**

1    I, Gillian L. Wade, am an attorney duly licensed to practice law before all
2    Courts of this State. I am a partner at the law firm Milstein, Jackson, Fairchild &
3    Wade, LLP ("MJFW"), counsel of record for Plaintiffs Williene Jackson-Jones and
4    Karen Santos ("Plaintiffs"). I respectfully submit this Declaration in support of
5    Plaintiffs' Motion for Class Certification in this action. I have personal knowledge of
6    the facts set forth in this Declaration and could and would testify competently to said
7    information if called upon to do so.

8                    **Counsel's Experience and Knowledge of Applicable Law**

9        1.      As set forth in more detail below, proposed Class Counsel is well-
10   qualified to represent the proposed Class, as we have experience in litigating class
11   actions, other complex litigation, and the types of claims asserted in this action and
12   the applicable law.

13       2.      Some of the matters in which MJFW has been appointed as lead or co-
14   lead class counsel include: *Lita Abella et al. v. Canyon City Foundation*, Los Angeles
15   Superior Court, Case No. 20STCV34345 (2024); *Gilmore, et al. v. Monsanto*
16   *Company*, No. 3:21-cv-08159 (N.D. Cal. 2022); *Imani Whitfield et al. v. Yes To, Inc.,*
17   C.D. Cal. No. Case No. 2:20-cv-00763-AB-AS (C.D. Cal. 2021); *Elkies, et al., v.*
18   *Johnson & Johnson Services, Inc., et al.*, C.D. Cal. No. Case No. 2:17-CV-7320-GW-
19   JEM (C.D. Cal. 2019); *In re Dollar General Motor Corp. Motor Oil Marketing and*
20   *Sales Practices Litigation* (MDL 2709, 2019); *Perez v. Public Storage,* LASC No.
21   BC611584 (2018); *In re Wells Fargo Bank Wage and Hour Cases,* LASC No.
22   JCCP4702 (2018); *Barba et al. v. Shire U.S. Inc.,* S.D. Fla. No. 1:13-cv-21158-
23   JAL(S.D. Fla. 2016); *Eggnatz v. The Kashi Company*, S.D. Fla. No. 1:12-CV-21678-
24   JA (S.D. Fla. 2015); *Paul v. Wine.com,* SFSC Case No. CGC13534734 (2015); *Toney*
25   *v. Just Fabulous*, LASC BC533943 (2015); *Arreguin v. Telebrands Corp., San*
26   *Bernardino County*, Case No. CIVRS1307798 (2015); *McCrary v. The Elations*
27   *Company, LLC*, No. ED CV 13-00242 JGB (OPx) (C.D. Cal.2014); *Smith v. Intuit,*
28   *Inc.*, No. 5:12-cv-00222 EJD (N.D. Cal.2013); *Solomon v. Ramona's Mexican Food*

1  *Products, Inc.* (LASC No. BC 463914 (2013); *Saenz v. SEIU United Healthcare*

2  *Workers West*, Alameda Superior Court Case No. RG09478973 (2013); *Griar, et al.,*

3  *v. Glaxosmithkline, Inc. et al.*, LASC No. BC288536, (2012); *In re Budeprion XL*

4  *Marketing and Sales Practices Litigation*, MDL No. 2107 (2012); *Keller v. Gaspari*

5  *Nutrition, Inc.*, 2:11-cv-06158-GAF (C.D. Cal. 2011); *Weeks et al v. Kellogg, et al.*,

6  CV-09-08102-MMM (C.D. Cal., 2011); *Williams, et al. v. Biotab Nutraceuticals,*

7  *Inc.*, LASC No. BC414808 (2010); *Wally v. CCA Industries, Inc.*, SFSC Case No.

8  BC422833, (2010); *Fallon v. E.T. Browne Drug Co., Inc.*, LASC No. BC 411117

9  (2009); *Oliver, et al. v. Atmos Corporation, San Joaquin Super. Ct.*, Case No.

10  CV0119362 (2009); *Salcido v. Iomedix*, LASC Case No. BC 387942 (2009); *Deist,*

11  *et. al. v. Viking Industries*, San Joaquin Super Ct., Case No. CV 025771 (2009);

12  *Ceballos v. Fuze Beverage, LLC*, LASC Case No. BC 394521 (2009); *Heath, et al. v.*

13  *County of San Bernardino*, ED CV 06-411-VAP (C.D. Cal. 2008); *Klyachman, et al.*

14  *v. The Vitamin Shoppe, et al.*, New Jersey Super. Ct. Case No. L-1739-07 2008);

15  *Shaffer v. Continental Casualty Company, et al.*, 2:06-cv-02235-PSG (C.D. Cal.

16  (2008) (class certification aff'd. at D.C. No. 2:06-cv-02235-PSG-PJW); *Klotzer, et al.*

17  *v. International Windows*, Solano County Super. Ct. Case No. FCS 021196 (2007);

18  *LaRosa v. Nutramerica Corp.*, LASC Case No. BC 309427 (2007); *Abigana, et al. v.*

19  *Rylock Company Ltd.*, Alameda County Case No. 2002 076625, (2006); *Hufschmidt*

20  *v. Allstate Insurance Company,* LASC No. BC291782 (2004).

21       3.     I graduated from the University of California, San Diego in 1999 and earned

22  my law degree from Pepperdine University School of Law, *magna cum laude,* in 2003.

23  My practice focuses on representing plaintiffs in complex litigation and consumer class

24  actions, with particular emphasis on class actions involving unfair business practices and

25  consumer fraud. I have had significant involvement in over 75 consumer class action

26  cases during my time at MJFW, and I have been appointed lead class counsel or co-lead

27  class counsel in several state and federal class actions throughout the United States,

28  including: *Lita Abella et al. v. Canyon City Foundation*, Los Angeles Superior Court,

**DECLARATION OF GILLIAN L. WADE, ESQ.**

1  Case No. 20STCV34345 (2024); *Gilmore, et al. v. Monsanto Company*, No. 3:21-cv-
2  08159 (N.D. Cal. 2022); *Imani Whitfield et al. v. Yes To, Inc.*, C.D. Cal. No. Case No.
3  2:20-cv-00763-AB-AS (C.D. Cal. 2021); *Elkies, et al., v. Johnson & Johnson Services,*
4  *Inc., et al.*, C.D. Cal. No. Case No. 2:17-CV-7320-GW-JEM (C.D. Cal. 2019); *In re*
5  *Dollar General Motor Corp. Motor Oil Marketing and Sales Practices Litigation*
6  (MDL 2709, 2019); *Perez v. Public Storage*,  LASC No. BC611584 (2018); *In re Wells*
7  *Fargo Bank Wage and Hour Cases*, LASC No. JCCP4702 (2018),  *Barba et al. v. Shire*
8  *U.S. Inc.*, No. 1:13-cv-21158-JAL (S.D. Fla.); *Eggnatz v. The Kashi Company*, No.
9  1:12-CV-21678-JAL, (S.D. Fla.); *Toney v. Just Fabulous*, (LASC BC533943); *Paul*
10 *v. Wine.com*, (SFSC CGC13534734); *Arreguin v. Telebrands Corp.* (San Bernardino
11 County Case No. CIVRS1307798); *McCrary v. The Elations Co., LLC*, EDCV 13-
12 00242 JGB (OPx) (C.D. Cal.); *Saenz v.  SEIU United Healthcare Workers-West*
13 (Alameda  Superior  Court,  No. RG09478973); *Smith, et al. v. Intuit, Inc.,* 5:12-cv-
14 00222-EJD (N.D. Cal.); *In re Budeprion XL and Marketing and Sales Practices*
15 *Litigation* (MDL No. 2107) (E.D. Pa.); *Keller v. Gaspari Nutrition, Inc.* No. 2:11-cv-
16 06158-GAF (C.D. Cal.);  *Shaffer v. Continental Casualty Company*, 2:06-cv-2235-
17 PSG (C.D. Cal.); *Weeks, et al. v. Kellogg, et al.*, CV-09-08102 (MMM)(C.D. Cal.);
18 *Thompson, et al., v. Biotab Nutraceuticals*, Inc. (LASC No. BC414808); *Pabst v.*
19 *Genesco, Inc.,* 3:11-cv-01592-SI (N.D. Cal.); *Heath, et al. v. County of San*
20 *Bernardino,* 5:06-CV-00411-VAP (C.D. Cal.); *Solomon v. Ramona's Food Products,*
21 LASC No. BC 451080; *Wike v. HCG Platinum, LLC,* LASC. No. BC451080; *Litwin*
22 *v. iRenew, et al.*, LASC. No. BC447114; and *Fallon v. ET Browne Drug Corp.*,
23 LASC No. 411117. I have also been appointed to the Plaintiffs' Executive
24 Committees in several federal class actions centralized by the MDL Panel, including:
25 *In re Nutramax Cosamin Marketing and Sales Practices Litigation* (MDL No.
26 2489)(D. Md.); *In re Pom Wonderful Marketing and Sales Practices Litigation* (MDL
27 No. 2199)(C.D. Cal.); *In re Budeprion XL Marketing and Sales Practices Litigation*
28 (MDL No. 2107) (E.D. Pa.); *In re Liberty Refund Anticipation Loan Litig.* (MDL No.

2334) (N.D. Ill.) and *In re H&R Block Refund Anticipation Litig.* (MDL No. 2373) (N.D. Ill.).

4.    I am a frequent lecturer on class action practice, including serving as the plaintiff-side panelist along with Judges and neutrals in a nationwide JAMS Webinar entitled "Cutting Edge Issues In Mediating and Arbitrating Consumer Class/Mass Action Claims" in 2021. I have written articles regarding class action litigation and was the Plaintiffs' co-chair of the 2019 , 2020 and 2022 Bridgeport Consumer Class Action Litigation and Management conferences in Southern California.

5.    In February 2023, I was invited to participate in the Consumer Pacakaged Goods Legal Forum as a Plaintiff-side panelist discussing class action litigation issues affecting the CPG industry to a group of defense attorneys and their clients.  I was also the Plaintiff-side presenter in Bridegport's 2023 program entitled "Article III Standing in Class Action Litigation: A Concise Legal Webinar."

6.    I have also participated as a panelist at numerous conferences regarding consumer class action litigation, including, "Does Compliance Matter? Class Actions Over Regulated Labels" at the 2014 American Bar Association Section of Antitrust Law Spring Meeting in Washington, D.C., the 2015, 2016, 2017 2018, 2019, 2020 and 2022  Bridgeport Consumer Class Action Litigation & Management Conferences in Los Angeles, Orange County and virtually, the 2019 and 2020 Mass Torts Made Perfect (Class Action Track) conference, and the 2017 and 2020 CLE International Food Law Conference, where I presented plaintiff perspectives on class action procedural issues affecting food litigation.

7.    In 2019, I accepted an invitation to join the Outside Advisory Board of the UCLA Resnick Center for Food & Law Policy and have been an executive member of the Cambridge Class Action Forum since 2023, and am a founding member of the Cambridge Food Fraud Forum. I have guest lectured at UCLA Law School and Pepperdine Caruso School of Law about class action litigation and was selected to be on the 2018-2019 executive committee for The Class Action Trial

-4-

**DECLARATION OF GILLIAN L. WADE, ESQ.**

1  Lawyers Association – Top 25. In 2020, I participated as a plaintiff-side moderator in
2  the Complex Courts Virtual Symposium, among a panel of California complex court
3  judges on the topic "The Lifecycle, Pitfalls and Best Practices of Class Actions."

4        8.     Marc Castaneda is an associate at MJFW and part of the firm's consumer
5  class action practice group, and admitted to practice in this Court. He has been
6  admitted to practice law in California since 2014. Marc graduated from Columbia
7  University with a Bachelor of Arts in 2009 and received his Juris Doctorate from
8  Fordham University School of Law in 2014. He has worked on over 25 class actions
9  during his time at MJFW and co-chaired a consumer fraud class action trial in 2019
10  and an employment discrimination action the same year. He was also appointed Class
11  Counsel in *Lita Abella et al. v. Canyon City Foundation*, Los Angeles Superior Court,
12  Case No. 20STCV34345 (2024); *In re Dollar General Motor Corp. Motor Oil*
13  *Marketing and Sales Practices Litigation* (MDL 2709, 2019) and *Gilmore, et al. v.*
14  *Monsanto Company*, No. 3:21-cv-08159 (N.D. Cal. 2022).

15        9.     Sara Avila is a senior associate at MJFW and part of the firm's consumer
16  class action practice group, and is admitted to practice law in this Court. Ms. Avila
17  graduated from the University of California, Los Angeles with a Bachelor of Arts and
18  received her Juris Doctorate from Pepperdine Caruso School of Law. She has been
19  admitted to practice law in California since 2009. She has had significant
20  involvement in over 50 consumer class actions. Her career has been focused on
21  representing plaintiffs in actions stemming from consumer deception, and she has
22  been appointed class counsel in the following cases: *Gilmore, et al. v. Monsanto*
23  *Company*, No. 3:21-cv-08159 (N.D. Cal. 2022); *Imani Whitfield et al. v. Yes To, Inc.*,
24  C.D. Cal. No. Case No. 2:20-cv-00763-AB-AS (C.D. Cal. 2021); *Elkies, et al., v.*
25  *Johnson & Johnson Services, Inc., et al.*, C.D. Cal. No. Case No. 2:17-CV-7320-GW-
26  JEM (C.D. Cal. 2019); *In re Dollar General Motor Corp. Motor Oil Marketing and*
27  *Sales Practices Litigation*, MDL 2709 (2019); *Perez v. Public Storage*, LASC No.
28  BC611584 (2018); *Barba et al. v. Shire U.S. Inc.*, No. 1:13-cv-21158-JAL (S.D.

**DECLARATION OF GILLIAN L. WADE, ESQ.**

1   Fla.); *Eggnatz v. The Kashi Company*, No. 1:12-CV-21678-JAL, (S.D. Fla.); *Toney v.*

2   *Just Fabulous*, (LASC BC533943); *Paul v. Wine.com*, (SFSC CGC13534734);

3   *Arreguin v. Telebrands* Corp. (San Bernardino County Case No. CIVRS1307798);

4   *McCrary v. The Elations Co., LLC*, EDCV 13-00242 JGB (OPx) (C.D. Cal.); *Saenz v.*

5   *SEIU United Healthcare Workers-West* (Alameda Superior Court, No. RG09478973).

6   Ms. Avila participated as a presenting panelist at the 2019 and 2020 Bridgeport

7   Consumer Class Action Litigation & Management Conferences in Orange County,

8   California.

9        10.    David Slade of the law firm WH Law received his Bachelor of Arts from

10  Yale University and graduated with high honors from The University of Arkansas at

11  Little Rock. Mr. Slade is licensed to practice in Arkansas, and has been admitted *pro*

12  *hac vice* to practice law in this court in this action.  Mr. Slade has been appointed class

13  counsel in the following, representative cases: *Michael McDonald et al., v. Kiloo Aps*

14  *et al.*, No. 17-cv-04344-JD (N.D. Cal.); *Amanda Rushing et al., v. The Walt Disney*

15  *Company et al.*, No. 17-cv-04419-JD (N.D. Cal.); *Amanda Rushing, v. Viacom Inc. et*

16  *al.*, case no. 17-cv-04492-JD (N.D. Cal.); *Campbell v. Facebook*, No. 13-cv-05996

17  (N.D. Cal.); *Matera v. Google Inc.*, No. 5:15-cv-04062 (N.D. Cal.).

18       11.    Additionally, Mr. Slade has served or currently serves as outside counsel

19  for the State of New Mexico (*see, State of New Mexico ex rel. Hector Balderas,*

20  *Attorney General v. Rovio Entertainment Corporation*, No. 1:21-cv-00824

21  (D.N.M.); *State of New Mexico ex rel. Hector Balderas, Attorney General v. Tiny Lab*

22  *Productions, et al.*, No. 18-cv-00854 (D.N.M.); and *State of New Mexico ex rel.*

23  *Hector Balderas, Attorney General v. Tiny Lab Productions, et al.*, No. 20-cv-00143-

24  NDF (D.N.M.)); the State of Mississippi (*see State of Mississippi v. Meta Platforms,*

25  *Inc., Instagram, LLC, Meta Payments, Inc. and Meta Platforms Technologies,* LLC;

26  Case No. 2023-cv-1205 (Chancery Court of Hinds County, First District, Mississippi));

27  and the State of Nevada (*see, State of Nevada v. Meta Platforms, Inc. f/k/a Facebook,*

28  *Inc.*, No. A-24-886110-B (District Court, Clark County, Nevada) (against Meta's

**DECLARATION OF GILLIAN L. WADE, ESQ.**

1    Messenger platform); *State of Nevada v. Meta Platforms, Inc. f/k/a Facebook, Inc.;*
2    *Instagram, LLC*, No. A-24-886120-B (District Court, Clark County, Nevada) (against
3    Meta's Instagram platform); *State of Nevada v. Meta Platforms, Inc. f/k/a Facebook,*
4    *Inc.*, No. A-24-886115-B (District Court, Clark County, Nevada) (against Meta's
5    Facebook platform); *State of Nevada v. Snap, Inc.*, No. A-24-886113-B (District Court,
6    Clark County, Nevada); *State of Nevada v. TikTok, Inc., et al.*, No. A-24-886127-B
7    (District Court, Clark County, Nevada).

8         12.   At WH Law, Mr. Slade's principal focus is on consumer protection, with
9    an emphasis on data privacy, data security, antitrust, and antitrust-adjacent areas in the
10   tech space. Extending his advocacy beyond litigation, he also organized a cyber safety
11   training summit for Arkansas law enforcement and victim assistance professionals, in
12   conjunction with the National Organization of Victim Assistance (NOVA) and also has
13   established multiple coordinated practice groups focused on diluting the preemptive
14   effect of Section 230 of the Communications Decency Act.

15        13.   Mr. Slade has presented at CLEs and other professional gatherings related
16   to, *inter alia*, data breach litigation, the professional obligations of local counsel, and
17   changes in the law surrounding Section 230.

18        14.   In addition to his work in the class action context, Mr. Slade is a member
19   of the Volunteers Organization, Center for Arkansas Legal Services (VOCALS), an
20   organization committed to pro bono advocacy, and serves on the board of the Center
21   for Arkansas Legal Services (CALS).

22        15.   Jack Walker is a partner at the law firm Martin Walker and is licensed to
23   practice in Texas, and has been admitted *pro hac vice* to practice law in this court in
24   this action. Mr. Walker is a trial lawyer who has dedicated his career to helping those
25   who have been injured because of the negligence of other individuals, professionals or
26   corporations. He has been Board Certified by the Texas Board of Legal Specialization
27   in personal injury trial law since 1999 and has tried numerous jury trials to verdict. Mr.
28   Walker focuses his trial practice on catastrophic injury cases. Mr. Walker has received

**DECLARATION OF GILLIAN L. WADE, ESQ.**

numerous awards, including Recipient of the Texas Trial Lawyers Association (TTLA) Reich Chandler Outstanding Advocate Award, 2014; inducted into the Texas Verdicts Hall of Fame in 2020 by Texas Lawyer; Best Lawyers in America, Plaintiffs Personal Injury Litigation, 2020-2024; Texas Super Lawyers by Thomson Reuters, 2019-2023; 500 Leading Plaintiff Consumer Lawyers by Lawdragon, 2020-2023; and, Texas Top Verdicts in 2018 – Largest Medical Malpractice Verdict statewide, as published by Texas Lawyer.

16.    Justin Kaufman is a partner with Durham, Pittard & Spalding, LLP ("DP&S"), and is licensed to practice in New Mexico, Texas, and New York, and admitted *pro hac vice* to practice in this court in this action. He received his B.A. from Cornell University's College of Arts and Sciences, and his J.D., *cum laude*, from Temple University School of Law, where he served as editor of the Temple Law Review. Mr. Kaufman also holds an M.B.A. from Temple University's Fox School of Business. Mr. Kaufman specializes in appellate and trial court briefing and oral argument in complex litigation including wrongful death, catastrophic injury, toxic tort, product defect, and consumer fraud. Mr. Kaufman has also represented clients and state attorneys general in multi-district litigation throughout the United States.

17.    Philip M. Kovnat, of counsel at DP&S, is licensed to practice in New York and New Mexico, as well as the United States Supreme Court, and the United States Courts of Appeals for the Third, Fourth, Fifth, Seventh, Ninth, Tenth, and D.C. Circuits. He was also admitted *pro hac vice* in this action. Mr. Kovnat did his undergraduate work at New York University, and he earned his Juris Doctor from American University-Washington College of Law. Mr. Kovnat was an appellate and trial attorney with the U.S. Equal Employment Opportunity Commission (EEOC) in Washington, D.C. and Philadelphia for more than a decade. As an EEOC attorney, Phil handled all phases of litigation on behalf of the U.S. Government, including multiple class and collective actions under the federal civil rights statutes. Mr. Kovnat has served as a first-chair trial attorney, and he has briefed and argued cases in the

- 8 -

DECLARATION OF GILLIAN L. WADE, ESQ.

1    Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits. Mr.

2    Kovnat has also worked with the Office of the Solicitor General and other offices

3    within the U.S. Department of Justice on certiorari-level and merits-stage proceedings

4    in the U.S. Supreme Court.

5        18.   In *Cause No. CIV 19-0933 JB/SCY, D. Maria Schmidt, as personal*

6    *representative for the estate of Dakotah Dedios, Deceased, and Richaline Dedios v.*

7    *International Playthings LLC; Epoch Coompany, Ltd; Epoch Everlasting Play, LLC;*

8    *Walmart, Inc. and Marie Short, in the United States District Court for the District of*

9    *New Mexico*, Mr. Walker and Mr. Kaufman successfully resolved a suit involving the

10   Calico Critters flocked toy. In that matter, Mr. Walker and Mr. Kaufman argued and

11   successfully obtained a judicial ruling that the Calico Critters flocked toy is a per se

12   violation of the small parts regulation of the FHSA because it is intended definitively

13   for use by children under three years of age. Dkt. No. 172 p.78-79.

14       19.   For purposes of this Declaration and the concurrently-filed motion, the

15   term "proposed Class Counsel" collectively refers to Plaintiffs' counsel of record in

16   this action, introduced in paragraphs 1 through 18 above.

17       20.   As detailed above, proposed Class Counsel has significant experience

18   prosecuting large consumer class actions, complex litigation, and the types of claims

19   asserted in the instant matter.

20       21.   Proposed Class Counsel has been litigating this case since filing on June

21   7, 2022. They have engaged in motion practice, propounded and responded to written

22   discovery, and participated in meet and confer sessions with the defendants over

23   discovery disputes and case management.

24       22.   Proposed Class Counsel is knowledgeable about the dedication necessary

25   to successfully pursue and resolve this case on behalf of the Class.

26       23.   Proposed Class Counsel is willing and able to continue prosecuting this

27   action vigorously and to dedicating the resources and expertise necessary to represent

28   a class and successfully manage a class action to its conclusion.

-9-
**DECLARATION OF GILLIAN L. WADE, ESQ.**

24.    Plaintiffs have spent significant time on this action to date, having initated this action, responded to written discovery, and are both scheduled for depositions later this month.  Plaintiff's have been very engaged and have followed the progress of the suit closely, and are clearly committed to seeing it to its completion.

### No Conflicts

25.    Proposed Class Counsel are unaware of any conflicts of interest with Plaintiffs nor with any members of the proposed Class.

### Exhibits

26.    Appendix A to Plaintiffs' Motion for Class Certification lists the products that are the subject of this lawsuit. These products are Calico Critters Flocked Toys that were sold with a small part, as determined by 16 C.F.R. 1501.4 (the "Products").

27.    To create Appendix A, my paralegal, David Marin, first compiled a list of all Calico Critters Flocked Toys sold in California during the class period using the products identified by each defendant in the following documents produced in discovery:

| Responding Defendant | Bates label | Defendant's Description of Document |
| --- | --- | --- |
| Amazon | AMZ_00000002 | Sales data, which identifies, on a sale-by-sale basis, the units sold (by ASIN) to customers with California billing addresses from January 30, 2019, through the present. |
| Epoch Everlasting Play ("EEP") | Exhibit A to Defendant Epoch Everlasting play, LLC'S First Supplemental Responses to Plaintiffs' Interrogatories Nos. 5 and 7 | Sales data for all Calico Critters products containing a flocked figure that were (a) sold and shipped by it to consumers located in California, or (b) sold by dropship retailers and shipped (including Target) by Epoch to consumers located in California, between January 30, 2019 and December 31, 2023. |

**DECLARATION OF GILLIAN L. WADE, ESQ.**

| Target | Exhibit A to Defendant Target Corporation's First Supplemental Responses to Plaintiffs' Interrogatories | Sales data for Calico Critters products containing a flocked figure that were (a) purchased from Target.com and shipped to addresses located in California, or (b) purchased from Target stores located in California, between January 30, 2019 and December 31, 2023. |

28. Attached hereto as **Exhibit 1** is a chart containing each Product with a corresponding URL for a website demonstrating Epoch has represented that the particular Product "contains small parts."

29. To create Exhibit 1, Mr. Marin visited Epoch's official Calico Critters website. Using the Item Number and product descriptions provided by Defendants Amazon, Epoch, and Target, Mr. Marin located webpages for 215 of the Products on the Calico Critters website. Mr. Marin confirmed the websites state: "Choking Hazard-Small Parts. Not for children under 3." Those Products are identified in Exhibit 1.

30. There were 111 Products identified by Defendants that are not on the Calico Critters website. Mr. Marin was able to find the packaging for those Products on different websites, other than https://store.calicocritters.com/, and confirmed those websites state: "Choking Hazard-Small Parts. Not for children under 3" for the subject products.  Those Products are identified in Exhibit 1 (highlighted green).

31. No URL or product images have been provided herein for 12 of the Products, which were the subject of a product recall on March 9, 2023. See https://www.cpsc.gov/Recalls/2023/Epoch-Everlasting-Play-Recalls-All-Calico-Critters-Animal-Figures-and-Sets-Sold-with-Bottle-and-Pacifier-Accessories-More-than-3-2-Million-Due-to-Choking-Hazard-Two-Deaths-Reported (last viewed March 11, 2024) (U.S. Consumer Product Safety Commission's recall notification). Epoch stated "it has provided consumers with a plastic vehicle accessory to replace each

-11-

DECLARATION OF GILLIAN L. WADE, ESQ.

1  recalled bottle and pacifier accessory. That vehicle accessory does not have a retail

2  price. EEP has not provided monetary compensation (including a refund) to any

3  person in connection with the recall." (*See* Epoch's response to Interrogatory No. 13

4  (attached hereto as Exhibit 3 at page 12).) Accordingly, the recalled Products are

5  included in the list of Products at issue in this action. Those Products are identified in

6  Exhibit 1 (highlighted red).

7      32.   Of all the Calico Critters flocked toys identified by all Defendants as

8  having been sold in California during the class period, only four are not included in

9  the list of Products. They have been omitted because there is no indication that Epoch

10 represented they contain small parts.

11     33.   Attached hereto as **Exhibit 2** is a composite exhibit containing true and

12 correct copies of the first page of each URL listed in Exhibit 1. In the images, the

13 language "Choking Hazard-Small Parts. Not for children under 3 years" has been

14 highlighted yellow by my office for ease of reference.

15     34.   Attached hereto as **Exhibit 3** is a true and correct copy of Defendant

16 Amazon.com Services LLC's Objections and Responses to Plaintiffs' First Set of

17 Interrogatories dated January 19, 2024.

18     35.   Attached hereto as **Exhibit 4** is a true and correct copy of Defendant

19 Epoch Everlasting Play, LLC's Objections and Responses to Plaintiffs'

20 Interrogatories dated January 19, 2024.

21     36.   Attached hereto as **Exhibit 5** is a true and correct copy of Defendant

22 Target Corporation's Responses to Plaintiffs' Interrogatories, Set One, dated January

23 19, 2024.

24     37.   Attached hereto as **Exhibit 6** is a true and correct copy of Defendant

25 Epoch Everlasting Play, LLC's First Supplemental Responses to Plaintiffs'

26 Interrogatories Nos. 5 and 7, dated February 16, 2024, without the exhibit. In an

27 effort to streamline this filing and minimize the use of paper, the exhibit thereto is not

28 attached, as it is a large file and has been deemed by Epoch to contain confidential

-12-
**DECLARATION OF GILLIAN L. WADE, ESQ.**

1    information pursuant to the Protective Order in this action. However, I have reviewed

2    the sales information contained therein.

3        38.   Attached hereto as **Exhibit 7** is a true and correct copy of Defendant

4    Target Corporation's First Supplemental Responses To Plaintiffs' Interrogatories

5    Nos. 5 and 7, dated February 16, 2024, without the exhibit. In an effort to streamline

6    this filing and minimize the use of paper, the exhibit thereto is not attached, as it is a

7    large file and has been deemed by Target to contain confidential information pursuant

8    to the Protective Order in this action. However, I have reviewed the sales information

9    contained therein.

10       39.   I have also reviewed the document Amazon produced containing sales

11   data (AMZ_00000002). In an effort to streamline this filing and minimize the use of

12   paper, the exhibit thereto is not attached, as it is a large file and has been deemed by

13   Amazon to contain confidential information pursuant to the Protective Order in this

14   action.

15       40.   Attached hereto as **Exhibit 8** is a true and correct copy of Defendant

16   Epoch Everlasting Play, LLC's Objections and Responses to Plaintiffs' Request for

17   Production of Documents dated January 19, 2024.

18
19       41.   Attached hereto as **Exhibit 9** is a true and correct copy of Defendant

20   Target Corporation Response to Plaintiffs' Request for Production of Documents, Set

21   One dated January 19, 2024.

22
23       I declare under the penalty of perjury under the laws of the State of California

24   that the foregoing is true and correct. Signed this 11 day of March, 2024 in Los

25   Angeles, California.

26                                    _____

27                                    Gillian L. Wade, Declarant

28

-13-
**DECLARATION OF GILLIAN L. WADE, ESQ.**

1 | **MILSTEIN JACKSON**
**FAIRCHILD & WADE, LLP**
2 | Gillian L. Wade, State Bar No. 229124
gwade@mjfwlaw.com
3 | Sara D. Avila, State Bar No. 263213
savila@mjfwlaw.com
4 | Marc A. Castaneda, State Bar No. 299001
mcastaneda@mjfwlaw.com
5 | 2450 Colorado Ave., Ste. 100E
Santa Monica, California 90404
6 | Tel: (310) 396-9600
Fax: (310) 396-9635
7 |

8 | [Additional counsel on signature page.]

9 | *Attorneys for Plaintiffs and the Proposed Class*

10 |

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIENE JACKSON-JONES, individually and on behalf of all others situated, KAREN SANTOS, individually and on behalf of all situated, | Case No.  2:23-cv-02567-ODW-SK |
| Plaintiffs | **PLAINTIFFS' REDACTED MOTION FOR CLASS CERTIFICATION** |
| vs. | |
| EPOCH EVERLASTING PLAY, LLC, a Delaware limited liability company, TARGET CORPORATION, a Minnesota corporation, and AMAZON.COM SERVICES LLC, a Delaware corporation, | Date: June 10, 2024
Time: 1:30 p.m.
Judge: Hon. Otis D. Wright II
Crtrm.: 5D |
| Defendants. | |

**SER-78**

**PLAINTIFFS' REDACTED MOTION FOR CLASS CERTIFICATION**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES................................................................. ii

INTRODUCTION ...........................................................................1

RELEVANT FACTS AND BACKGROUND .........................................3

    A.    Calico Critters Flocked Toys and Plaintiffs' Allegations .......................3

    B.    Calico Critters Are Flocked Animal Figurines, Such Toys are Intended for Children Under 3 as a Matter of Law, and Defendants Have Conceded this Point..................................................................5

    C.    The Class Representatives' Purchase of Calico Critters Flocked Toys ..........................................................................6

    D.    Plaintiffs' Requested Relief..............................................7

PROPOSED CLASS DEFINITION .....................................................8

LEGAL STANDARD ......................................................................9

ARGUMENT...............................................................................10

    A.    Class Certification is Appropriate Under Rule 23(a)...........................10

        1.    The Proposed Class is Numerous...................................10

        2.    Plaintiffs' Claims Present Common Issues of Law and Fact..........11

        3.    Plaintiffs' Claims are Typical .......................................13

        4.    Plaintiffs and Their Counsel Will Adequately Represent the Class..............................................................14

            a.    Neither Plaintiffs Nor Their Counsel Have Any Conflicts of Interest with Any Class Members...............................14

            b.    Plaintiffs and Their Counsel Will Continue to Vigorously Prosecute this Action .................................15

**PLAINTIFF'S REDACTED MOTION FOR CLASS CERTIFICATION**

B.    Class Certification is Appropriate Under Rule 23(b)(3) .........................15

1.    Common Issues of Law and Fact Predominate................................16

a.  Plaintiffs' UCL Claims  ...............................................................17

b.  Plaintiffs' Unjust Enrichment Claim  ..........................................18

2.    Relief Can be Determined on a Class-Wide Basis...........................18

a.    Restitution Can be Calculated on a Class-Wide Basis.............18

b.    Injunctive Relief Will be the Same for the Entire Class..........19

3.    Class Treatment is Superior to Other Adjudication Methods..........20

C.    Alternatively, Class Certification Under Rule 23(b)(2) Is
Appropriate.............................................................................................21

CONCLUSION .........................................................................................22

APPENDIX A

**PLAINTIFF'S REDACTED MOTION FOR CLASS CERTIFICATION**

# TABLE OF AUTHORITIES

**Cases** *Page*

*Amchem Prods., Inc. v. Windsor* (1997)
   521 U.S. 591 ...................................................................................16

*Amgen v. Conn. Ret. Plans & Tr. Funds* (2013)
   568 U.S. 455 ...................................................................................15

*Blackie v. Barrack* (9th Cir. 1975)
   524 F.2d 891 ...................................................................................16

*Bradach v. Pharmavite, LLC* (9th Cir. 2018)
   735 Fed. Appx. 251...........................................................................16

*Briseno v. ConAgra Foods, Inc.* (9th Cir.)
   844 F.3d 1121 ..................................................................................21

*Bruton v. Gerber Prods. Co*. (9th Cir. July 17, 2017)
   2017 U.S. App. LEXIS 12833 ...........................................................17

*Cartwright v. Viking Indus.* (E.D. Cal. Sep. 11, 2009)
   2009 U.S. Dist. LEXIS 83286 ...........................................................18

*Chavez v. Blue Sky Nat. Beverage Co.* (N.D. Cal. 2010)
   268 F.R.D. 365..............................................................................18, 19

*Clevenger v. Welch Foods Inc.* (C.D. Cal. 2022)
   342 F.R.D. 446.................................................................................17

*Comcast v. Behrend* (2013)
   569 U.S. 27 ...................................................................................9, 18

*Echostar Satellite Corp. v. NDS Group PLC* (C.D. Cal. Oct. 15, 2008)
   2008 U.S. Dist. LEXIS 110425 .........................................................17

*Elgin, J. & E. R. Co. v. United States* (N.D. Ind. 1937)
   18 F. Supp. 19..................................................................................18

*Elkies v. Johnson & Johnson* (C.D. Cal. Oct. 18, 2018)
   2018 U.S. Dist. LEXIS 241197 ..................................................... 11, 14, 21

**PLAINTIFF'S REDACTED MOTION FOR CLASS CERTIFICATION**

*Ellis v. Costco Wholesale Corp.* (9th Cir. 2011)
    657 F.3d 970 ........................................................................12, 13

*Farmers Ins. Exchange v. Superior Court* (1992)
    2 Cal. 4th 377 ...........................................................................1, 17

*Gen. Tel. Co. of the Nw., Inc. v. EEOC* (1980)
    446 U.S. 318 .................................................................................10

*Gen. Tel. Co. of Sw. v. Falcon* (1982)
    457 U.S. 147 ...................................................................................9

*Hamm v. Mercedes-Benz United States* (N.D. Cal. Apr. 2, 2021)
    2021 U.S. Dist. LEXIS 65098.........................................................8

*Hanlon v. Chrysler Corp.* (9th Cir. 1998)
    150 F. 3d 1011........................................................................14, 16

*In re HiEnergy Techs., Inc. Sec. Litig.* (C.D. Cal. Sept. 26, 2006)
    2006 U.S. Dist. LEXIS 99265 ......................................................10

*Just Film, Inc. v. Buono* (9th Cir. 2017)
    847 F.3d 1108 ...............................................................................13

*Kearns v. Ford Motor Co.* (9th Cir. 2009)
    567 .3d 1120 .................................................................................17

*Lozano v. AT & T Wireless Services, Inc*. (9th Cir. 2007)
    504 F.3d 718.................................................................................13

*Lyles v. Sangadeo-Patel* (Cal. App. 2014)
    225 Cal. App. 4th 759 ..................................................................18

*MacDougall v. Am. Honda Motor Co., Inc.* (C.D. Cal. Oct. 3, 2023)
    2023 U.S. Dist. LEXIS 235433 ....................................................18

*Phillips Petroleum Co. v. Shutts* (1985)
    472 U.S. 797.................................................................................20

*Pulaski v. Middleman, LLC v. Google, Inc.* (9th Cir. 2015)
    802 F.3d 979.................................................................................19

**PLAINTIFF'S REDACTED MOTION FOR CLASS CERTIFICATION**

*Rannis v. Recchia* (9th Cir. 2010)
 380 F. App'x 646 .................................................................10

*Rojas v. Bosch Solar Energy Corp.* (N.D. Cal. Mar. 9, 2022)
 2022 U.S. Dist. LEXIS 42193 ........................................18

*Sali v. Corona Reg'l Med. Ctr.* (9th Cir. 2018)
 909 F.3d 996 ...................................................................10

*Schmidt v. Int'l Playthings LLC* (D.N.M. 2021)
 536 F. Supp. 3d 856 ........................................................16

*Steroid Hormone Prod. Cases* (2010)
 181 Cal. App. 4th 145 .....................................................17

*Tait v. BSH Home Appliances Corp.* (C.D. Cal. Dec. 20, 2012)
 289 F.R.D. 466................................................................16

*Valentino v. Carter-Wallace* (9th Cir. 1996)
 97 F.3d 1227 ...................................................................20

*Vinole v. Countrywide Home Loans, Inc.* (9th Cir. 2009)
 571 F.3d 935 ...................................................................16

*Wal-Mart Stores, Inc. v. Dukes* (2011)
 564 U.S. 338 ................................................... 9, 12, 13, 14

*Walters v. Reno* (9th Cir. 1998)
 145 F.3d 1032 .................................................................21

**Other**

15 U.S.C. § 1261 .......................................................................1

15 U.S.C. § 1262 .......................................................................3

15 U.S.C. § 1263(a).............................................................4, 17

16 C.F.R. § 1500.18(a)(9) ....................................................3, 16

16 C.F.R. §1501........................................................ 3, 5, 12, 16

29 C.F.R. § 1501.................................................................1, 5

**PLAINTIFF'S REDACTED MOTION FOR CLASS CERTIFICATION**

Cal. Bus. & Prof. Code § 17200 ................................................................... 1

Fed. R. Civ. P. Rule 23 .................................................. 8, 9, 11, 14, 15, 17, 20, 21

**PLAINTIFF'S REDACTED MOTION FOR CLASS CERTIFICATION**

**INTRODUCTION**

The Court should certify for class treatment Plaintiffs' claims under the "unlawful" and "unfair" prongs of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"), and their claim of unjust enrichment, on behalf of themselves and the proposed Class, as defined below. This case is particularly well-suited for class treatment, as there are limited questions of law and fact, all of which can be answered using common proof.

Specifically, common proof will establish (1) that Calico Critters flocked toys are—as a matter of law—intended for children under the age of three, and (2) when they contain small parts, these toys are "banned hazardous substances" under the Federal Hazardous Substances Act, 15 U.S.C. § 1261, *et seq.* ("FHSA"). Under California law, if the toys at issue are banned under the FHSA, they are being sold in violation of the "unlawful" prong of the UCL. *See, e.g.*, *Farmers Ins. Exchange v. Superior Court*, 2 Cal. 4th 377, 383 (1992) ("an action based on [UCL § 17200] to redress an unlawful business practice 'borrows' violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices *independently actionable* under [UCL § 17200] and subject to the distinct remedies provided thereunder") (emphasis added). Here, Defendants have unlawfully, unfairly, and unjustly sold these toys directly to consumers in flagrant violation of California law.

In several key respects, these merits determinations have already been made. For example, in denying Defendants' Motion to Dismiss, this Court held "the plain language of [16 C.F.R.] § 1501.2 unambiguously defines flocked animals and figures as undeniably intended for children under three years of age." ECF No. 43 ("Order") at 5. As set forth more fully below, Defendants themselves *concede* this holding obviates the need for any further proof on this threshold legal issue.

Thus, the only remaining question for liability is whether the Calico Critters products at issue contain "small parts" under the FHSA. As set forth in detail below,

**PLAINTIFF'S REDACTED MOTION FOR CLASS CERTIFICATION**

each of the products at issue, as listed in Appendix A, have been identified by Defendants as containing small parts and presenting a choking hazard. This common evidence alone will prove Plaintiffs' and Class members' claims.

But even if Defendants argue that they should not be taken at their word, there is an empirical test—established by regulation—that quickly identifies whether a toy or accessory is a "small part" under the FHSA and its attendant regulations. The toy or accessory at issue is merely placed into a "small parts cylinder" testing device, without force, and evaluated to consider if the object fits entirely within the test fixture (and therefore constitutes a "small part"). *E.g.,*



Once liability is established via common proof, the only additional merits issues to be addressed are calculating monetary awards and fashioning injunctive relief. Both the UCL and unjust enrichment offer prevailing plaintiffs relief in the form of restitution, and as set forth herein, the value and measure of restitution in this action is easily determined by objective evidence that may be applied on a class-wide basis.

But what matters for purposes of this motion is that common evidence—the empirically-verifiable composition and size of the Calico Critters flocked toys; expert testimony; Plaintiffs' testimony; Defendants' internal documents; and corporate representatives' testimony—will elicit common answers at trial. Indeed, the UCL focuses on Defendants' conduct to determine liability and the appropriate ensuing relief.

**PLAINTIFF'S REDACTED MOTION FOR CLASS CERTIFICATION**

Class certification under Rule 23(b)(3) is appropriate because the trial of this matter will consist of common evidence establishing Defendants' liability and Plaintiffs' and Class members' entitlement to restitution and injunctive relief. Class certification of Plaintiffs' request for non-monetary relief is also appropriate under Rule 23(b)(2) because Defendants' conduct is generally applicable to the Class as a whole, and by its very nature applies in equal measure to all Class members.

Accordingly, the proposed class should be certified.

## RELEVANT FACTS AND BACKGROUND

### A. Calico Critters Flocked Toys and Plaintiffs' Allegations

Calico Critters Flocked Toys are a brand of plastic, poseable animal figurines with a flocked exterior, giving them the feel of fur and functioning as a mix between a stuffed animal and a doll. ECF No. 1-1 ("Compl."), ¶ 17. These toys are sold with accessories, furniture, and dollhouse playsets. *Id.* ¶ 19. In their opposition to Defendants' motion to dismiss, *see* ECF No. 26, Plaintiffs detailed the choking hazard that the toys present, and the catastrophic injuries they have caused young children, *id.* at 1-2.

Under the FHSA, Congress empowered the Consumer Product Safety Commission ("CPSC") with the authority to declare what toys or articles are banned hazardous substances. *See generally* 15 U.S.C. § 1262. In response, the CPSC promulgated the "small parts rule," which provides that "any toy or other article intended for use by children under 3 years of age which presents a choking, aspiration, or ingestion hazard because of small parts as determined by [16 C.F.R. § 1501]" is a banned hazardous substance. 16 C.F.R. § 1500.18(a)(9).

For a toy to be deemed a banned hazardous substance pursuant to the FHSA and applicable regulations, the toy must satisfy two requirements: (1) it must be intended for use by children under three, and (2) it must itself be, or it must contain, a small part (as determined by whether the toy or a part thereof fits without compression into a hollow cylinder one and one quarter inches in diameter, *see* 16

**SER-87** -3-

PLAINTIFF'S REDACTED MOTION FOR CLASS CERTIFICATION

C.F.R. §1501.4). Plaintiffs contend the toys at issue here satisfy both requirements. Compl. ¶¶ 2, 80, 98.

Plaintiffs accuse Defendants of violating FHSA by introducing and/or delivering for introduction banned hazardous substances—the Calico Critters toys—into interstate commerce. *See* 15 U.S.C. § 1263(a) (prohibiting "[t]he introduction or delivery for introduction into interstate commerce of any misbranded hazardous substance or banned hazardous substance").

Specifically, Defendant Epoch Everlasting Play, LLC ("Epoch") is involved in the marketing, advertising, distribution, and sales of the toys to retailers and directly to consumers via its website. *See* **Ex. 4** to the Declaration of Gillian L. Wade ("Wade Decl.") ¶ 35 (Epoch's Interrogatory Responses) at p. 5. Defendant Target Corporation ("Target") sells the Products primarily through its website by providing a platform for Epoch to fulfill orders directly to consumers, and to some extent, through its physical stores with respect to Products that were initially purchased by customers through Target's website, then returned to a Target store and resold. Wade Decl. ¶ 36, **Ex. 5** (Target's Interrogatory Responses) at p. 5. Defendant Amazon.com Services, LLC ("Amazon") sells the Products both as a direct retailer, purchasing products from Epoch and selling them to customers, and through a platform for third-party sellers who independently obtain and sell Calico Critters products, sometimes utilizing Amazon's fulfillment services. Wade Decl. ¶ 34, **Ex. 3** (Amazon's Interrogatory Responses) at pp. 6-7. Although each Defendant has a distinct role with respect to the sale of the subject products, each is responsible for the introduction and/or delivery of them into interstate commerce.

Accordingly, Defendants have been unjustly enriched by their sale of the toys in violation of the "unlawful" and "unfair" prongs of California's Unfair Competition Law ("UCL").

//

//

**PLAINTIFF'S REDACTED MOTION FOR CLASS CERTIFICATION**

**B.    Calico Critters Are Flocked Animal Figurines, Such Toys are Intended for Children Under 3 as a Matter of Law, and Defendants Have Conceded this Point.**

The parties agree that all Calico Critters at issue constitute flocked animal figurine toys. Moreover, now that this Court has issued its Order denying Defendants' Motion to Dismiss, it is undeniable that Calico Critters—precisely because they are flocked—are "intended for children under three years of age" as a matter of law. Order at 5. In its Order, this Court carefully analyzed both the text and structure of 29 C.F.R. § 1501.2, and applied traditional canons of statutory interpretation to conclude that Calico Critters flocked toys are unambiguously intended for children under the age of three under § 1501.2(a)'s list of fourteen specific toys or articles. *Id.* at 8-11. Given the categorical nature of this Court's holding, it will be impossible for Defendants to deny that Calico Critters toys that are themselves small parts or that contain small parts are banned hazardous substances under the FHSA.

Epoch and Target readily concede this point in their discovery responses. For instance, when Plaintiffs sought information related to "the marketing, advertising, distribution, and sale of the Products (including any role in the design in packaging)," Epoch objected on relevance and undue burden grounds, stating, "[i]n its motion to dismiss order, the Court interpreted the Small Parts Rule (16 C.F.R. § 1501.2) to mean that all flocked figures are automatically intended for children under the age of three. While [Epoch] disagrees with this ruling, so long as it remains in effect, the information sought through this Request is not relevant to Plaintiffs' claims and this interrogatory is disproportionate to the needs of this case and unduly burdensome." Wade Decl., **Ex. 4** (Epoch's Interrogatory Responses), at p. 5 (Obj./Resp. to Interrogatory No. 3). Likewise, in response to an interrogatory seeking information related to the design, safety testing, manufacturing, distributing, and marketing of the Products, Target lodged the same objection. Wade Decl., **Ex. 5** (Target's Interrogatory Responses), at p. 4 (Obj./Resp. to Interrogatory No. 2). Ultimately, Epoch and Target objected to dozens of Plaintiffs' discovery requests, and withheld

**PLAINTIFF'S REDACTED MOTION FOR CLASS CERTIFICATION**

1   non-privileged, otherwise discoverable information and documents on grounds such

2   information and documents are irrelevant and unduly burdensome given the

3   categorical nature of this Court's Order. *See* Wade Decl., **Ex. 3** (Epoch's

4   Interrogatory Responses), at pp. 4, 5, 8-9, 10, 11; *Id.* at ¶ 40, **Ex. 8** (Epoch's

5   Responses to Requests for Production), at pp. 6-11, 13-36; **Ex. 4** (Target's

6   Interrogatory Responses), at pp. 4-5, 8-10; *Id.* at ¶ 41, **Ex. 9** (Target's Responses to

7   Requests for Production), at pp. 7-11, 14-38. Therefore, Defendants have effectively

8   *admitted* broad liability as to the flocked Calico Critters toys at issue in this case

9   (those that are themselves, or any of their included accessories, small enough to

10  constitute a choking hazard under 16 C.F.R. §§ 1500.18(a)(9) and 1501.4).

11      To be sure, Defendants have asked this Court to certify its motion to dismiss

12  order for interlocutory review. *See* ECF No. 47. But, unless and until the Court grants

13  that motion—which the parties have now fully briefed, *see* ECF Nos. 52, 53—

14  Defendants seemingly do not contest that the Calico Critters toys at issue in this class

15  certification motion violate the FHSA and, in turn, California's UCL.

16  **C.    The Class Representatives' Purchase of Calico Critters Flocked
17         Toys**

18      From May 2021 through July 2022, Plaintiff Williene Jackson-Jones purchased

19  eighteen Products manufactured by Epoch on Amazon.com. *See* Declaration of

20  Williene Jackson-Jones ("Jackson Jones Decl.") ¶ 5. Three of those purchases—the

21  (1) Calico Critters Baby Airplane Ride, Dollhouse Playset with Maple Cat Figure

22  Included; (2) the Calico Critters Town Girl Series - Silk Cat; and (3) the Calico

23  Critters School Lunch Set—were flocked toys containing small parts and thus banned

24  hazardous substances sold to her in violation of California law.[1] Had Ms. Jackson-

25  Jones known these products were banned hazardous substances, she would not have

26  purchased them. *Id.* ¶ 7.

27  _____

28  [1] The other fifteen Calico Critters products purchased by Ms. Jackson-Jones did not contain flocked
figurines and consist only of furniture and accessories (*see* Jackson Jones Decl. at ¶ 6), and as such
are not at issue in this matter.

**PLAINTIFF'S REDACTED MOTION FOR CLASS CERTIFICATION**

1      In November 2021, Plaintiff Karen Santos purchased the following products

2   manufactured by Epoch from a brick-and-mortar Target store in Dublin, California:

3   (1) Calico Critters Tuxedo Cat Family Set, (2) Calico Critters Persian Cat Triplets;

4   and, (3) Calico Critters Persian Cat Family. *See* Declaration of Karen Santos ("Santos

5   Decl.") ¶ 5. The Epoch products purchased by Ms. Santos are also banned hazardous

6   substances because they are flocked toys and contain small parts. Had Ms. Santos

7   known these products were banned hazardous substances, she would not have

8   purchased them. *See id.* ¶ 6.

9      **D.      Plaintiffs' Requested Relief**

10      Plaintiffs seek restitution under the UCL and their claim for unjust enrichment.

11   Compl. ¶¶ 94, 98-101. Plaintiffs have retained economist and statistician William

12   Ingersoll, Ph.D. ("Dr. Ingersoll") to present a methodology for calculating restitution

13   on a class-wide basis. *See generally* Declaration of William Robert Ingersoll, Ph.D in

14   Support of Plaintiffs' Motion for Class Certification ("Ingersoll Decl.").

15      For purposes of class certification, Dr. Ingersoll described the methodology he

16   would use to calculate restitution on a class-wide basis if a class is certified and

17   liability is found. He has crafted two alternative methodologies that can be used if it

18   is found that either: (1) the appropriate measure of restitution is the entirety of the

19   price paid by consumers for the subject products ("Full Refund Method"), or, (2) the

20   appropriate measure of restitution is the portion of price attributable to the offending

21   portion of the subject products ("Offset Method"). *Id.* at ¶¶ 11-21.

22      The Full Refund Method entails compensating Class members the total price

23   paid for the products in question, using Defendants' sales data, including SKU/UPC

24   identifiers and pricing information. *Id.* at ¶¶ 11-12. This approach assumes that the

25   appropriate measure of restitution involves returning the entire purchase price to the

26   consumer, based on the premise that the products were sold in violation of the law.

27   *Id.*

28   //

**PLAINTIFF'S REDACTED MOTION FOR CLASS CERTIFICATION**

1    Alternatively, the Offset Method seeks to compensate consumers for the

2   portion of the price attributable to the illegal small parts. *Id.* at ¶¶ 13-21. This method

3   relies on hedonic regression analysis, a statistical technique that breaks down the price

4   of a good into the value of its individual characteristics. *Id.* at ¶ 15; *see also Hamm v.*

5   *Mercedes-Benz USA, LLC,*, No. 5:16-cv-03370-EJD, 2021 U.S. Dist. LEXIS 65098,

6   at *42, 2021 WL 1238304, at *14 (N.D. Cal. Apr. 2, 2021) ("a hedonic regression

7   model [is] a method frequently used in economics to ascertain the relative effect of

8   variables on the price of a product"). "[C]ourts regularly recognize that hedonic

9   regression is a widely accepted econometric methodology that satisfies the four

10   *Daubert* factors of testability, peer review and publication, measur[]able error rate,

11   and general acceptance." *Id.* (citation omitted).

12    The Full Refund and Offset Methods represent two viable approaches to

13   calculating restitution, and the choice between them is a question that ultimately

14   depends on the Court's determination regarding the appropriate measure of restitution

15   once liability is established. That question logically must be answered only after the

16   proposed class is certified.

17    Plaintiffs also seek an order enjoining Defendants from selling toys that are

18   banned hazardous substances under the FHSA—*i.e.*, flocked toys that also either are

19   themselves, or are sold along with, small parts.

20    As explained in greater detail below, both restitution (regardless of the method)

21   and injunctive relief would apply equally to all members of the Class.

## PROPOSED CLASS DEFINITION

23    Plaintiffs seek to certify the following Class pursuant to Federal Rule of Civil

24   Procedure 23(b)(3) or, alternatively, Rule 23(b)(2): **All persons in the State of**

25   **California who purchased at least one of the Products, for personal use and not**

26   **for re-sale, since January 30, 2019.** For purposes of this Motion and the proposed

27   class definition, the term "Products" means all Calico Critters flocked toys that were

28   sold with a small part. A list of the subject Products is attached hereto as **Appendix**

-8-

**PLAINTIFF'S REDACTED MOTION FOR CLASS CERTIFICATION**

1  **A**. *See also* Wade Decl. at ¶¶ 26-33, **Ex. 1, Ex. 2** (explaining how the list of Products

2  was compiled).

3        Excluded from the putative Class are Defendants, their officers, directors,

4  agents, trustees, parents, children, corporations, trusts, representatives, employees,

5  successors, assigns, or other persons or entities related to or affiliated with Defendants

6  and/or their officers and directors and/or any of them. Also excluded from the

7  proposed Class are the Court, the Court's immediate family and Court staff.

8                              <u>**LEGAL STANDARD**</u>

9        Federal Rule of Civil Procedure 23 requires a party seeking class certification

10 to "affirmatively demonstrate his compliance with the Rule—that is, he must be

11 prepared to prove that there are in fact sufficiently numerous parties, common

12 questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131

13 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) ("*Dukes*"). This requires a district court to

14 conduct "rigorous analysis" that frequently "will entail some overlap with the merits

15 of the plaintiff's underlying claim." *Id*. at 351 (internal quotation marks omitted). A

16 plaintiff must demonstrate that the four requirements of Rule 23(a) are met: (1)

17 numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.

18 These requirements effectively "limit the class claims to those fairly encompassed by

19 the named plaintiff's claims." *Id*. at 349 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457

20 U.S. 147, 155, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)). The party also must prove

21 the class meets one of the three alternative provisions in Rule 23(b). *Comcast Corp.*

22 *v. Behrend*, 569 U.S. 27, 33, 133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013).

23        Certification under Fed. R. Civ. P. Rule 23(b)(3) requires a further showing "that

24 the questions of law or fact common to class members predominate over any

25 questions affecting only individual members, and that a class action is superior to

26 other available methods for fairly and efficiently adjudicating the controversy."

27 Certification under Rule 23(b)(2), for its part, requires a showing that "the party

28 opposing the class has acted or refused to act on grounds that apply generally to the

class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

When evaluating a motion for class certification, "a district court is not limited to considering only admissible evidence in evaluating whether Rule 23's requirements are met." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1005 (9th Cir. 2018) (internal citation omitted). "Because a class certification decision 'is far from a conclusive judgment on the merits of the case, it is of necessity . . . not accompanied by the traditional rules and procedure applicable to civil trials.'" *Id.* at 1004 (citation omitted). "[I]n evaluating [the] motion …, a district court need only consider 'material sufficient to form a reasonable judgment on each [Rule 23] requirement.'" *Id.* at 1005 (citation omitted). Moreover, when an expert's testimony in support of class certification is challenged, "a district court should evaluate admissibility under the standard set forth in *Daubert*." *Id.* However, "[a]dmissibility must not be dispositive. Instead, an inquiry into the evidence's ultimate admissibility should go to the weight that evidence is given at the class certification stage." *Id.*

## ARGUMENT

### A. Class Certification is Appropriate Under Rule 23(a)

#### 1. The Proposed Class is Numerous.

The numerosity requirement of Rule 23(a)(1) is satisfied when "joinder of all members is impracticable." The Rule does not establish a precise numerical threshold, but courts generally find the numerosity requirement is satisfied when a class includes at least forty members. *Rannis v. Recchia*, 380 F. App'x 646, 650-51 (9th Cir. 2010) (unpublished) (relying on *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 & n. 14 (1980)). Numerosity may also be satisfied where the precise number of class members is unknown but "general knowledge and common sense indicate it is large." *In re HiEnergy Techs., Inc. Sec. Litig.,* No. 8:04-CV-01226 DOCJTLX, 2006 U.S. Dist. LEXIS 99265, *7, 2006 WL 2780058, at *3 (C.D. Cal. Sept. 26, 2006).

**PLAINTIFF'S REDACTED MOTION FOR CLASS CERTIFICATION**

1    Defendants' removal papers reveal Epoch's total sales at wholesale for all
2    Calico Critters toys sold in California during the putative class period exceed $17
3    million. ECF No. 1 at 5. Epoch also provided sales data for all Calico Critters products
4    containing a flocked figure that were (a) sold and shipped by it to consumers located
5    in California, or (b) sold by dropship retailers and shipped by Epoch to consumers
6    located in California, between January 30, 2019 and December 31, 2023. Wade Decl.
7    ¶ 37 (citing **Ex. 6** (Epoch's First Supp. Interrogatory Responses) and attesting to
8    having reviewed Exhibit A thereto). In the aggregate, the sales totaled approximately
9    $██████. *Id.*

10    Similarly, Target provided sales data for Calico Critters toys containing a
11    flocked figure that were (a) purchased from Target.com and shipped to addresses
12    located in California, or (b) purchased from Target stores located in California,
13    between January 30, 2019 and December 31, 2023. Wade Decl. ¶ 38 (citing **Ex.**
14    **7** (Target's First Supp. Interrogatory Responses) and attesting to having reviewed
15    Exhibit A thereto). In the aggregate, the data revealed ████ flocked Calico Critters
16    toys were sold by Target in California during the putative class period, amounting to
17    approximately $██████ in total sales. *Id*.

18    Amazon's sales data revealed at least ████ flocked Calico Critter toys to
19    customers in California during the putative class period, amounting to approximately
20    $████████ in total sales. Wade Decl. ¶ 39 (attesting to having reviewed Amazon's
21    sales data produced in discovery as AMZ_00000002).

22    Accordingly, numerosity is satisfied. *See Elkies v. Johnson & Johnson Servs.,*
23    *Inc.*, No. CV 17-7320-GW(JEMx), 2018 U.S. Dist. LEXIS 241197, *4, 2018 WL
24    11223465, at *3 (C.D. Cal. Oct. 18, 2018) (Wu, G.) (numerosity satisfied where
25    plaintiffs did not give a precise figure for the class size, but instead cited to evidence
26    showing how many ounces of the product at issue were shipped to California during
27    class period).

28

**PLAINTIFF'S REDACTED MOTION FOR CLASS CERTIFICATION**

**2.  Plaintiffs' Claims Present Common Issues of Law and Fact.**

A class satisfies Rule 23(a)(2) if "there are questions of law or fact common to the class." To establish commonality, the claims must depend upon a "common contention" that is "capable of classwide resolution—which means determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350; *see also id.* ("What matters to class certification is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive resolution of the litigation." (internal ellipses and citation omitted)). Commonality has "'been construed permissively' and '[a]ll questions of fact and law need not be common to satisfy the rule.'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (citation omitted). Indeed, for the requirement to be met, there need be only a single issue common to the proposed class. *Dukes*, 564 U.S. at 359.

The key common issues of law and fact driving this litigation stem from allegations that Defendants violated the FHSA by introducing and/or delivering for introduction banned hazardous substances into interstate commerce—specifically, that the Products (1) are intended for children under 3 as a matter of law, by virtue of the fact that they are flocked toys, pursuant to pursuant to 16 C.F.R. § 1501.2(a); and (2) contain small parts, within the meaning of 16 C.F.R. § 1501.4. If those allegations are proven to be true, Plaintiffs will prevail on their claims for violations of the UCL and unjust enrichment.

Common evidence will prove these allegations. This Court has already concluded Calico Critters are intended for children under the age of three, pursuant to 16 C.F.R. 1501.2(a). ECF No. 43 at 8-11.  Regarding whether each of the Products contains "small parts," Epoch concedes each of the Products contains small parts on the packaging and webpages of each respective Product itself.  *See* Wade Decl. at ¶¶ 26-33, **Ex. 2** (highlighting the "small parts" language on the Products' packaging and/or Calico Critters webpages)

**PLAINTIFF'S REDACTED MOTION FOR CLASS CERTIFICATION**

1   Moreover, to the extent further proof of the presence of small parts is required

2   at summary judgment or trial, it nonetheless will be common. Whether a given

3   product contains small parts is an objective—and simple—determination: as set forth

4   in the Declaration of Joseph Mohorovic ("Mohorovic Decl."), "[t]he subject toy or

5   children's article to be tested is merely placed into the 'small parts cylinder' without

6   force," and "[i]f any such components or pieces fit entirely within the cylinder, in any

7   orientation and without being compressed," then they are considered small parts. *Id.*

8   at ¶ 9. This could easily be done once for each category of Products, and the results

9   would obviously apply class-wide.

10   Finally, whether Plaintiffs and the Class are entitled to restitution and/or

11   injunctive relief presents another core question that binds the entire class. These

12   common questions are "of such a nature that [they are] capable of classwide

13   resolution—which means that the determination of [their] truth or falsity will resolve

14   [] issue[s] that [are] central to the validity of each one of the claims in one stroke."

15   *Dukes*, 564 U.S. at 350.

16   ### 3.  Plaintiffs' Claims are Typical.

17   "Typicality refers to the nature of the claim or defense of the class

18   representative, and not to the specific facts from which it arose or the relief sought."

19   *Ellis,* 657 F.3d at 984 (citation omitted). The typicality requirement is "permissive,

20   such that representative claims are 'typical' if they are reasonably coextensive with

21   those of absent class members; they need not be substantially identical." *Just Film,*

22   *Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (citation and internal quotations

23   omitted). "In determining whether typicality is met, the focus should be on the

24   defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff."

25   *Lozano v. AT & T Wireless Services, Inc*., 504 F.3d 718, 734 (9th Cir. 2007) (citation

26   and internal quotations omitted).

27   Plaintiffs allege a common pattern of wrongdoing—Defendants' sale of banned

28   hazardous substances—and will present the same evidence (based on the same legal

**PLAINTIFF'S REDACTED MOTION FOR CLASS CERTIFICATION**

theories) to support not only their claims, but also the claims of the Class. Similarly, each Plaintiff and members of the Class seek the same relief—an injunction and monetary relief as provided under California's consumer protection statutes. *See Elkies*, 2018 U.S. Dist. LEXIS 241197, at *10-13; 2018 WL 11223465, at *5-6 (typicality satisfied where the plaintiffs' "claims arise from the same conduct by Defendants as do the claims of all other class members, they have allegedly suffered the same injury, and they proceed under the same legal theories."). In short, it is difficult to imagine a fact pattern in which the commonality and typicality requirements of Rules 23(a)(2) and (a)(3) are more readily satisfied.

### 4. Plaintiffs and Their Counsel Will Adequately Represent the Class.

"The final hurdle interposed by Rule 23(a) is that 'the representative parties will fairly and adequately protect the interests of the class.'" *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1020 (9th Cir. 1998) (quoting Fed. R. Civ. P. 23(a)(4)), *overruled on other grounds by Dukes*, 564 U.S. 338. Resolution of two questions determines legal adequacy: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.*

### a. Neither Plaintiffs Nor Their Counsel Have Any Conflicts of Interest with Any Class Members.

There is nothing to suggest Plaintiffs have any interests antagonistic to other Class Members. Jackson-Jones Decl. ¶ 9; Santos Decl. ¶ 8. Instead, Plaintiffs' interests are fully aligned with those of the Class in determining whether Defendants' conduct violates the UCL: Plaintiffs were harmed in the same way, their claims arise under the same legal theories, and Plaintiffs seek remedies equally applicable and beneficial to the Class. *See* Compl. ¶¶ 55-63; 78-102; Jackson-Jones Decl. ¶ 7; Santos Decl. ¶ 6.

**PLAINTIFF'S REDACTED MOTION FOR CLASS CERTIFICATION**

Likewise, Plaintiffs' counsel do not have any conflicts of interest with any Class Members. Wade Decl. at ¶ 25.

### b. Plaintiffs and Their Counsel Will Continue to Vigorously Prosecute This Action.

Plaintiffs have participated actively in this lawsuit. *See* Jackson-Jones Decl. at ¶ 8; Santos Decl. at ¶ 7; Wade Decl. ¶ 24. Plaintiffs initiated this action, responded to written discovery, and their depositions are scheduled to occur on March 19, 2024 and March 20, 2024. Wade Decl. ¶ 24. Plaintiffs are willing and able to serve as class representatives and will continue to vigorously pursue their claims against Defendants on behalf of the Class. Jackson-Jones Decl. at ¶ 3-4; Santos Decl. at ¶ 3-4.

In determining Class Counsel's adequacy, courts consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

Plaintiffs' undersigned counsel have significant experience prosecuting large consumer class actions, complex litigation and the types of claims asserted in the instant matter. Wade Decl. ¶¶ 1-23. They also have demonstrated a willingness and ability to prosecute this action vigorously and to dedicate the resources and expertise necessary to represent a class and successfully manage a class action to its conclusion. Wade Decl. ¶¶ 21-23.

### B. Class Certification is Appropriate Under Rule 23(b)(3).

Rule 23(b)(3) requires that "questions of law or fact common to the class members predominate over any questions affecting only individual members" and "a class action is superior to any other available methods for fairly and efficiently adjudicating the controversy." Fed. R. 23(b)(3). This simply calls for "a showing that questions common to the class predominate, not that those questions will be

**PLAINTIFF'S REDACTED MOTION FOR CLASS CERTIFICATION**

1    answered, on the merits, in favor of the class." *Amgen v. Conn. Ret. Plans & Tr.*

2    *Funds*, 568 U.S. 455, 459 (2013) (emphasis omitted).

3                    **1.  Common Issues of Law and Fact Predominate.**

4           The predominance inquiry focuses on "whether proposed classes are sufficiently

5    cohesive to warrant adjudication by representation." *Hanlon*, 150 F. 3d at 1022

6    (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). Predominance

7    is satisfied where a plaintiff alleges a common course of conduct that affected all class

8    members in the same or similar manner. *Blackie v. Barrack,* 524 F.2d 891, 905-08

9    (9th Cir. 1975). The Ninth Circuit and members of this Court have observed that

10   "UCL claims are 'ideal for class certification because they will not require the court

11   to investigate class members' individual interaction with the product." *Bradach v.*

12   *Pharmavite, LLC*, 735 F. App'x 251, *254-55 (9th Cir. 2018) (unpublished) (quoting

13   *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. Dec. 20, 2012)).

14   Additionally, "central concern[s] of the Rule 23(b)(3) predominance test [are]

15   whether 'adjudication of common issues will help achieve judicial economy,'" further

16   the goal of efficiency, and "diminish the need for individual inquiry." *Vinole v.*

17   *Countrywide Home Loans, Inc.*, 571 F.3d 935, 944, 947 (9th Cir. 2009).

18          There are only two central issues of law or fact in this litigation, and they are

19   common to all of the proposed Class members:  whether the Products are intended for

20   children under 3, pursuant to 16 C.F.R. § 1501.2; and whether the Products contain

21   small parts pursuant to 16 C.F.R. § 1501.4.

22          If the answer to those two questions is "yes," then the Products necessarily

23   violate the Small Parts Rule and are banned hazardous substances pursuant to the

24   FHSA. That is, they "pose[] a 'mechanical hazard,' and [are] thus a 'banned

25   hazardous substance' under the FHSA," because they are "intended for use by

26   children under three years old and present[] a choking, aspiration, or ingestion hazard

27   because of small parts." Order at 2 (citing *Schmidt v. Int'l Playthings LLC*, 536 F.

28   Supp. 3d 856, 899 (D.N.M. 2021), and 16 C.F.R. § 1500.18(a)(9)).

**PLAINTIFF'S REDACTED MOTION FOR CLASS CERTIFICATION**

1
2
3
4
5
6
7
8

Once this determination is made, virtually every other issue of law or fact either is resolved, or else is subordinate to that determination. If Defendants violate the Small Parts Rule, they also violate the unlawful and unfair prongs of the UCL. *See, e.g.*, *Farmers Ins.*, 2 Cal. 4th at 383. In other words, if a proposed Class member has purchased one or more of the Products, then he or she has been sold a banned substance, in violation of the UCL (as well as the FHSA) and is entitled to restitution. There are no other material issues of law or fact to determine. And *all* of these issues can be decided using class-wide proof.

### a. Plaintiffs' UCL Claims.

9
10
11
12
13
14
15
16
17
18

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice[.]" Cal. Bus. & Prof. Code § 17200. Each prong is separately actionable. *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1127 (9th Cir. 2009). As already noted, the "unlawful" prong "borrows" violations of other laws and treats them as unlawful practices that the UCL makes independently actionable. *Farmers Ins.*, 2 Cal. 4th at 383. Plaintiffs' claims have two elements:  (1) whether Defendants engaged in an unlawful, and thus unfair, practice (here, violations of 15 U.S.C. § 1263(a)); and (2) the amount of money Defendants "may have acquired . . . by means of" the unlawful practice. *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 154 (2010).

19
20
21
22
23

Since this is not a consumer deception or fraud claim, Plaintiff has no obligation to prove deception, reliance, or materiality in any form, let alone through common proof. *See Bruton v. Gerber Prods. Co.*, 2017 U.S. App. LEXIS 12833, at *6 (9th Cir. July 17, 2017) (unpublished); *Clevenger v. Welch Foods Inc.*, 342 F.R.D. 446, 458 (C.D. Cal. 2022).

24
25
26
27
28

Moreover, if a practice is "unlawful" it is per se "unfair" for purposes of the UCL. *See, e.g.*, *Echostar Satellite Corp. v. NDS Group PLC*, No. SA CV03-0950 DOC (JTLx), 2008 U.S. Dist. LEXIS 110425, at *14 (C.D. Cal. Oct. 15, 2008) ("The 'unfair' prong of the UCL is broader than the 'unlawful' prong"). Plaintiffs will present generalized evidence demonstrating Defendant engaged in unlawful and

**PLAINTIFF'S REDACTED MOTION FOR CLASS CERTIFICATION**

1   unfair conduct, causing injury to Plaintiffs and the other members of the proposed

2   Class, through the sale of banned hazardous substances. Accordingly, the

3   predominance requirement is met as to Plaintiffs' UCL claims.

### b. Plaintiffs' Unjust Enrichment Claim.

5           Under California law, the elements of unjust enrichment are the receipt of a

6   benefit and the unjust retention of the benefit at the expense of another. *Lyles v.*

7   *Sangadeo-Patel*, 225 Cal. App. 4th 759, 769 (Cal. App. 2014). The gravamen of

8   Plaintiffs' unjust enrichment theory is that Defendants unjustly retained the benefits

9   of their sales of the Products, notwithstanding the fact that the Products are banned

10  hazardous substances under the FHSA. As discussed above, adjudication of this

11  claim, in this Action, is especially suited for class-wide proof, as the principal data

12  point to consider is whether the Products are unlawful under the FHSA. And, when

13  sales of goods or services are unlawful, they are "inherently unreasonable

14  and unjust by reason of their unlawfulness." *Elgin, J. & E. R. Co. v. United States*, 18

15  F. Supp. 19, 24 (N.D. Ind. 1937). Thus, the only subsequent (and subordinate) issue

16  to be determined is the proper measure of restitution. By its very nature, and as set

17  forth in the Ingersoll Declaration, this is readily determinable via common evidence.

18  *See infra* pp.7-8. Courts routinely hold that unjust enrichment claims are proper for

19  class certification under analogous circumstances. *See, e.g., MacDougall v. Am.*

20  *Honda Motor Co., Inc.*, No. SACV 17-1079 JGB (DFMx), 2023 U.S. Dist. LEXIS

21  235433, at *35-36, 2023 WL 9687349, at *12-13; *Cartwright v. Viking Indus., Inc.*,

22  No. 2:07-CV-02159-FCD-EFB, 2009 U.S. Dist. LEXIS 83286, at *41, 2009 WL

23  2982887, at *15 (E.D. Cal. Sep. 14, 2009); *Rojas v. Bosch Solar Energy Corp.*, No.

24  18-cv-05841-BLF, 2022 U.S. Dist. LEXIS 42193, at *43, 2022 WL 717567, at *17

25  (N.D. Cal. Mar. 9, 2022).

### 2. Relief Can be Determined on a Class-Wide Basis.

#### a. Restitution Can be Calculated on a Class-Wide Basis.

**PLAINTIFF'S REDACTED MOTION FOR CLASS CERTIFICATION**

At class certification, the plaintiff must show that "damages are capable of measurement on a classwide basis." *Comcast,* 569 U.S. at 34; *Chavez v. Blue Sky Nat. Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010) ("plaintiff must present 'a likely method for determining class damages,' though it is not necessary to show that his method will work with certainty at this time"). Even where the amount of damages is an individual question, this does not defeat class certification. *Chavez,* 268 F.R.D. at 379; *see also Pulaski v. Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 987-88 (9th Cir. 2015).

Defendants illegally sold Plaintiffs banned hazard substances. Such conduct is capable of redress through restitution, and Plaintiffs seek restitution consistent with their theory of liability—a refund of the full purchase price, or, alternatively, a portion of the purchase price. *Pulaski*, 802 F.3d at 986 ("California has created what amounts to a conclusive presumption that when a defendant puts out tainted bait and a person sees it and bites, the defendant has caused an injury; restitution is the remedy" (citation omitted)).

Restitution can be determined in the aggregate from Defendants' own records, given Epoch manufactures and packages the Products, and all Defendants market and sell the Products directly to consumers. Ingersoll Decl. at 3-5; Wade Decl. ¶ 35, **Ex. 4** at 5 (Response to Interrogatory No. 3) (describing Epoch's role in the marketing, advertising, distribution, and sales of the Products to retailers and directly to consumers via its website); Wade Decl. ¶ 36, **Ex. 5** at 5 (Response to Interrogatory No. 3) (describing Target's role in the sale and distribution of the Products; Wade Decl. ¶ 34, **Ex. 3** at 6-7 (response to Interrogatory No. 3) (describing Amazon's role in the sale and distribution of the Products). Thus, the analysis of Class Members' right to restitution, as well as the quantum of such relief, does not threaten to raise individual issues that would outweigh common questions.

**b. Injunctive Relief Will be the Same for the Entire Class.**

-19-

**PLAINTIFF'S REDACTED MOTION FOR CLASS CERTIFICATION**

1
2
3
4
5

Plaintiffs will seek an order enjoining Defendants from selling the Products--toys that are banned hazardous substances under the FHSA (*i.e.*, flocked toys that also either are themselves, or are sold along, with small parts). This injunctive relief would benefit not only Plaintiffs but the entire Class and the general public. Accordingly, common issues predominate as to Plaintiffs' request for injunctive relief.

6
7

### 3.  Class Treatment is Superior to Other Adjudication Methods.

8
9
10
11
12
13
14
15

A class action may be a superior device to adjudicate claims where "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Relevant factors include: (A) class Members' interests in individually controlling the prosecution of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by class members; (C) the desirability of concentrating the litigation of the claims in the particular forum; (D) the likely difficulties in managing a class action. *See* Fed. R. Civ. P. 23(b)(3).

16
17
18
19
20
21
22
23
24
25

*First*, Class Members have no incentive to control separate actions because they all have common claims and interests. The work of Plaintiffs and their counsel will benefit the entire Class. Moreover, while Class Members' aggregate damages are large, individual damages are relatively low. The majority of prices per Product range from $5 to well under $50. *See ,e.g.,* Wade Decl., ¶ 33, **Ex. 2** (copies of webpages for the Products, which include the price)). These amounts are simply too insignificant to make the claim worth pursuing for any claimant or attorney, particularly given the enormous expense associated with litigation. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (claims valued at $100 mean "most of the plaintiffs would have no realistic day in court if a class action were not available").

26
27
28

**PLAINTIFF'S REDACTED MOTION FOR CLASS CERTIFICATION**

1   *Second*, Plaintiffs are not aware of any other class actions currently pending

2   against Defendants regarding the Products on behalf of any segment of the Class.[2]

3   *Third*, it is desirable to concentrate litigation on behalf of all Class Members in

4   a single forum, since this will prevent inconsistent adjudications and promote fair and

5   efficient use of the judicial system.

6   *Fourth*, prosecuting Class Members' claims in a single action creates far fewer

7   management problems (if any) than the alternative: prosecuting thousands of separate

8   lawsuits. A determination that class adjudication is manageable "'makes ample sense

9   given the variety of procedural tools courts can use to manage the administrative

10  burdens of class litigation' such as 'divid[ing] classes into subclasses or certify[ing]

11  a class as to only particular issues')." *Elkies*, 2018 U.S. Dist. LEXIS 241197, at *25,

12  2018 WL 11223465, at *10 (quoting *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121,

13  1128 (9th Cir. 2017).

14  **C. Alternatively, Class Certification Under Rule 23(b)(2) Is**

15  **Appropriate.**

16  A class may be certified pursuant to Fed. R. Civ. P. 23(b)(2) when plaintiffs

17  "complain of a pattern or practice that is generally applicable to the class as a whole."

18  *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998); Fed. R. Civ. P. 23(b)(2). The

19  conduct Plaintiffs challenge in this litigation—the sale of the Products in violation of

20  the FHSA—affects all class members uniformly and has been implemented in a way

21  that violated class members' legal rights identically and consistently.

22  Further, the relief sought—cessation of the challenged practice—would benefit

23  the class as a whole. Accordingly, as an alternative to certification pursuant to Rule

24

25

---

26  [2] Defendant Epoch stated that "it has provided consumers with a plastic vehicle accessory to replace

27  each recalled bottle and pacifier accessory. That vehicle accessory does not have a retail price. EEP
    has not provided monetary compensation (including a refund) to any person in connection with the
    recall." (*See* Epoch's Response to Interrogatory No. 13 (attached as Exhibit 4 to the Wade Decl. at

28  pp. 12-13). Accordingly, the recalled Products are included in the list of Products at issue in this
    action. Those Products are identified in Exhibit 1 to the Wade Declaration (highlighted red).

**PLAINTIFF'S REDACTED MOTION FOR CLASS CERTIFICATION**

23(b)(3), the Court should allow the class to seek injunctive and declaratory relief pursuant to Rule 23(b)(2).

## CONCLUSION

Based on the forgoing, Plaintiffs respectfully request an order granting this motion and (1) certifying the Class under Fed. R. Civ. P. Rule 23(b)(3), or in the alternative Rule 23(b)(2); (2) appointing Ms. Williene Jackson-Jones and Ms. Karen Santos as the Class Representatives; and, (3) appointing undersigned counsel as Class Counsel under Fed. R. Civ. P. 23(g).

Dated: March 11, 2024

**MILSTEIN JACKSON FAIRCHILD & WADE, LLP**

By: _____
Gillian L. Wade, Esq.
Sara D. Avila, Esq.
Marc A. Castaneda, Esq.

**WH LAW**
David F. Slade (*pro hac vice*)
dslade@wh.law
1 Riverfront Pl., Ste. 745
North Little Rock, AR 72114
Telephone: (501)404-2052

**DURHAM, PITTARD & SPALDING, LLP**
Justin R. Kaufman (*pro hac vice*)
jkaufman@dpslawgroup.com
Philip Kovnat (*pro hac vice*)
pkovnat@dpslawgroup.com
505 Cerillos Rd., Ste. A209
Santa Fe, NM 87501
Telephone: (505)986-0600

**MARTIN WALKER**
Jack Walker (*pro hac vice*)
jwalker@martinwalker.com
121 N. Spring Ave.
Tyler, TX 75702
Telephone: (903)526-1600

*Attorneys for Plaintiffs and the Proposed Class*

**PLAINTIFF'S REDACTED MOTION FOR CLASS CERTIFICATION**

| **Item Number and Product Description** |
|---|
| CC1406 Striped Cat Family |
| CC1407 Sandy Cat Twins |
| CC1455 Koala Family |
| CC1460 Kangaroo Family |
| CC1472 Tuxedo Cat Family |
| CC1480 Walnut Squirrel Family |
| CC1481 Hazelnut Chipmunk Twins |
| CC1482 Baby Friends Triplets Plush |
| CC1484 School Friends Set |
| CC1485 School Music Set |
| CC1486 School Lunch Set |
| CC1489 Mango Monkey Family |
| CC1492 Red Panda Family |
| CC1507 Wilder Panda Family |
| CC1509 Bear Family |
| CC1567 Chocolate Rabbit Grandparents |
| CC1571 Ellwoods Elephant Twins |
| CC1642 Hopscotch Rabbit Family |
| CC1643 Chocolate Rabbit Twin |
| CC1693 Silk Cat Family |
| CC1735 Toy Poodle Family |
| CC1737 Toy Poodle Twins |
| CC1791 Baby Tree House |
| CC1792 Baby Castle Playground |
| CC1793 Baby Choo Choo Train |
| CC1794 Maple Cat Family |
| CC1795 Maple Cat Twins |
| CC1799 Baby Ferris Wheel |
| CC1800 Baby Airplane Ride |
| CC1802 Marshmallow Mouse Family |
| CC1803 Woolly Alpaca Family |
| CC1804 Splashy Otter Family |
| CC1806 Marshmallow Mouse Triplets |
| CC1832 Baby Shopping Series |
| CC1840 Nursery Friends Set |

| **Item Number and Product Description** |
| --- |
| CC1843 Sweet Raspberry Home |
| CC1845 Baby Party Series |
| CC1865 Persian Cat Family |
| CC1866 Persian Cat Twins |
| CC1867 Persian Cat Triplets |
| CC1873 Baby Camping Series |
| CC1880 Caramel Dog Family |
| CC1882 Playful Starter Furniture Set |
| CC1884 Lakeside Lodge Gift Set |
| CC1886 Adventure Tree House Gift Set |
| CC1887 Baby Ropeway Park |
| CC1888 Baby Hedgehog Hideout |
| CC1890 Baby Outdoor Series |
| CC1900 Baby Windmill Park |
| CC1902 Baby Balloon Playhouse |
| CC1906 Triplets Care Set |
| CC1907 Baby Costume Series |
| CC1911 Hoppin' Easter Set |
| CC1915 Baby Amusement Park |
| CC1916 Baby Star Carousel |
| CC1917 Spooky Surprise House |
| CC1918 Royal Carriage Set |
| CC1919 Baby Magical Party Series |
| CC1923 Hedgehog Family |
| CC1924 Hedgehog Twns |
| CC1939 Midnight Cat Family |
| CC1940 Pookie Panda Family |
| CC1967 Sheep Family |
| CC1968 Sheep Twins |
| CC1969 Goat Family |
| CC1971 Pony's Stylish Hair Salon |
| CC1972 Pony's Hair Stylist Set |
| CC1973 Princess Dress Up Set |
| CC1974 pony friends set |
| CC1975 Party Time Playset Tuxedo Cat Girl |

**SER-108**

| **Item Number and Product Description** |
| --- |
| CC1976 Husky Family |
| CC1977 Highbranch Giraffe Family |
| CC1978 Tandem Cycling Set |
| CC1979 Husky Twins |
| CC1980 BBQ Picnic Set Elephant Girl |
| CC1981 Cycle and Skate Set Panda Girl |
| CC1983 Weekend Travel Set Snow Rabbit Mother |
| CC1984 Baby Treats Series |
| CC2018 Yellow Labrador Family |
| CC2019 Yellow Labrador Twins |
| CC2024 Baby Fun Hair Series |
| CC2026 Popcorn Delivery Trike |
| CC2027 Trick or Treat Parade |
| CC2028 Chocolate Rabbit Family |
| CC2029 Red Roof Cozy Cottage |
| CC2053 Baby's Toy Box Snow Rabbit & Panda Babies |
| CC2058 Reindeer Family |
| CC2060 Reindeer Twins |
| CC2061 Easter Celebration Set |
| CC2062 Penguin Family |
| CC2063 Penguin Babies Ride N Play |
| CC2067 Adventure Treehouse Gift |
| CC2069 Fennec Fox Family |
| CC2070 Fennec Fox Twins |
| CC2071 Sunny Picnic Set Fennec Fox Sister & Baby |
| CC2072 Baby Fairy Tale Series |
| CC2073 Baby Mermaid Castle |
| CC2074 Floating Cloud Rainbow Train |
| CC2075 Milk Rabbit Family |
| CC2076 Triplets Baby Bath Time |
| CC2077 Royal Princess Set |
| CC2078 Pony's Vanity Dresser Set |
| CC2080 Village Doctor Starter Set |
| CC2081 Happy Christmas Friends |
| CC2082 Baby Seashore Friends Set |

| Item Number and Product Description |
|---|
| CC2083 Red Roof Country Home Gift Set-Secret Attic Playroom |
| CC2099 Chocolate Rabbit Twin |
| CC2105 Hedgehog Twins |
| CC2131 Yellow Labrador Twins |
| CC2144 Toy Poodle Twins |
| CC2149 Sophie's Love N Care |
| CC2488 Connor and Kerri's New Carriage Ride |
| CC2537 Sophie's Love N Care |
| CC2625 Patty N Paden Double Stroller |
| CC2771 Apple and Jake Ride N Play |
| CC3011 Grand Department Store Gift Set |
| CC3013 Designer Studio |
| CC3022 Dress Up Duo Set |
| CC3023 Violin Concert Set |
| CC3025 Grand Piano Concert Set |
| CC3026 Town Girl Stella Hopscotch |
| CC3027 Town Girl Lulu Silk Cat |
| CC3028 Town Girl Laura Toy Poodle |
| CC3036 Cute Couple Set |
| CC3038 Town Girl Series Marshmallow Mouse |
| CC3042 Elegant Town Manor Gift Set |
| CC3048 Fashion Boutique |
| CC3049 Fashion Play Set Persian Cat |
| CC3050 Fashion Play Set Tuxedo Cat |
| CC3051 Fashion Play Set Sugar Sweet Collection |
| CC3052 Fashion Play Set Shoe Collection |
| CC3053 Fashion Play Set Jewels Gems Collection |
| CC4001 Nursery Chocolate Rabbit Baby Key Chain |
| CC4002 Baby Trio Mascot |
| CC4003 Baby Trio Fruits |
| CC4004 Baby Bride and Groom |
| CC4006 Snuggly Sloth Family |
| CC4007 Mole Family |
| CC4008 Raincoat Babies |
| CC4013 Baby Duo Flowery Garden Friends |

| Item Number and Product Description |
|---|
| CC4015 Colorful Baby Unicorn |
| CC4016 Shiba Dog Family |
| CC4021 Handsome Brothers Set |
| CC4022 Winter Carolers |
| CC4023 French Bulldog Family |
| CC4024 Ice Castle Amusement Park |
| CC4500 Calico Husky Family Pack |
| CF1564 Seaside Cruiser |
| CF1825 Hillcrest Home Gift Set |
| CF1842 Red Roof Tower Home |
| CF1872 Red Roof Grand Mansion Gift Set |
| CF1905 Sky Blue Terrace Gift Set |
| CF1920 Mr. Lion's Winter Sleigh |
| CF1930 Trick or Treat Trio |
| CF1945 Log Cabin Gift Set |
| CF3024 Cello Concert Set |
| 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 Calico Critters Persian Cat Fashion Playset |
| 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 Calico Critters Wilder Panda Twins |
| 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 Calico Critters Hopscotch Grandparents |
| 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 Calico Critters Fluffy Hamster Twins |
| 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 Calico Critters Ellwoods Elephant Family |
| 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 Calico Critters Sweetpea Rabbit Family Playset |
| 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 Gingerbread Playhouse |
| 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 Halloween Playhouse |
| 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 Flower Gifts Playset |
| B00004U322 Calico Critters Beagle Dog Twins |
| B000096M5G Calico Tanner & Tallulah's Nursery Fun Time Sleep N |
| B000096M5L Calico Critters: Dalmatian Dog Twins |
| B00009VE0D Calico Critters Carry and Play House |
| B000227NAG Calico Critters Camryn's Country Boutique |
| B000227NAQ Calico Critters Fisher Cat Family |
| B0007ORYA8 Calico Critters Pigglywink Pig Family |
| B0007ORYBC Calico Critters Deluxe Baby's Nursery Set |
| B0007ORYC6 Calico Critters Margaret and Halley's Dress Shop |
| B000F4I30U Calico Critters in Mini Carrying Case |

| **Item Number and Product Description** |
|---|
| B001P8H3II Calico Critters Britney Bunny Ballet Recital |
| B001P8TMMI Calico Critters Furbanks Squirrel Twins |
| B002QB7WPW Calico Critters Caramel Cat Twins |
| B002QBDISW Calico Critters Sugar Bear Twins |
| B0045WTDAC Calico Critters Seaside Camping Set |
| B005OZZEI4 Calico Critters Buckley Deer Family |
| B005P04FVK Calico Critters Tuxedo Cat Triplets |
| B009AWBLDO Calico Critters Melissa and Melody Bath Time Set |
| B009AWEAZU Calico Critters Chocolate Labrador Triplets |
| B009AWRJL2 Calico Critters Chihuahua Twins Set |
| B009XJTQ7M Calico Critters Luxury Townhome Gift Set |
| B087DWS19D Calico Critters Border Collie Family Set |
| B00AMEILGE Calico Critters Border Collie Twins Set |
| B00E4LJC6O Calico Critters Outdoor Sports Fun |
| B00ENQ1Z4M Calico Critters Winter Sports Fun Playset |
| B00HEYGR4S Calico Critters Woodbrook Beaver Family Playset |
| B00KE2C8DQ Calico Critters Lakeside Lodge Gift Set |
| B00NY64BYSCalico Critters Country Nurse Set Playset |
| B00NY6F4MQ Calico Critters Cuddle Bear Family |
| CC1454 Calico Critters Chocolate Labrador Family Doll Set |
| B00NY6OU76 Calico Critters Country Dentist Set Playset |
| B00NY6TPXA Calico Critters Cuddle Bear Twins Doll |
| B00NY6YGPM Calico Critters Country Doctor Playset |
| B0102AC69K Calico Critters Fluffy Hamster Family |
| B01AO2LCXW Calico Critters Seaside Ice Cream Shop |
| B01AYEY354 Calico Critters Seaside Treasure Set |
| B01KIGDW64 Calico Critters Ice Skating Friends |
| B01KIGHOLI Calico Critters Ballerina Friends |
| B01L7F9MJG Calico Critters Ballet Theater |
| B01L7FC9B4 Calico Critters Doughnut Store |
| B01L7FEEEE Calico Critters Dressing Area Set |
| B01L8VY320 Calico Critters Pizza Delivery Set |
| B01L8VY32U Calico Critters Brick Oven Bakery |
| B071HWHGZ9 Calico Critters Cake Decorating Set |
| B071VTPH1V Calico Critters Village Cake Shop |

| **Item Number and Product Description** |
|---|
| B07Q4R9R7Q Calico Critters Town Girl Series - Miranda Maple Cat |
| B087DSKJ8M Calico Critters Baby Celebration Marching Band Set |
| B087DXGL5P Calico Critters Marguerite Rabbit Family Dolls |
| B087F168HC Calico Critters Sea Breeze Rabbit Family Dolls |
| B087F5XRZV Calico Critters Deluxe Celebration Home Premium Set (Amazon Exclusive) |
| B08TTQ7546 Calico Critters Darling Ducklings Baby Carriage |
| B08V4KW6GF Calico Critters Fairytale Friends |
| B08V4P55J3 Calico Critters Veggie Babies |
| B08V4YWX9D Calico Critters Costume Cuties - Bunny & Puppy |
| B08V51L8B3 Calico Critters Costume Cuties - Kitty & Cub |
| B08V56XD35 Calico Critters Costume Cuties - Bunny & Birdie |
| B08V57HL71 Calico Critters Ice Cream Cuties |
| B08VM2877X Calico Critters Baby Ninja Trio |
| B08VM5M156 Calico Critters Meerkat Family |
| B08VM9Q1TP Calico Critters Friesian Cow Family |
| B09S1FC8HF Calico Critters Country Tree School Gift Set |
| B09S1FCNSF Calico Critters Large House with Carport Gift Set |

# EXHIBIT B

## CASE INFORMATION

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

**Case Number:** 23STCV01931

WILLIENE JACKSON-JONES, , ET AL. VS EPOCH EVERLASTING PLAY, LLC, ET AL.

**Filing Courthouse:** Spring Street Courthouse

**Filing Date:** 01/30/2023
**Case Type:** Other Commercial/Business Tort (not fraud/ breach of contract) (General Jurisdiction)
**Status:** Pending

Click here to access document images for this case

If this link fails, you may go to the Case Document Images site and search using the case number displayed on this page

## FUTURE HEARINGS

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

**04/21/2023** at 10:00 AM in Department 9 at 312 North Spring Street, Los Angeles, CA 90012
Initial Status Conference

## PARTY INFORMATION

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

AMAZON.COM SERVICES LLC - Defendant

AVILA SARA D. - Attorney for Plaintiff

CASTANEDA MARC ALEXANDER - Attorney for Plaintiff

EPOCH EVERLASTING PLAY LLC - Defendant

JACKSON-JONES WILLIENE - Plaintiff

SANTOS KAREN - Plaintiff

TARGET CORPORATION - Defendant

WADE GILLIAN L. - Attorney for Plaintiff

## DOCUMENTS FILED

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

### Documents Filed (Filing dates listed in descending order)

**02/17/2023** Minute Order ( (Court Order Regarding Newly Filed Class Action;))
Filed by Clerk

**02/17/2023** Initial Status Conference Order
Filed by Clerk

**SER-115**

**Exhibit B**

**- 63 -**

02/17/2023 Clerks Certificate of Service By Electronic Service
Filed by Clerk

01/30/2023 Notice of Case Assignment - Unlimited Civil Case
Filed by Clerk

01/30/2023 Voluntary Efficient Litigation Stipulation Packet
Filed by Clerk

01/30/2023 First Amended General Order re: Mandatory Electronic Filing
Filed by Clerk

01/30/2023 Alternate Dispute Resolution Packet
Filed by Clerk

01/30/2023 Summons (on Complaint)
Filed by Williene Jackson-Jones, (Plaintiff); Karen Santos, (Plaintiff)

01/30/2023 Civil Case Cover Sheet
Filed by Williene Jackson-Jones, (Plaintiff); Karen Santos, (Plaintiff)

01/30/2023 Complaint
Filed by Williene Jackson-Jones, (Plaintiff); Karen Santos, (Plaintiff)

## PROCEEDINGS HELD

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

### Proceedings Held (Proceeding dates listed in descending order)

**02/17/2023** at 09:00 AM in Department 9, Yvette M. Palazuelos, Presiding
Court Order

## REGISTER OF ACTIONS

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

**02/17/2023** Initial Status Conference Order; Signed and Filed by: Clerk

**02/17/2023** Initial Status Conference scheduled for 04/21/2023 at 10:00 AM in Spring Street Courthouse at Department 9

**02/17/2023** The case is placed in special status of: Deemed Complex

**02/17/2023** The case is placed in special status of: Stay - Deemed Complex

**02/17/2023** Minute Order (Court Order Regarding Newly Filed Class Action;)

**02/17/2023** Clerks Certificate of Service By Electronic Service; Filed by: Clerk

**02/17/2023** The case is removed from the special status of: Provisionally Complex – Case Type

**01/30/2023** Complaint; Filed by: Williene Jackson-Jones, (Plaintiff); Karen Santos, (Plaintiff); As to: Epoch Everlasting Play, LLC (Defendant); Target Corporation (Defendant); Amazon.com Services LLC (Defendant)

**01/30/2023** Case assigned to Hon. Yvette M. Palazuelos in Department 9 Spring Street Courthouse

**01/30/2023** Civil Case Cover Sheet; Filed by: Williene Jackson-Jones, (Plaintiff); Karen Santos, (Plaintiff); As to: Epoch Everlasting Play, LLC (Defendant); Target Corporation (Defendant); Amazon.com Services LLC (Defendant)

**01/30/2023** Summons on Complaint; Issued and Filed by: Williene Jackson-Jones, (Plaintiff); Karen Santos, (Plaintiff); As to: Epoch Everlasting Play, LLC (Defendant); Target Corporation (Defendant); Amazon.com Services LLC (Defendant)

**01/30/2023** Alternate Dispute Resolution Packet; Filed by: Clerk

**01/30/2023** First Amended General Order re: Mandatory Electronic Filing; Filed by: Clerk

**01/30/2023** Voluntary Efficient Litigation Stipulation Packet; Filed by: Clerk

**01/30/2023** Notice of Case Assignment - Unlimited Civil Case; Filed by: Clerk

**01/30/2023** The case is placed in special status of: Provisionally Complex – Case Type

**01/30/2023** The case is placed in special status of: Class Action

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
### Central District, Spring Street Courthouse, Department 9

**23STCV01931**                                                    February 17, 2023
**WILLIENE JACKSON-JONES, , et al. vs EPOCH**                               9:00 AM
**EVERLASTING PLAY, LLC, et al.**

Judge: Honorable Yvette M. Palazuelos          CSR: None
Judicial Assistant: R. Arraiga                 ERM: None
Courtroom Assistant: M. Tavakoli               Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s):  No Appearances

**NATURE OF PROCEEDINGS:** Court Order Regarding Newly Filed Class Action;

By this order, the Court determines this case to be Complex according to Rule 3.400 of the
California Rules of Court. The Clerk's Office has assigned this case to this department for all
purposes.

Pursuant to Government Code Sections 70616(a) and 70616(b), a single complex fee of one
thousand dollars ($1,000.00) must be paid on behalf of all plaintiffs. For defendants, a complex
fee of one thousand dollars ($1,000.00) must be paid for each defendant, intervenor, respondent
or adverse party, not to exceed, for each separate case number, a total of eighteen thousand
dollars ($18,000.00), collected from all defendants, intervenors, respondents, or adverse parties.
All such fees are ordered to be paid to Los Angeles Superior Court, within ten (10) days of
service of this order.

By this order, the Court stays the case, except for service of the Summons and Complaint. The
stay continues at least until the Initial Status Conference. Initial Status Conference is set for
04/21/2023 at 10:00 AM in this department. At least ten (10) days prior to the Initial Status
Conference, counsel for all parties must discuss the issues set forth in the Initial Status
Conference Order issued this date. Counsel must file a Joint Initial Status Conference Response
Statement five (5) court days before the Initial Status Conference.

The Initial Status Conference Order, served concurrently with this Minute Order, is to help the
Court and the parties manage this complex case by developing an orderly schedule for briefing,
discovery, and court hearings. The parties are informally encouraged to exchange documents and
information as may be useful for case evaluation.

Responsive pleadings shall not be filed until further Order of the Court. Parties must file a Notice
of Appearance in lieu of an Answer or other responsive pleading. The filing of a Notice of

Exhibit B  SER-118
- 66 -

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
### Central District, Spring Street Courthouse, Department 9

**23STCV01931**                                                    February 17, 2023
**WILLIENE JACKSON-JONES, , et al. vs EPOCH**                            9:00 AM
**EVERLASTING PLAY, LLC, et al.**

Judge: Honorable Yvette M. Palazuelos          CSR: None
Judicial Assistant: R. Arraiga                 ERM: None
Courtroom Assistant: M. Tavakoli               Deputy Sheriff: None

Appearance shall not constitute a waiver of any substantive or procedural challenge to the
Complaint. Nothing in this order stays the time for filing an Affidavit of Prejudice pursuant to
Code of Civil Procedure Section 170.6. Nothing in this order stays the filing of an Amended
Complaint pursuant to Labor Code Section 2699.3(a)(2)(C) by a plaintiff wishing to add a
Private Attorney General Act ("PAGA") claim.

For information on electronic filing in the Complex Courts, please refer to
https://www.lacourt.org/division/efiling/efiling2.aspx#civil. See, in particular, the link therein for
"Complex Civil efiling." Parties shall file all documents in conformity with the Presiding Judge's
First Amended General Order of May 3, 2019, particularly including the provisions therein
requiring Bookmarking with links to primary documents and citations; that Order is available on
the Court's website at the link shown above.

For efficiency in communication with counsel, the complex program requires the parties in every
new case to use an approved third-party cloud service that provides an electronic message board.
In order to facilitate communication with counsel prior to the Initial Status Conference, the
parties must sign-up with the e-service provider at least ten (10) court days in advance of the
Initial Status Conference and advise the Court which provider was selected.

The court has implemented LACourtConnect to allow attorneys, self-represented litigants and
parties to make audio or video appearances in Los Angeles County courtrooms.
LACourtConnect technology provides a secure, safe and convenient way to attend hearings
remotely. A key element of the Court's Access LACourt YOUR WAY program to provide
services and access to justice, LACourtConnect is intended to enhance social distancing and
change the traditional in-person courtroom appearance model. See
https://my.lacourt.org/laccwelcome for more information.

This Complex Courtroom does not use Los Angeles Superior Court's Court Reservation ("CRS")
portal to reserve motion hearing dates. Rather, counsel may secure dates by calling the
Courtroom Assistant at 213-310-70xx with the "xx" being the Department number, e.g. Dept. 1
is 01 and Dept. 10 is 10.

Court reporters are not provided for hearings or trials. The parties should make their own
arrangements for any hearing where a transcript is desired.

If you believe a party or witness will need an interpreter, see the court's website for information
on how to make such a request in a timely manner. https://www.lacourt.org/irud/UI/index.aspx

Minute Order                                                       Page 2 of 3

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Spring Street Courthouse, Department 9

**23STCV01931**                                           February 17, 2023
**WILLIENE JACKSON-JONES, , et al. vs EPOCH**                    9:00 AM
**EVERLASTING PLAY, LLC, et al.**


Judge: Honorable Yvette M. Palazuelos          CSR: None
Judicial Assistant: R. Arraiga                 ERM: None
Courtroom Assistant: M. Tavakoli               Deputy Sheriff: None

---

Counsel are directed to access the following link for further information on procedures in the Complex litigation Program courtrooms: https://www.lacourt.org/division/civil/CI0042.aspx.

The plaintiff must serve a copy of this minute order and the attached Initial Status Conference Order on all parties forthwith and file a Proof of Service in this department within seven (7) days of service.

Clerk's Certificate of Service By Electronic Service is attached.

Exhibit B  SER-120
- 68 -

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

**WILLIENE JACKSON-JONES, et al. vs. EPOCH EVERLASTING PLAY, LLC, et al.**

**23STCV01931**

**INITIAL STATUS CONFERENCE ORDER**

**FILED**
Superior Court of California
County of Los Angeles

**FEB 1 7 2023**

David W. Slayton, Executive Officer/Clerk of Court

By: R. Arralga, Deputy

The Court issues the following Initial Status Conference Order:

Due to the pandemic and the urgent need to avoid court appearances, the parties MUST sign up with an e-service provider at least ten (10) court days in advance of the Initial Status Conference and advise the Court, via email to sscdept9@lacourt.org which provider was selected.

This case has been assigned for all purposes to Judge Yvette M. Palazuelos in the Complex Litigation Program. An Initial Status Conference is set for <u>April 21, 2023</u>, at 10:00 a.m., in Department 9 located in the Spring Street Courthouse, at United States District Court, 312 N. Spring Street, Los Angeles, California 90012. Counsel for all the parties are ordered to attend.

Counsel for all parties are ordered to meet and confer regarding the following areas and be prepared to discuss them with the Court at the Initial Status Conference. Counsel for Plaintiff is to take the lead in preparing a Joint Initial Status Conference Report to be filed and served five (5) court days (<u>April 14, 2023</u>) prior to the hearing date. Do **not** the use the Judicial Council Form CM-110 (Case Management Statement) for this purpose.

The Joint Initial Status Conference Report must address the following:

1.     Parties and Counsel: Please list all presently named class representatives and presently named defendants, together with all counsel of record, including counsel's contact and email information.

2.     Potential Additional Parties: Does any plaintiff presently intend to add more class representatives? If so, and if known, by what date and by what name? Does any plaintiff presently intend to name more defendants? If so, and if known, by what date and by what name? Does any appearing defendant presently intend to file a cross-complaint? If so, who will be named.

3.     Adequacy of Proposed Class Representative(s): If any party believes one or more named plaintiffs might not be an adequate class representative, please explain. No prejudice will attach to these responses.

4.     Estimated Class Size: Please discuss and indicate the estimated class size.

5.     Other Actions with Overlapping Class Definitions: Please list other cases with overlapping class definitions. Please identify the court, the short caption title, the docket number, and the case status.

6.     Potentially Relevant Arbitration and/or Class Action Waiver Clauses: Please include a sample of any clause of this sort. Opposing parties must summarize their views on this issue.

1

7.    Potential Early Crucial Motions: Opposing counsel are to identify and describe the significant core issues in the case. Counsel then are to identify efficient ways to resolve those issues. The vehicles include:

• Early motions in limine
• Early motions about particular jury instructions
• Demurrers
• Motions to strike
• Motions for judgment on the pleadings, and
• Motions for summary judgment and summary adjudication.

8.    Class Contact Information: Does plaintiff need class contact information from the defendant's records? If so, do the parties consent to an "opt-out" notice process (as approved in Belaire-West Landscape, Inc. V. Superior Court (2007) 149 Cal.App.4th 554, 561) to precede defense delivery of this information to plaintiff's counsel? If the parties agree on the notice process, who should pay for it? Should there be a third-party administrator?

9.    Protective Orders: Parties considering an order to protect confidential information from general disclosure should begin with the model protective orders found on the Los Angeles Superior Court Website under "Civil Tools for Litigators."

10.    Discovery: Please discuss discovery. Do the parties agree on a plan? If not, can the parties negotiate a compromise? At minimum, please summarize each side's views on discovery. The Court generally allows discovery on matters relevant to class certification, which (depending on circumstances) may include factual issues also touching the merits. The Court generally does not permit extensive or expensive discovery relevant only to the merits (for example, detailed damages discovery) unless a persuasive showing establishes early need. If any party seeks discovery from absent class members, please estimate how many, and also state the kind of discovery you propose[1].

11.    Insurance Coverage: Please state if there is insurance for indemnity or reimbursement.

12.    Alternative Dispute Resolution: Please discuss ADR and state each party's position about it. If pertinent, how can the Court help identify the correct neutral and prepare the case for a successful settlement negotiation?

13.    Timeline for Case Management: Please recommend dates and times for the following:

• The next status conference, if needed. The court does not schedule status conferences for most cases. Rather, the court gives deadlines for the filing of motions for class certification with non-appearance case management reviews set a few days after the filing deadlines
• A schedule for alternative dispute resolution, if it is relevant,
• A filing deadline for the motion for class certification, and
• Filing deadlines and descriptions for other anticipated non-discovery motions.

---

[1] California Rule of Court, Rule 3.768.

14.    Electronic Service of Papers:  The Court will issue an Order requiring electronic service.  The parties must select of one of the following services:

Case Anywhere (http://www.caseanywhere.com).
File & Serve Xpress (https://secure.fileandservexpress.com)
CaseHomePage (http://www.casehomepage.com)

Electronic service is not the same as electronic filing.

15.    For information on electronic filing in the Complex Courts, please refer to http://www.lacourt.org/division/efiling/pdf/ComplexefilingFAQs.pdf.

To the extent the parties are unable to agree on the matters to be addressed in the Joint Initial Status Conference Report, the positions of each party or of various parties shall be set forth separately in the Joint Statement.  The parties are encouraged to propose, either jointly or separately, any approaches to case management that they believe will promote the fair and efficient handling of this case.  The Court is particularly interested in identifying potentially dispositive or significant threshold issues the early resolution of which may assist in moving the case toward effective ADR and/or a final disposition.

Pending further order of this Court, and except as otherwise provided in the Initial Status Conference Order, these proceedings are stayed in their entirety.  This stay shall preclude the filing of any answer, demurrer, motion to strike, or motions challenging the jurisdiction of the Court.  However, each defendant is directed to file a Notice of Appearance for purposes of identification of counsel and preparation of a service list.  The filing of such a Notice of Appearances shall be without prejudice to any challenge to the jurisdiction of the Court, substantive, or procedural challenges to the Complaint, without prejudice to any affirmative defense, and without prejudice to the filing of any cross-complaint in this action.  This stay is issued to assist the Court and the parties in managing this complex case through the development of an orderly schedule for briefing and hearings on procedural and substantive challenges to the complaint and other issues that may assist in orderly management.  This stay shall not preclude the parties from continuing informally exchange documents that may assist in their initial evaluation of the issues presented in this case.  However, all outstanding discovery requests are stayed.

All management stays, including stays of discovery issued by the Court, shall not be considered as a stay per Code of Civil Procedure section 583.310 unless specifically ordered by the Court.

Remember that when seeking to dismiss or to obtain settlement approval, "[a] dismissal of an entire class action, or of any party or cause of action in a class action, requires Court approval . . . Requests for dismissal must be accompanied by a declaration setting forth the facts on which the party relies. The declaration must clearly state whether consideration, direct or indirect, is being given for the dismissal and must describe the consideration in detail."  If the parties have settled the class action, that too will require judicial approval based on a noticed motion (although it may be possible to shorten time by consent for good cause shown).

/ /

3

Plaintiffs' counsel is to serve this Initial Status Conference Order on counsel for Defendant, or if counsel is not known, on Defendant within five (5) days of service of this Order.

     If the Complaint has not been served as of the date of this Order, Counsel for Plaintiff is to serve the Complaint within five (5) days of service of this Order.

IT IS SO ORDERED.

DATED: February 17, 2023

YVETTE M. PALAZUELOS
Judge of the Superior Court

4

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF LOS ANGELES

Reserved for Clerk's File Stamp

COURTHOUSE ADDRESS:

Spring Street Courthouse

312 North Spring Street, Los Angeles, CA 90012

PLAINTIFF:

Williene Jackson-Jones,  et al

DEFENDANT:

Epoch Everlasting Play, LLC, et al.

**FILED**
Superior Court of California
County of Los Angeles

**02/17/2023**

David W. Slayton, Executive Officer / Clerk of Court

By: _____ R. Arraiga _____ Deputy

## CERTIFICATE OF ELECTRONIC SERVICE
## CODE OF CIVIL PROCEDURE 1010.6

CASE NUMBER:

23STCV01931

I, the below named Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served one copy of the  Minute Order and Initial Status Conference Order

entered herein, on ____02/17/2023____, upon each party or counsel of record in the above entitled action, by electronically serving the document(s) on _____Counsel Gillian L. Wade_____ at

_gwade@mjfwlaw.com_____ on ____02/17/2023____ from my place of business, _Spring Street Courthouse  312 North Spring Street, Los Angeles, CA 90012_____

in accordance with standard court practices.

David W. Slayton, Executive Officer / Clerk of Court

Dated: _02/17/2023_____          By: _R. Arraiga_____

                                        Deputy Clerk

# VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California County of Los Angeles**



**Los Angeles County Bar Association Litigation Section**

**Los Angeles County Bar Association Labor and Employment Law Section**



**Consumer Attorneys Association of Los Angeles**



**Southern California Defense Counsel**



**Association of Business Trial Lawyers**



**California Employment Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:                         FAX NO. (Optional): | | |
| E-MAIL ADDRESS (Optional): | | |
| ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – EARLY ORGANIZATIONAL MEETING** | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following*:

    a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

    b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

    c. Exchange of names and contact information of witnesses;

    d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

    e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

    f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

    g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h.   Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i.   Whether the case is suitable for the Expedited Jury Trial procedures (see information at **www.lacourt.org** under "*Civil*" and then under "*General Information*").

2.   The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lacourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3.   The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.   References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

           ➢ _____
_____
   (TYPE OR PRINT NAME)         (ATTORNEY FOR PLAINTIFF)

Date:

           ➢ _____
_____
   (TYPE OR PRINT NAME)         (ATTORNEY FOR DEFENDANT)

Date:

           ➢ _____
_____
   (TYPE OR PRINT NAME)         (ATTORNEY FOR DEFENDANT)

Date:

           ➢ _____
_____
   (TYPE OR PRINT NAME)         (ATTORNEY FOR DEFENDANT)

Date:

           ➢ _____
_____
   (TYPE OR PRINT NAME)      (ATTORNEY FOR _____)

Date:

           ➢ _____
_____
   (TYPE OR PRINT NAME)      (ATTORNEY FOR _____)

Date:

           ➢ _____
_____
   (TYPE OR PRINT NAME)      (ATTORNEY FOR _____)

LACIV 229 (Rev 02/15)
LASC Approved 04/11

**STIPULATION – EARLY ORGANIZATIONAL MEETING**

Page 2 of 2

Print  Save

Clear

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:                     FAX NO. (Optional): | | |
| E-MAIL ADDRESS (Optional): | | |
| ATTORNEY FOR (Name): | | |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – DISCOVERY RESOLUTION** | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii. Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i. Also be filed on the approved form (copy attached);

      ii. Include a brief summary of why the requested relief should be denied;

---

**STIPULATION – DISCOVERY RESOLUTION**

Exhibit B
**SER-129**
- 77 -

iii.   Be filed within two (2) court days of receipt of the Request; and

iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

c.   No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

d.   If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied.  If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

e.   If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.   If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.   The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.   Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.   Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.   References to "days" mean calendar days, unless otherwise noted.  If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

LACIV 036 (new)
LASC Approved 04/11
For Optional Use

**STIPULATION – DISCOVERY RESOLUTION**

Page 2 of 3

Exhibit B
- 78 -

SER-130

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

**The following parties stipulate:**

Date: _____

         (TYPE OR PRINT NAME)

Date: _____

         (TYPE OR PRINT NAME)

Date: _____

         (TYPE OR PRINT NAME)

Date: _____

         (TYPE OR PRINT NAME)

Date: _____

         (TYPE OR PRINT NAME)

Date: _____

         (TYPE OR PRINT NAME)

Date: _____

         (TYPE OR PRINT NAME)

➤ _____

         (ATTORNEY FOR PLAINTIFF)

➤ _____

         (ATTORNEY FOR DEFENDANT)

➤ _____

         (ATTORNEY FOR DEFENDANT)

➤ _____

         (ATTORNEY FOR DEFENDANT)

➤ _____

         (ATTORNEY FOR _____)

➤ _____

         (ATTORNEY FOR _____)

➤ _____

         (ATTORNEY FOR _____)

| Print | Save | | Clear |
|---|---|---|---|

LACIV 036 (new)
LASC Approved 04/11
For Optional Use

**STIPULATION – DISCOVERY RESOLUTION**

Exhibit B
- 79 -

SER-131

Page 3 of 3

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:                         FAX NO. (Optional): | | |
| E-MAIL ADDRESS (Optional): | | |
| ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:
   - ☐ Request for Informal Discovery Conference
   - ☐ Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. **For a Request for Informal Discovery Conference, <u>briefly</u> describe the nature of the discovery dispute, including the facts and legal arguments at issue.  For an Answer to Request for Informal Discovery Conference, <u>briefly</u> describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

LACIV 094 (new)
LASC Approved 04/11
For Optional Use

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

Exhibit B
- 80 -      SER-132

| Print | Save | Clear |
|---|---|---|

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:                    FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION AND ORDER – MOTIONS IN LIMINE** | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

LACIV 075 (new)
LASC Approved 04/11
For Optional Use

**STIPULATION AND ORDER – MOTIONS IN LIMINE**

Page 1 of 2

Exhibit B    SER-133
- 81 -

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____)

**THE COURT SO ORDERS.**

Date: _____

_____
JUDICIAL OFFICER

[ Print ]   [ Save ]                                    [ Clear ]

LACIV 075 (new)
LASC Approved 04/11

**STIPULATION AND ORDER – MOTIONS IN LIMINE**

Page 2 of 2

Exhibit B
- 82 -   SER-134

# FILED

LOS ANGELES SUPERIOR COURT

### MAY 1 1 2011

JOHN A. CLARKE, CLERK

*N. Navarro*

BY NANCY NAVARRO, DEPUTY

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| General Order Re | ) ORDER PURSUANT TO CCP 1054(a), |
| Use of Voluntary Efficient Litigation | ) EXTENDING TIME TO RESPOND BY |
| Stipulations | ) 30 DAYS WHEN PARTIES AGREE |
| | ) TO EARLY ORGANIZATIONAL |
| | ) MEETING STIPULATION |
| _____ | ) |

Whereas the Los Angeles Superior Court and the Executive Committee of the Litigation Section of the Los Angeles County Bar Association have cooperated in drafting "Voluntary Efficient Litigation Stipulations" and in proposing the stipulations for use in general jurisdiction civil litigation in Los Angeles County;

Whereas the Los Angeles County Bar Association Litigation Section; the Los Angeles County Bar Association Labor and Employment Law Section; the Consumer Attorneys Association of Los Angeles; the Association of Southern California Defense Counsel; the Association of Business Trial Lawyers of Los Angeles; and the California Employment Lawyers Association all "endorse the goal of promoting efficiency in litigation, and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases;"

-1-

ORDER PURSUANT TO CCP 1054(a)

**Exhibit B**

**- 83 -**          **SER-135**

Whereas the Early Organizational Meeting Stipulation is intended to encourage cooperation among the parties at an early stage in litigation in order to achieve litigation efficiencies;

Whereas it is intended that use of the Early Organizational Meeting Stipulation will promote economic case resolution and judicial efficiency;

Whereas, in order to promote a meaningful discussion of pleading issues at the Early Organizational Meeting and potentially to reduce the need for motions to challenge the pleadings, it is necessary to allow additional time to conduct the Early Organizational Meeting before the time to respond to a complaint or cross complaint has expired;

Whereas Code of Civil Procedure section 1054(a) allows a judge of the court in which an action is pending to extend for not more than 30 days the time to respond to a pleading "upon good cause shown";

Now, therefore, this Court hereby finds that there is good cause to extend for 30 days the time to respond to a complaint or to a cross complaint in any action in which the parties have entered into the Early Organizational Meeting Stipulation. This finding of good cause is based on the anticipated judicial efficiency and benefits of economic case resolution that the Early Organizational Meeting Stipulation is intended to promote.

IT IS HEREBY ORDERED that, in any case in which the parties have entered into an Early Organizational Meeting Stipulation, the time for a defending party to respond to a complaint or cross complaint shall be extended by the 30 days permitted

-2-

ORDER PURSUANT TO CCP 1054(a)

**Exhibit B**

1  by Code of Civil Procedure section 1054(a) without further need of a specific court

2  order.

3

4  DATED: _May 11, 2011_

5  _____
   Carolyn B. Kuhl, Supervising Judge of the

6  Civil Departments, Los Angeles Superior Court

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-3-

ORDER PURSUANT TO CCP 1054(a)

**Exhibit B**   **SER-137**

**- 85 -**

2019-GEN-014-00

**FILED**
Superior Court of California
County of Los Angeles

**MAY 03 2019**

Sherri R. Carter, Executive Officer/Clerk

By_____, Deputy
Rizalinda Mina

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

IN RE LOS ANGELES SUPERIOR COURT )    FIRST AMENDED GENERAL ORDER
— MANDATORY ELECTRONIC FILING )
FOR CIVIL )
)
)
)
_____)

On December 3, 2018, the Los Angeles County Superior Court mandated electronic filing of all

documents in Limited Civil cases by litigants represented by attorneys. On January 2, 2019, the Los

Angeles County Superior Court mandated electronic filing of all documents filed in Non-Complex

Unlimited Civil cases by litigants represented by attorneys. (California Rules of Court, rule 2.253(b).)

All electronically filed documents in Limited and Non-Complex Unlimited cases are subject to the

following:

1) DEFINITIONS

    a) **"Bookmark"** A bookmark is a PDF document navigational tool that allows the reader to

       quickly locate and navigate to a designated point of interest within a document.

    b) **"Efiling Portal"** The official court website includes a webpage, referred to as the efiling

       portal, that gives litigants access to the approved Electronic Filing Service Providers.

    c) **"Electronic Envelope"** A transaction through the electronic service provider for submission

       of documents to the Court for processing which may contain one or more PDF documents

       attached.

    d) **"Electronic Filing"** Electronic Filing (eFiling) is the electronic transmission to a Court of a

       document in electronic form. (California Rules of Court, rule 2.250(b)(7).)

1
FIRST AMENDED GENERAL ORDER RE MANDATORY ELECTRONIC FILING FOR CIVIL

**Exhibit B**
**- 86 -**    **SER-138**

e) **"Electronic Filing Service Provider"**  An Electronic Filing Service Provider (EFSP) is a person or entity that receives an electronic filing from a party for retransmission to the Court. In the submission of filings, the EFSP does so on behalf of the electronic filer and not as an agent of the Court.  (California Rules of Court, rule 2.250(b)(8).)

f) **"Electronic Signature"**  For purposes of these local rules and in conformity with Code of Civil Procedure section 17, subdivision (b)(3), section 34, and section 1010.6, subdivision (b)(2), Government Code section 68150, subdivision (g), and California Rules of Court, rule 2.257, the term "Electronic Signature" is generally defined as an electronic sound, symbol, or process attached to or logically associated with an electronic record and executed or adopted by a person with the intent to sign the electronic record.

g) **"Hyperlink"**  An electronic link providing direct access from one distinctively marked place in a hypertext or hypermedia document to another in the same or different document.

h) **"Portable Document Format"**  A digital document format that preserves all fonts, formatting, colors and graphics of the original source document, regardless of the application platform used.

2) MANDATORY ELECTRONIC FILING

a) Trial Court Records

Pursuant to Government Code section 68150, trial court records may be created, maintained, and preserved in electronic format.  Any document that the Court receives electronically must be clerically processed and must satisfy all legal filing requirements in order to be filed as an official court record (California Rules of Court, rules 2.100, et seq. and 2.253(b)(6)).

b) Represented Litigants

Pursuant to California Rules of Court, rule 2.253(b), represented litigants are required to electronically file documents with the Court through an approved EFSP.

c) Public Notice

The Court has issued a Public Notice with effective dates the Court required parties to electronically file documents through one or more approved EFSPs.  Public Notices containing effective dates and the list of EFSPs are available on the Court's website, at www.lacourt.org.

d)  Documents in Related Cases

Documents in related cases must be electronically filed in the eFiling portal for that case type if electronic filing has been implemented in that case type, regardless of whether the case has been related to a Civil case.

3)  EXEMPT LITIGANTS

a)  Pursuant to California Rules of Court, rule 2.253(b)(2), self-represented litigants are exempt from mandatory electronic filing requirements.

b)  Pursuant to Code of Civil Procedure section 1010.6, subdivision (d)(3) and California Rules of Court, rule 2.253(b)(4), any party may make application to the Court requesting to be excused from filing documents electronically and be permitted to file documents by conventional means if the party shows undue hardship or significant prejudice.

4)  EXEMPT FILINGS

a)  The following documents shall not be filed electronically:

i)  Peremptory Challenges or Challenges for Cause of a Judicial Officer pursuant to Code of Civil Procedure sections 170.6 or 170.3;

ii)  Bonds/Undertaking documents;

iii)  Trial and Evidentiary Hearing Exhibits

iv)  Any ex parte application that is filed concurrently with a new complaint including those that will be handled by a Writs and Receivers department in the Mosk courthouse; and

v)  Documents submitted conditionally under seal.  The actual motion or application shall be electronically filed.  A courtesy copy of the electronically filed motion or application to submit documents conditionally under seal must be provided with the documents submitted conditionally under seal.

b)  Lodgments

Documents attached to a Notice of Lodgment shall be lodged and/or served conventionally in paper form.  The actual document entitled, "Notice of Lodgment," shall be filed electronically.

//

//

5) ELECTRONIC FILING SYSTEM WORKING PROCEDURES

Electronic filing service providers must obtain and manage registration information for persons and entities electronically filing with the court.

6) TECHNICAL REQUIREMENTS

a) Electronic documents must be electronically filed in PDF, text searchable format **when** technologically feasible without impairment of the document's image**.**

b) The table of contents for any filing must be bookmarked.

c) Electronic documents, including but not limited to, declarations, proofs of service, and exhibits, must be bookmarked within the document pursuant to California Rules of Court, rule 3.1110(f)(4). Electronic bookmarks must include links to the first page of each bookmarked item (e.g. exhibits, declarations, deposition excerpts) and with bookmark titles that identify the bookedmarked item and briefly describe the item.

d) Attachments to primary documents must be bookmarked. Examples include, but are not limited to, the following:

   i) Depositions;

   ii) Declarations;

   iii) Exhibits (including exhibits to declarations);

   iv) Transcripts (including excerpts within transcripts);

   v) Points and Authorities;

   vi) Citations; and

   vii) Supporting Briefs.

e) Use of hyperlinks within documents (including attachments and exhibits) is strongly encouraged.

f) Accompanying Documents

Each document acompanying a single pleading must be electronically filed as a **separate** digital PDF document.

g) Multiple Documents

Multiple documents relating to one case can be uploaded in one envelope transaction.

1    h) Writs and Abstracts

2      Writs and Abstracts must be submitted as a separate electronic envelope.

3    i) Sealed Documents

4      If and when a judicial officer orders documents to be filed under seal, those documents must be

5      filed electronically (unless exempted under paragraph 4); the burden of accurately designating

6      the documents as sealed at the time of electronic submission is the submitting party's

7      responsibility.

8    j) Redaction

9      Pursuant to California Rules of Court, rule 1.201, it is the submitting party's responsibility to

10      redact confidential information (such as using initials for names of minors, using the last four

11      digits of a social security number, and using the year for date of birth) so that the information

12      shall not be publicly displayed.

13 7) ELECTRONIC FILING SCHEDULE

14    a) Filed Date

15      i) Any document received electronically by the court between 12:00 am and 11:59:59 pm

16        shall be deemed to have been effectively filed on that court day if accepted for filing. Any

17        document received electronically on a non-court day, is deemed to have been effectively

18        filed on the next court day if accepted.    (California Rules of Court, rule 2.253(b)(6); Code

19        Civ. Proc. § 1010.6(b)(3).)

20      ii) Notwithstanding any other provision of this order, if a digital document is not filed in due

21        course because of: (1) an interruption in service; (2) a transmission error that is not the

22        fault of the transmitter; or (3) a processing failure that occurs after receipt, the Court may

23        order, either on its own motion or by noticed motion submitted with a declaration for Court

24        consideration, that the document be deemed filed and/or that the document's filing date

25        conform to the attempted transmission date.

26 8) EX PARTE APPLICATIONS

27    a) Ex parte applications and all documents in support thereof must be electronically filed no later

28      than 10:00 a.m. the court day <u>before</u> the ex parte hearing.

b) Any written opposition to an ex parte application must be electronically filed by 8:30 a.m. the day of the ex parte hearing.  A printed courtesy copy of any opposition to an ex parte application must be provided to the court the day of the ex parte hearing.

9) PRINTED COURTESY COPIES

a) For any filing electronically filed two or fewer days before the hearing, a courtesy copy must be delivered to the courtroom by 4:30 p.m. the same business day the document is efiled.  If the efiling is submitted after 4:30 p.m., the courtesy copy must be delivered to the courtroom by 10:00 a.m. the next business day.

b) Regardless of the time of electronic filing, a printed courtesy copy (along with proof of electronic submission) is required for the following documents:

   i)   Any printed document required pursuant to a Standing or General Order;

   ii)  Pleadings and motions (including attachments such as declarations and exhibits) of 26 pages or more;

   iii) Pleadings and motions that include points and authorities;

   iv)  Demurrers;

   v)   Anti-SLAPP filings, pursuant to Code of Civil Procedure section 425.16;

   vi)  Motions for Summary Judgment/Adjudication; and

   vii) Motions to Compel Further Discovery.

c) Nothing in this General Order precludes a Judicial Officer from requesting a courtesy copy of additional documents.  Courtroom specific courtesy copy guidelines can be found at www.lacourt.org on the Civil webpage under "Courtroom Information."

10) WAIVER OF FEES AND COSTS FOR ELECTRONICALLY FILED DOCUMENTS

a) Fees and costs associated with electronic filing must be waived for any litigant who has received a fee waiver.  (California Rules of Court, rules 2.253(b)(), 2.258(b), Code Civ. Proc. § 1010.6(d)(2).)

b) Fee waiver applications for waiver of court fees and costs pursuant to Code of Civil Procedure section 1010.6, subdivision (b)(6), and  California Rules of Court, rule 2.252(f), may be electronically filed in any authorized action or proceeding.

1   11)  SIGNATURES ON ELECTRONIC FILING

2        For purposes of this General Order, all electronic filings must be in compliance with California

3        Rules of Court, rule 2.257.  This General Order applies to documents filed within the Civil

4        Division of the Los Angeles County Superior Court.

5

6        This First Amended General Order supersedes any previous order related to electronic filing,

7   and is effective immediately, and is to remain in effect until otherwise ordered by the Civil

8   Supervising Judge and/or Presiding Judge.

9

10  DATED:  May 3, 2019



KEVIN C. BRAZILE
Presiding Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Superior Court of California, County of Los Angeles

---

## ALTERNATIVE DISPUTE RESOLUTION (ADR)
## INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

---

### What is ADR?

ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration, and settlement conferences. When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR). These alternatives to litigation and trial are described below.

### Advantages of ADR

- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees, and witness fees.
- **Keeps Control** (with the parties): Parties choose their ADR process and provider for voluntary ADR.
- **Reduces Stress/Protects Privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

### Disadvantages of ADR

- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial:** ADR does not provide a public trial or a decision by a judge or jury.

### Main Types of ADR

1. **Negotiation**: Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation**: In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all. Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

   **Mediation may be appropriate when the parties**
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   **Mediation may <u>not</u> be appropriate when the parties**
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

LASC CIV 271 Rev. 02/22
For Mandatory Use

Page 1 of 2

**How to Arrange Mediation in Los Angeles County**

Mediation for **civil cases** is voluntary and parties may select any mediator they wish. Options include:

a. **The Civil Mediation Vendor Resource List**
   If all parties in an active civil case agree to mediation, they may contact these organizations to request a "Resource List Mediation" for mediation at reduced cost or no cost (for selected cases).

   - **ADR Services, Inc.** Case Manager Elizabeth Sanchez, elizabeth@adrservices.com (949) 863-9800
   - **Mediation Center of Los Angeles** Program Manager info@mediationLA.org (833) 476-9145

**These organizations cannot accept every case and they may decline cases at their discretion**. They may offer online mediation by video conference for cases they accept. Before contacting these organizations, review important information and FAQs at www.lacourt.org/ADR.Res.List

**NOTE: The Civil Mediation Vendor Resource List program does not accept family law, probate or small claims cases.**

b. **Los Angeles County Dispute Resolution Programs**
   https://hrc.lacounty.gov/wp-content/uploads/2020/05/DRP-Fact-Sheet-23October19-Current-as-of-October-2019-1.pdf

   Day of trial mediation programs have been paused until further notice.

   **Online Dispute Resolution (ODR).** Parties in small claims and unlawful detainer (eviction) cases should carefully review the Notice and other information they may receive about (ODR) requirements for their case.

c. Mediators and ADR and Bar organizations that provide mediation may be found on the internet.

3. **Arbitration**: Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision. For more information about arbitration, visit http://www.courts.ca.gov/programs-adr.htm

4. **Mandatory Settlement Conferences (MSC)**: MSCs are ordered by the Court and are often held close to the trial date or on the day of trial. The parties and their attorneys meet with a judge or settlement officer who does not make a decision but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For information about the Court's MSC programs for civil cases, visit http://www.lacourt.org/division/civil/C10047.aspx

Los Angeles Superior Court ADR website: http://www.lacourt.org/division/civil/C10109.aspx
For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm

Electronically FILED by Superior Court of California, County of Los Angeles on 01/30/2023 01:52 PM David W. Slayton, Executive Officer/Clerk of Court, by G. Carini, Deputy Clerk

Case 2:23-cv-02567-ODW-SK    Document 1-1    Filed 04/05/23    Page 34 of 43    Page ID #:95

23STCV01931

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
EPOCH EVERLASTING PLAY, LLC, a Delaware limited liability company, TARGET CORPORATION, a Minnesota corporation, and (see Attachment to Summons)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
WILLIENE JACKSON-JONES, individually and on behalf of all others situated, KAREN SANTOS, individually and on behalf of all situated,

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Stanley Mosk Courthouse
111 North Hill Street, Los Angeles, CA 90012

CASE NUMBER: *(Número del Caso):*
**23STCV01931**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Gillian L. Wade, Milstein Jackson Fairchild & Wade, LLP, 10990 Wilshire Blvd., Ste. 800, Los Angeles, CA 90024, Tel.: (310) 396-9600

DATE: 01/30/2023
*(Fecha)*

David W. Slayton, Executive Officer/Clerk of Court

Clerk, by *(Secretario)* G. Carini , Deputy *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.

2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*

4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Williene Jackson-Jones, et al. v. Epoch Everlasting Play, LLC, et al. | 23STCV01931 |

INSTRUCTIONS FOR USE

➡ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

➡ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party)*:

☐ Plaintiff      ☑ Defendant      ☐ Cross-Complainant      ☐ Cross-Defendant

AMAZON.COM SERVICES LLC, a Delaware corporation,

Page ___1___ of ___1___

Form Adopted by Rule 982(a)(9)(A)
Judicial Council of California
982(a)(9)(A) [New January 1, 1993]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

American LegalNet, Inc.
www.USCourtForms.com

| SUPERIOR COURT OF CALIFORNIA COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Spring Street Courthouse<br>312 North Spring Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>**01/30/2023**<br>David W. Slayton, Executive Officer / Clerk of Court<br>By _____ Deputy<br>G. Carini |
| **NOTICE OF CASE ASSIGNMENT**<br><br>**UNLIMITED CIVIL CASE** | |
| **Your case is assigned for all purposes to the judicial officer indicated below.** | CASE NUMBER:<br>23STCV01931 |

## THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✓ | Yvette M. Palazuelos | 9 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on 01/30/2023 _____
    (Date)

David W. Slayton, Executive Officer / Clerk of Court

By G. Carini _____, Deputy Clerk

**Exhibit B   SER-149**

**- 97 -**

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

Electronically FILED by Superior Court of California, County of Los Angeles on 01/30/2023 04:16 PM David W. Slayton, Executive Officer/Clerk of Court, by G. Carini,Deputy Clerk

Case 2:23-cv-02667-ODW-SK Document 42-1 Filed 04/05/23 Page 38 of 43 Page ID #:99

**CM-010**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):<br>Gillian L. Wade, State Bar No. 229124<br>10990 Wilshire Boulevard, Suite 800, Los Angeles, CA 90024<br><br>TELEPHONE NO.: (310) 396-9600  FAX NO. (Optional): (310) 396-9635<br>E-MAIL ADDRESS: gwade@mjfwlaw.com<br>ATTORNEY FOR (Name): Plaintiffs Williene Jackson-Jones, et al. | FOR COURT USE ONLY |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME:
Williene Jackson-Jones, et al. v. Epoch Everlasting Play, LLC, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [x] **Unlimited** (Amount demanded exceeds $25,000) | [ ] **Limited** (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | 23STCV01931 |
| | | | | JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[x] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [x] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [x] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [x] monetary  b. [x] nonmonetary; declaratory or injunctive relief  c. [x] punitive
4. Number of causes of action (specify): Three (3)
5. This case [x] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: January 30, 2023

Gillian L. Wade
_____
(TYPE OR PRINT NAME)    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. September 1, 2021] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courts.ca.gov |

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**    CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice– Physicians & Surgeons
    Other Professional Health Care Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
    Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/ Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court Case Matter
    Writ–Other Limited Court Case Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment *(non-domestic relations)*
    Sister State Judgment
    Administrative Agency Award *(not unpaid taxes)*
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-harassment)*
    Mechanics Lien
    Other Commercial Complaint Case *(non-tort/non-complex)*
    Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late Claim
    Other Civil Petition

Exhibit B
- 100 -
SER-152

| SHORT TITLE: Williene Jackson-Jones, et al. v. Epoch Everlasting Play, LLC, et al. | CASE NUMBER: 23STCV01931 |
|---|---|

### CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to LASC Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

Item I. Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES    CLASS ACTION? ☑ YES    LIMITED CASE? ☐ YES    TIME ESTIMATED FOR TRIAL 7    ☐ HOURS/ ☑ DAYS

Item II. Select the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet Form, find the main civil case cover sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked.
For any exception to the court location, see Los Angeles Superior Court Local Rule 2.0.

| Applicable Reasons for Choosing Courthouse Location (see Column **C** below) |
|---|

1. Class Actions must be filed in the County Courthouse, Central District.
2. May be filed in Central (Other county, or no Bodily Injury/Property Damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV.  Sign the declaration.

| | A<br>Civil Case Cover Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** | Asbestos  (04) | ☐ A6070  Asbestos Property Damage | 2. |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1., 2., 4. |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1., 2., 4. |
| | Other<br>Personal Injury<br>Property Damage<br>Wrongful Death<br>(23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1., 2., 4. |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 2., 4. |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1., 2., 3. |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort  (07) | ☑ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 2., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |

CIV 109 03-04 (Rev. 03/06)
LASC Approved

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 1 of 4

EXHIBIT B
- 101 -    SER-153

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Williene Jackson-Jones, et al. v. Epoch Everlasting Play, LLC, et al. | |

| **A**<br>Civil Case Cover Sheet Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons<br>-See Step 3 Above |
|---|---|---|
| Professional Negligence (25) | ☐ A6017  Legal Malpractice<br>☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3.<br>1., 2., 3. |
| Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2.,3. |
| Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| Other Employment (15) | ☐ A6024  Other Employment Complaint Case<br>☐ A6109  Labor Commissioner Appeals | 1., 2., 3.<br>10. |
| Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not Unlawful Detainer or wrongful eviction)<br>☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence)<br>☐ A6019  Negligent Breach of Contract/Warranty (no fraud)<br>☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 2., 5.<br>2., 5.<br>1., 2., 5.<br>1., 2., 5. |
| Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff<br>☐ A6012  Other Promissory Note/Collections Case | 2., 5., 6.<br>2., 5. |
| Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| Other Contract (37) | ☐ A6009  Contractual Fraud<br>☐ A6031  Tortious Interference<br>☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 5.<br>1., 2., 3., 5.<br>1., 2., 3., 8. |
| Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation        Number of parcels_____ | 2. |
| Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| Other Real Property (26) | ☐ A6018  Mortgage Foreclosure<br>☐ A6032  Quiet Title<br>☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6.<br>2., 6.<br>2., 6. |
| Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |
| Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |

*(Left margin vertical labels, top to bottom):* Non-Personal Injury/Property Damage/ Wrongful Death Tort (Cont d.) · Employment · Contract · Real Property · Unlawful Detainer · Judicial Review

CIV 109 03-04 (Rev. 03/06)

LASC Approved

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC, rule 2.0

Page 2 of 4

EXHIBIT B
- 102 -   SER-154

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Williene Jackson-Jones, et al. v. Epoch Everlasting Play, LLC, et al. | |

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review (Cont'd.)** | Writ of Mandate<br><br>(02) | ☐ A6151  Writ - Administrative Mandamus<br>☐ A6152  Writ - Mandamus on Limited Court Case Matter<br>☐ A6153  Writ - Other Limited Court Case Review | 2., 8.<br>2.<br>2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☑ A6006   Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental  (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement<br>of Judgment<br><br>(20) | ☐ A6141  Sister State Judgment<br>☐ A6160  Abstract of Judgment<br>☐ A6107  Confession of Judgment (non-domestic relations)<br>☐ A6140  Administrative Agency Award (not unpaid taxes)<br>☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112  Other Enforcement of Judgment Case | 2., 9.<br>2., 6.<br>2., 9.<br>2., 8.<br>2., 8.<br>2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints<br>(Not Specified Above)<br><br>(42) | ☐ A6030  Declaratory Relief Only<br>☐ A6040  Injunctive Relief Only (not domestic/harassment)<br>☐ A6011  Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8.<br>2., 8.<br>1., 2., 8.<br>1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance(21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions<br>(Not Specified Above)<br><br>(43) | ☐ A6121   Civil Harassment<br>☐ A6123  Workplace Harassment<br>☐ A6124  Elder/Dependent Adult Abuse Case<br>☐ A6190  Election Contest<br>☐ A6110  Petition for Change of Name<br>☐ A6170  Petition for Relief from Late Claim Law<br>☐ A6100  Other Civil Petition | 2., 3., 9.<br>2., 3., 9.<br>2., 3., 9.<br>2.<br>2., 7.<br>2., 3., 4., 8.<br>2., 9. |

CIV 109 03-04 (Rev. 03/06)
LASC Approved

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 3 of 4

EXHIBIT B
- 103 - SER-155

| SHORT TITLE: Williene Jackson-Jones, et al. v. Epoch Everlasting Play, LLC, et al. | CASE NUMBER |
|---|---|

Item III. Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON: CHECK THE NUMBER UNDER COLUMN C WHICH APPLIES IN THIS CASE  ☑1. ☐2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | ADDRESS: 111 North Hill Street |
|---|---|
| CITY: Los Angeles | STATE: CA | ZIP CODE: 90012 | |

Item IV.        r                : I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the ___Stanley Mosk___courthouse in the ___Central___ District of the Los Angeles Superior Court  (Code Civ. Proc., § 392 et seq., and LASC Local Rule 2.0, subds. (b), (c) and (d)).

Dated: _January 30, 2023_

_(signature)_
(SIGNATURE OF ATTORNEY/FILING PARTY)

---

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet form CM-010.

4. Complete Addendum to Civil Case Cover Sheet form LASC Approved CIV 109 03-04 (Rev. 03/06).

5. Payment in full of the filing fee, unless fees have been waived.

6. Signed order appointing the Guardian ad Litem, JC form 982(a)(27), if the plaintiff or petitioner is a minor under 18 years of age, or if required by Court.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

# EXHIBIT A

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Spring Street Courthouse<br>312 North Spring Street, Los Angeles, CA 90012<br><br>NOTICE OF CASE ASSIGNMENT<br><br>UNLIMITED CIVIL CASE | **FILED**<br>Superior Court of California<br>County of Los Angeles<br><br>01/30/2023<br><br>David W. Slayton, Executive Officer / Clerk of Court<br><br>By: _____ G. Carini _____ Deputy |
| Your case is assigned for all purposes to the judicial officer indicated below. | CASE NUMBER:<br>23STCV01931 |

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✓ | Yvette M. Palazuelos | 9 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record    David W. Slayton, Executive Officer / Clerk of Court

on 01/30/2023
(Date)                                                By G. Carini _____ , Deputy Clerk

LACIV 190 (Rev 6/18)          **NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**
LASC Approved 05/06                        **Exhibit A  SER-158**

- 8 -

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date. All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference. These matters may be heard and resolved at this conference. At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status. If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

**Exhibit A SER-159**

**- 9 -**



## Superior Court of California, County of Los Angeles

---

# ALTERNATIVE DISPUTE RESOLUTION (ADR)
# INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

---

### What is ADR?
ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration, and settlement conferences. When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR). These alternatives to litigation and trial are described below.

### Advantages of ADR
- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees, and witness fees.
- **Keeps Control** (with the parties): Parties choose their ADR process and provider for voluntary ADR.
- **Reduces Stress/Protects Privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

### Disadvantages of ADR
- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial:** ADR does not provide a public trial or a decision by a judge or jury.

### Main Types of ADR

1. **Negotiation:** Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation:** In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all. Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

   **Mediation may be appropriate when the parties**
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   **Mediation may not be appropriate when the parties**
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

---

LASC CIV 271 Rev. 02/22
For Mandatory Use

Exhibit A  SER-160

- 10 -

### How to Arrange Mediation in Los Angeles County

Mediation for **civil cases** is voluntary and parties may select any mediator they wish. Options include:

a. **The Civil Mediation Vendor Resource List**
   If all parties in an active civil case agree to mediation, they may contact these organizations to request a "Resource List Mediation" for mediation at reduced cost or no cost (for selected cases).

   - **ADR Services, Inc.** Case Manager Elizabeth Sanchez, elizabeth@adrservices.com
     (949) 863-9800
   - **Mediation Center of Los Angeles** Program Manager info@mediationLA.org
     (833) 476-9145

**These organizations cannot accept every case and they may decline cases at their discretion**. They may offer online mediation by video conference for cases they accept. Before contacting these organizations, review important information and FAQs at www.lacourt.org/ADR.Res.List

**NOTE: The Civil Mediation Vendor Resource List program does not accept family law, probate or small claims cases.**

b. **Los Angeles County Dispute Resolution Programs**
   https://hrc.lacounty.gov/wp-content/uploads/2020/05/DRP-Fact-Sheet-23October19-Current-as-of-October-2019-1.pdf

   Day of trial mediation programs have been paused until further notice.

   **Online Dispute Resolution (ODR).** Parties in small claims and unlawful detainer (eviction) cases should carefully review the Notice and other information they may receive about (ODR) requirements for their case.

c. Mediators and ADR and Bar organizations that provide mediation may be found on the internet.

3. **Arbitration:** Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision. For more information about arbitration, visit http://www.courts.ca.gov/programs-adr.htm

4. **Mandatory Settlement Conferences (MSC):** MSCs are ordered by the Court and are often held close to the trial date or on the day of trial. The parties and their attorneys meet with a judge or settlement officer who does not make a decision but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For information about the Court's MSC programs for civil cases, visit http://www.lacourt.org/division/civil/C10047.aspx

Los Angeles Superior Court ADR website: http://www.lacourt.org/division/civil/C10109.aspx
For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm

Electronically FILED by Superior Court of California, County of Los Angeles on 01/30/2023 02:18 PM David W. Slayton, Executive Officer/Clerk of Court, by G. Carini,Deputy Clerk   **CM-010**

23STCV01931

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>Gillian L. Wade, State Bar No. 229124<br>10990 Wilshire Boulevard, Suite 800, Los Angeles, CA 90024<br><br>TELEPHONE NO.: (310) 396-9600    FAX NO. *(Optional):* (310) 396-9635<br>E-MAIL ADDRESS: gwade@mjfwlaw.com<br>ATTORNEY FOR *(Name):* Plaintiffs Williene Jackson-Jones, et al. | **FOR COURT USE ONLY** |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** LOS ANGELES
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME:
Williene Jackson-Jones, et al. v. Epoch Everlasting Play, LLC, et al.

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|---|
| [x] **Unlimited**<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] **Limited**<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter   [ ] Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | **23STCV01931**<br>JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| **Auto Tort** | **Contract** | **Provisionally Complex Civil Litigation** |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | **(Cal. Rules of Court, rules 3.400–3.403)** |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Other collections (09) | [ ] Construction defect (10) |
| **Damage/Wrongful Death) Tort** | [ ] Insurance coverage (18) | [x] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | [ ] Insurance coverage claims arising from the |
| [ ] Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | types (41) |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | **Enforcement of Judgment** |
| [ ] Civil rights (08) | **Unlawful Detainer** | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13) | [ ] Commercial (31) | **Miscellaneous Civil Complaint** |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] RICO (27) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Partnership and corporate governance (21) |
| **Employment** | [ ] Petition re: arbitration award (11) | [ ] Other petition *(not specified above)* (43) |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [x] is    [ ] is not    complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties       d. [ ] Large number of witnesses
   b. [x] Extensive motion practice raising difficult or novel     e. [ ] Coordination with related actions pending in one or more
           issues that will be time-consuming to resolve                courts in other counties, states, or countries, or in a federal
   c. [ ] Substantial amount of documentary evidence                court
                                                                 f. [x] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. [x] monetary b. [x] nonmonetary; declaratory or injunctive relief c. [x] punitive
4. Number of causes of action *(specify):* Three (3)
5. This case [x] is    [ ] is not    a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: January 30, 2023
Gillian L. Wade                                                ▶
_____                              _____
(TYPE OR PRINT NAME)                                         (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.
                                                                                                                    Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev.September 1, 2021] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courts.ca.gov |

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**     **CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
  Uninsured Motorist (46) *(if the*
  *case involves an uninsured*
  *motorist claim subject to*
  *arbitration, check this item*
  *instead of Auto)*
**Other PI/PD/WD (Personal Injury/**
**Property Damage/Wrongful Death)**
**Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability *(not asbestos or*
  *toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) *(not civil*
  *harassment)* (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract *(not unlawful detainer*
    *or wrongful eviction)*
  Contract/Warranty Breach–Seller
    Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage *(not provisionally*
  *complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent*
    *domain, landlord/tenant, or*
    *foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal*
  *drugs, check this item; otherwise,*
  *report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.**
**Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  *(arising from provisionally complex*
  *case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment *(non-*
    *domestic relations)*
  Sister State Judgment
  Administrative Agency Award
    *(not unpaid taxes)*
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified*
  *above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-*
    *harassment)*
  Mechanics Lien
  Other Commercial Complaint
    Case *(non-tort/non-complex)*
  Other Civil Complaint
    *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition *(not specified*
  *above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late
    Claim
  Other Civil Petition

CM-010 [Rev. September 1, 2021]     **CIVIL CASE COVER SHEET**     Page 2 of 2

**Exhibit A   SER-163**

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Williene Jackson-Jones, et al. v. Epoch Everlasting Play, LLC, et al. | 23STCV01931 |

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to LASC Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

Item I. Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES   CLASS ACTION? ☑ YES   LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL 7   ☐ HOURS/ ☑ DAYS

Item II. Select the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet Form, find the main civil case cover sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Los Angeles Superior Court Local Rule 2.0.

### Applicable Reasons for Choosing Courthouse Location (see Column C below)

1. Class Actions must be filed in the County Courthouse, Central District.
2. May be filed in Central (Other county, or no Bodily Injury/Property Damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons –<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100   Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110   Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** | Asbestos (04) | ☐ A6070   Asbestos Property Damage | 2. |
| | | ☐ A7221   Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ A7260   Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210   Medical Malpractice - Physicians & Surgeons | 1., 2., 4. |
| | | ☐ A7240   Other Professional Health Care Malpractice | 1., 2., 4. |
| | Other<br>Personal Injury<br>Property Damage<br>Wrongful Death<br>(23) | ☐ A7250   Premises Liability (e.g., slip and fall) | 1., 2., 4. |
| | | ☐ A7230   Intentional Bodily Injury/Property Damage/Wrongful Death (e.g.,<br>assault, vandalism, etc.) | 1., 2., 4. |
| | | ☐ A7270   Intentional Infliction of Emotional Distress | 1., 2., 3. |
| | | ☐ A7220   Other Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☑ A6029   Other Commercial/Business Tort (not fraud/breach of contract) | 1., 2., 3. |
| | Civil Rights (08) | ☐ A6005   Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010   Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013   Fraud (no contract) | 1., 2., 3. |

CIV 109 03-04 (Rev. 03/06)
LASC Approved

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 1 of 4

**Exhibit A**
**SER-164**
**- 14 -**

| SHORT TITLE: Williene Jackson-Jones, et al. v. Epoch Everlasting Play, LLC, et al. | CASE NUMBER |
|---|---|

| **A** Civil Case Cover Sheet Category No. | **B** Type of Action (Check only one) | **C** Applicable Reasons -See Step 3 Above |
|---|---|---|
| Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2., 3. |
| Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | ☐ A6109  Labor Commissioner Appeals | 10. |
| Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004 Breach of Rental/Lease Contract (not Unlawful Detainer or wrongful eviction) | 2., 5. |
| | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
| Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| Other Contract (37) | ☐ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation      Number of parcels_____ | 2. |
| Wrongful Eviction (33) | ☐ A6023   Wrongful Eviction Case | 2., 6. |
| Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | ☐ A6032  Quiet Title | 2., 6. |
| | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| Unlawful Detainer- Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer- Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer- Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |
| Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |

Left margin labels: Non-Personal Injury/Property Damage/ Wrongful Death Tort (Cont'd.) · Employment · Contract · Real Property · Unlawful Detainer · Judicial Review

CIV 109 03-04 (Rev. 03/06)
LASC Approved

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 2 of 4

Exhibit A  **SER-165**
**- 15 -**

| SHORT TITLE: Williene Jackson-Jones, et al. v. Epoch Everlasting Play, LLC, et al. | CASE NUMBER |
|---|---|

| | **A**<br>Civil Case Cover Sheet Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review (Cont'd.)** | Writ of Mandate<br><br>(02) | ☐ A6151 Writ - Administrative Mandamus<br>☐ A6152 Writ - Mandamus on Limited Court Case Matter<br>☐ A6153 Writ - Other Limited Court Case Review | 2., 8.<br>2.<br>2. |
| | Other Judicial Review<br>(39) | ☐ A6150 Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003 Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007 Construction defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☑ A6008 Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035 Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental (30) | ☐ A6036 Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014 Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement of Judgment<br><br>(20) | ☐ A6141 Sister State Judgment<br>☐ A6160 Abstract of Judgment<br>☐ A6107 Confession of Judgment (non-domestic relations)<br>☐ A6140 Administrative Agency Award (not unpaid taxes)<br>☐ A6114 Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112 Other Enforcement of Judgment Case | 2., 9.<br>2., 6.<br>2., 9.<br>2., 8.<br>2., 8.<br>2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033 Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints (Not Specified Above)<br><br>(42) | ☐ A6030 Declaratory Relief Only<br>☐ A6040 Injunctive Relief Only (not domestic/harassment)<br>☐ A6011 Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000 Other Civil Complaint (non-tort/non-complex) | 1., 2., 8.<br>2., 8.<br>1., 2., 8.<br>1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance(21) | ☐ A6113 Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions (Not Specified Above)<br><br>(43) | ☐ A6121 Civil Harassment<br>☐ A6123 Workplace Harassment<br>☐ A6124 Elder/Dependent Adult Abuse Case<br>☐ A6190 Election Contest<br>☐ A6110 Petition for Change of Name<br>☐ A6170 Petition for Relief from Late Claim Law<br>☐ A6100 Other Civil Petition | 2., 3., 9.<br>2., 3., 9.<br>2., 3., 9.<br>2.<br>2., 7.<br>2., 3., 4., 8.<br>2., 9. |

CIV 109 03-04 (Rev. 03/06)
LASC Approved

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 3 of 4

Exhibit A    SER-166

- 16 -

| SHORT TITLE:                                                      | CASE NUMBER |
|------------------------------------------------------------------|-------------|
| Williene Jackson-Jones, et al. v. Epoch Everlasting Play, LLC, et al. |             |

Item III. Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON: CHECK THE NUMBER UNDER COLUMN C WHICH APPLIES IN THIS CASE  ☑1. ☐2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | | ADDRESS: 111 North Hill Street | |
|---|---|---|---|
| CITY: Los Angeles | STATE: CA | ZIP CODE: 90012 | |

Item IV.        r               : I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the <u>Stanley Mosk</u> courthouse in the <u>Central</u> District of the Los Angeles Superior Court (Code Civ. Proc., § 392 et seq., and LASC Local Rule 2.0, subds. (b), (c) and (d)).

Dated: <u>January 30, 2023</u>

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

---

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet form CM-010.

4. Complete Addendum to Civil Case Cover Sheet form LASC Approved CIV 109 03-04 (Rev. 03/06).

5. Payment in full of the filing fee, unless fees have been waived.

6. Signed order appointing the Guardian ad Litem, JC form 982(a)(27), if the plaintiff or petitioner is a minor under 18 years of age, or if required by Court.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

CIV 109 03-04 (Rev. 03/06)
LASC Approved

**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 4 of 4

Exhibit A  SER-167

- 17 -

Assigned for all purposes to: Spring Street Courthouse, Judicial Officer: Yvette Palazuelos

Electronically FILED by Superior Court of California, County of Los Angeles on 01/30/2023 02:46 PM David W. Slayton, Executive Officer/Clerk of Court, by G. Carini,Deputy Clerk

1  **MILSTEIN JACKSON**
   **FAIRCHILD & WADE, LLP**
2  Gillian L. Wade, State Bar No. 229124
   gwade@mjfwlaw.com
3  Sara D. Avila, State Bar No. 263213
   savila@mjfwlaw.com
4  Marc A. Castaneda, State Bar No. 299001
   mcastaneda@mjfwlaw.com
5  10990 Wilshire Blvd., 8th Floor
   Los Angeles, California 90024
6  Tel: (310) 396-9600
   Fax: (310) 396-9635
7
   [Additional counsel on signature page.]
8
   *Attorneys for Plaintiffs and the Proposed Class*
9

10

11

12              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

13                        **COUNTY OF LOS ANGELES**

14

15  WILLIENE JACKSON-JONES,                Case No. 23STCV01931
    individually and on behalf of all others
16  situated, KAREN SANTOS, individually
    and on behalf of all situated,         **CLASS ACTION COMPLAINT**
17

18                    Plaintiffs
                                           1.  Violations of Unfair Competition Law,
19         vs.                                 'Unlawful' Prong, Cal. Bus. & Prof. C. §
                                               17200, *et seq.*
20
                                           2.  Violations of Unfair Competition Law,
21                                             'Unfair' Prong, Cal. Bus. & Prof. C. §
                                               17200, *et seq.*
22  EPOCH EVERLASTING PLAY, LLC, a
    Delaware limited liability company,    3.  Unjust Enrichment
23  TARGET CORPORATION, a Minnesota
    corporation, and AMAZON.COM
24  SERVICES LLC, a Delaware corporation,

25                    Defendants.

26

27

28

                        CLASS ACTION COMPLAINT

Plaintiffs Williene Jackson-Jones and Karen Santos ("Plaintiffs"), through undersigned counsel, bring this Class Action Complaint against Defendants Epoch Everlasting Play, LLC, Target Corporation, and Amazon.com Services LLC (collectively, "Defendants"), and allege the following based upon the investigation of counsel, except as to allegations pertaining to Plaintiffs, which are based upon personal knowledge:

## NATURE OF THE ACTION

1.      Plaintiffs bring this action on their own behalf and on behalf of a class of consumers as defined below to redress Defendants' unlawful sale of a line of flocked animal toy products known as Calico Critters (the "Calico Critters Flocked Toys").

2.      The Calico Critters Flocked Toys constitute banned hazardous substances under Section 15(a)(1) of the Consumer Product Safety Act, 15 U.S.C. § 2051, *et seq.* (the "CPSA") because they are intended for use by children under 3 years of age and pose a choking, aspiration, or ingestion hazard because of their small parts.

3.      The Calico Critters Flocked Toys are highly dangerous and have resulted in multiple instances of children under 3 suffering severe injury and even death due to choking.

4.      Instead of making a safer toy, Defendants chose to play a labeling and marketing game with deadly consequences. Defendants attempted to circumvent the regulation designed to protect children under three by age labeling and marketing the toys as "3+" and providing a choking hazard warning.

5.      The CPSC anticipated such games and issued guidelines to prevent such conduct by toy manufacturers and distributers. According to the CPSC's Enforcement Policy and Procedural Guides, placing a "not intended for children under three" label on a flocked toy that is by definition intended for children under three years of age does not transform a banned hazardous substance into a toy that is in compliance with CPSC regulations. *Enforcement Policy & Procedural Guide 2.05*, Figure 2 (U.S. CSPC 1990).

6.      Despite Defendants' knowledge of the Calico Critters Flocked Toys' hazardous nature, including instances of injury and death caused by their use, Defendants have sold and continue to sell the Calico Critters Flocked Toys to consumers at various retail locations throughout

1    the country, with misleading (and potentially deadly) labeling. Defendants' introduction or delivery

2    for introduction of banned hazardous substances into interstate commerce is unlawful under 15

3    U.S.C. § 1263(a).

4        7.    Accordingly, this action seeks to provide restitution and related injunctive and

5    declaratory relief to California consumers harmed by Defendants' illegal sale of the Calico Critters

6    Flocked Toys, under the following causes of action: (i) violations of the 'unlawful' prong of

7    California's Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq*. (the "UCL"); (ii)

8    violations of the 'unfair' prong of the UCL; and (iii) unjust enrichment.

9                          **JURISDICTION AND VENUE**

10       8.    This Court has personal jurisdiction over Defendants because Defendants are foreign

11   entities authorized to do business in California and have sufficient minimum contacts with

12   California or otherwise intentionally avail themselves of the laws and markets of California, through

13   the distribution and sale of the Calico Critters Flocked Toys in California, to render the exercise of

14   jurisdiction by the California courts permissible.

15       9.    Defendants' activities in California gave rise to the claims identified herein, both

16   suffered by Plaintiffs and by members of the proposed Class. Defendants have introduced the

17   Calico Critters Flocked Toys into the stream of commerce in California, including the Calico

18   Critters Flocked Toys purchased by Plaintiffs and the Class, each of which give rise to the claims

19   of Plaintiffs and the Class.

20       10.   Venue is proper in this Court because Defendants have conducted business and

21   entered into transactions in this County, and the conduct at issue occurred in, and/or emanated from,

22   in part, this County. Moreover, Plaintiff Williene Jackson-Jones resides in this County.

23                                **PARTIES**

24       11.   Plaintiff Williene Jackson-Jones is an individual, a resident of Lancaster, California,

25   and a member of the Class alleged herein.

26       12.   Plaintiff Karen Santos is an individual, a resident of Pleasanton, California, and a

27   member of the Class alleged herein.

28

---

2

**CLASS ACTION COMPLAINT**

Exhibit A

**SER-170**

- 20 -

13.    Defendant Epoch Everlasting Play, LLC ("Epoch") is a Delaware limited liability company, having its principal office at 75D Lackawanna Avenue, Parsippany, New Jersey 07054, and is duly organized and existing pursuant to law. Epoch conducts substantial business in California and throughout the United States. At all relevant times, Epoch has been engaged in the marketing, distribution, and sale of the Calico Critters Flocked Toys in California and throughout the United States.

14.    Epoch, formerly known as International Playthings LLC, is a subsidiary of, and US-based distributor for a Japanese toy company named Epoch Co. Ltd. ("Epoch Co."). As the US-based distributor of Epoch Co., Epoch has the same duties, responsibilities and liability under the law in designing, manufacturing and marketing the Calico Critters Flocked Toys at issue.

15.    Defendant Target Corporation ("Target") is a retail company headquartered in Minnesota. Target primarily sells household goods, including the Calico Critters Flocked Toys purchased by Plaintiffs.

16.    Defendant Amazon.com Services LLC is an online retail company headquartered in Washington. Defendant sells a wide range of consumer products, including the Calico Critters Flocked Toys purchased by Plaintiffs.

## FACTUAL ALLEGATIONS

**A. Defendants' Hazardous Calico Critters Flocked Toys.**

17.    Since the 1980s, Epoch has built an internationally-recognized brand of flocked toys, played with by little children throughout the world. The Calico Critters Flocked Toys consist of anthropomorphized animals dressed in human clothes—plastic, poseable animal figures with a flocked exterior, giving the feel of fur and functioning as a mix between a stuffed animal and a doll.



18.    The Calico Critters Flocked Toys are flocked toys. When a toy is "flocked," that means that its surface is coated in soft, fuzzy fibers that give the toy the feeling of velour or felt.

19.    In addition to the flocked figurines, Defendant's Calico Critters Flocked Toys include accessories, furniture, and dollhouse playsets.

**B. Calico Critters Are Intended for Children Under Age 3 as a Matter of Law, Yet They Present a Lethal Choking Hazard.**

20.    Critically, per federal regulations, flocked toys like the Calico Critters Flocked Toys are considered to be intended for children under 3 years old as a matter of law.

21.    The Consumer Product Safety Commission ("CPSC") has identified "stuffed, plush, and flocked animals and other figures"—like the Calico Critters Flocked Toys—as automatically intended for children under 3. *See* 16 C.F.R. 1501.2(a).

4

22.    The CPSC has also established regulations banning "[a]ny toy or other article intended for use by children under 3 years of age which presents a choking, aspiration, or ingestion hazard because of small parts as determined by part 1501 of this chapter and which is introduced into interstate commerce after January 1, 1980." 16 C.F.R. § 1500.18(a)(9).

23.    To determine whether a toy presents a choking, aspiration, or ingestion hazard, the CPSC provides a test procedure using a cylinder the size of a fully expanded throat of a child under three years old, known as the choke tube. *See* 16 C.F.R. § 1501.4. The choke tube is 1.25 inches in diameter. *Id.* If a toy fits the choke tube in any orientation and without being compressed, it fails to comply with the test procedure and is considered a choking, aspiration, or ingestion hazard.

24.    The Calico Critters Flocked Toys and their accessories are miniscule and "fit the choke tube," presenting a terrifying choking hazard to children under three.



25.    For example, the Calico Critters Town Tea and Treats Set purchased by Plaintiff Jackson-Jones contains miniature accessories, including a tea pot, tea pot lid, treat stand, handle, server, teacups, saucers, plates, and artificial macarons and chocolates—each of which easily fits the choke tube.

5

**CLASS ACTION COMPLAINT**



26.    Additionally, the Calico Critters Town Chocolate Lounge purchased by Plaintiff
Jackson-Jones contains miniature plates, serving utensils, cups, saucers, and artificial treats that
each fit within the choke tube as well.





27.    Furthermore, the Calico Critters Persian Cat Triplets purchased by Plaintiff Karen Santos contains three miniature cat figurines that are each 1.25 inches in length and also fit the choke tube.



28.    Because the Calico Critters Flocked Toys and their accessories are flocked toys and fit the choke tube, they constitute statutorily banned hazardous substances. *See* 15 U.S.C. § 2064(a)(1) ("the term 'substantial product hazard' means . . . a failure to comply with an applicable

7

1    consumer product safety rule under this Act or a similar rule, regulation, standard, or ban under any

2    other Act enforced by the Commission which creates a substantial risk of injury to the public").

3        29.    Defendants have violated and continue to violate the Federal Hazardous Substances

4    Act, 15 U.S.C. § 1261, *et seq.* ("FHSA") by introducing and/or delivering for introduction banned

5    hazardous substances into interstate commerce. *See* 15 U.S.C. § 1263(a).

6        30.    Instead of making a safer toy, Defendants chose to play a labeling and marketing game

7    with deadly consequences. Defendants attempted to circumvent the regulation designed to protect

8    children under three by age labeling and marketing the part as "3+" and providing a choking hazard

9    warning.

10       31.    But the CPSC anticipated such games and issued guidelines to prevent such conduct

11   by toy manufacturers and distributers.

12       32.    According to the CPSC's Enforcement Policy and Procedural Guides, placing a "not

13   intended for children under three" label on a flocked toy that is by definition intended for children

14   under three years of age does not transform a banned hazardous substance into a toy that is in

15   compliance with CPSC regulations. Enforcement Policy & Procedural Guide 2.05, Figure 2 (U.S.

16   CSPC 1990).

17   **C. Epoch Intentionally Marketed the Calico Critters Flocked Toys to Children Under
      Three Years of Age.**

18

19       33.    Epoch's marketing strategy for the Calico Critters Flocked Toys involved willful

20   ignorance, at best, and dangerous deception, at worst.  At every moment, however, Epoch refused

21   to acknowledge (1) the age of the children playing with its toys and (2) the inherent danger posed

     to that audience.

22

23       34.    In one stunning example, Epoch failed to age grade[1] the Calico Critters Flocked Toys,

24   demonstrating its willingness to ignore regulations and remain ignorant.

25       35.    Nonetheless, Epoch ultimately learned the age demographic of its key audience—

26   including the fact that they were too young to play with Defendant's toys.  Marketing documents

27   ─────────────
     [1] Age grading is a process used to analyze a particular toy product to determine what age children
28   are appropriate to interact with the product. The process matches the attributes of the toy to the
     attributes of the child. It is used to determine what regulations will apply to the product.

8

1  reveal that Epoch *intentionally marketed* the Calico Critters Flocked Toys to children under the age

2  of three.

3      36.    In August 2017, Epoch commissioned marketing research to understand the attitudes

4  and usage of the Calico Critters Brand in the United States. The report—"The Calico Critters Story,

5  Understanding Attitudes and Usage of the Brand, USA,"—contains information about Epoch's

6  intentional, purposeful, and research-backed marketing to two-year-old girls.

7      37.    Included within the report was a survey conducted in the United States among a

8  nationally representative population of category-involved girls and their parents, meaning that the

9  girls (1) play with or collect small toys, and (2) play with at least two brands in the Calico Critters

10  category. Epoch surveyed 300 parents of girls aged two to three. The mean age of the girls surveyed

11  in the aged-two-to-three category was two years, seven months old.

12      38.    The survey revealed the following: (1) the largest category of girls who play with

13  small dolls/collectibles is girls aged two to three; (2) girls tend to come to the Calico

14  Critters…around age 3; (3) 75% of girls ages two to three play with Calico Critters a few times a

15  week; (4) as girls age, the play severely drops, with the largest drop occurring at age 4 to 5; (5)

16  brand fanship is highest among girls aged two to three; and (6) overwhelmingly higher brand

17  engagement (emotional commitment or loyalty) occurs at age two to three than for any other age

18  subset, at 74%.

19      39.    The report also provided a marketing strategy, which included: (1) "touch points" of

20  "dolls, figures and playsets" beginning at age two; (2) developing stories that meet the girls where

21  they are, and beginning those stories to children as young as age two; (3) bypassing parents and

22  marketing directly to girls; and (4) using bold designs that catch the child's eye.

23      40.    The brand strategy included bypassing parents and marketing directly to girls:

24

25

26

27

28



**Market directly to girls, not just parents**

* Use bold packaging designs that catch girls' attention in stores
* Offer TV ads
* Build word of mouth

## Small dolls and collectibles are an impulse buy, so packaging is important

▼



**75%**

of these purchases are made in person at big box chain stores, such as:

⊙ TARGET  Toys Я us  Walmart ⊱⊰

41.     The executive summary of the report stated that fanship and engagement is strongest among younger girls (two-to-three-years-old), and decisions to purchase small dolls/collectibles are girl-led and usually occur on the spot:

10

**CLASS ACTION COMPLAINT**

**Exhibit A**

**SER-178**

**- 28 -**

**Executive Summary**

▸ **Small dolls and collectibles are popular among girls 2-11** –
they own lots of them and many girls play with them daily

> ▸ And they play with them less as they grow



▸ **Decisions to purchase small dolls/collectibles are girl-led and**
usually occur on the spot

▸ **Calico Critters has room to grow in awareness, fanship, and**
**engagement** and is strongest among younger girls (2-3 years)

▸ **Calico Critters' brand essence is family, nature, and love,** setting it
apart from competitors



> ▸ **Calico Critters** is also seen as expensive

▸ **Calico Critters has the opportunity to build more stories** into the
brand to gain an entry point, keep girls engaged longer, and compete in the
landscape

42.     All of this information was actually known by Epoch as of at least August 2017.

43.     Following the report, Epoch actively initiated a campaign that mirrored the findings

of the report and began marketing the Calico Critters Flocked Toys to girls under the age of three.

**D. Target Intentionally Marketed the Calico Critters Flocked Toys to Children Under**
   **Three Years of Age.**

44.     At all times relevant to this complaint, Target owned and operated over 300 store

locations in California. Among the stores owned and operated by Target is the location in Dublin,

California, where Plaintiff Santos purchased Calico Critters Flocked Toys (the "subject store").

45.     Target controls the presentation of merchandise in each of its stores, including the

subject store, requiring its employees to place its products in conformity with a series of

presentation, signage and spacing standards (hereinafter the "presentation standards") researched

and written by Target and communicated to its employees.

46.     Target's presentation standards are part of a researched marketing effort, specifically

targeting young children and babies, with the purpose and design to lure them into buying certain

products.

47.     As part of its marketing efforts, implemented through its presentation standards,

Target requires its stores to place Calico Critters Flocked Toys at the face and eye level of children

under the age of three.

1      48.   Target's aim is to increase the sales volume of these products to families, by enticing

2  young children to see and access these products.

3      49.   Target's presentation standards has induced consumers into purchasing Calico

4  Critters Flocked Toys for children under the age of three.

5  **E. History of Choking Events Caused by the Calico Critters Flocked Toys.**

6      50.   The Calico Critters Flocked Toys have been identified as dangerous choking hazards

7  by a watchdog group—the U.S. Public Interest Research Group—that seeks the recall of these toys

8  by the CPSC.[2]

9      51.   In April 2013, 22-month-old James Rencher swallowed and choked on a miniature

10  doll pacifier at his home in Farmington, Utah. Although the doctors were able to remove the toy

11  from his windpipe, he suffered brain trauma. The pacifier was part of a Calico Critters toy set.

12      52.   In May 2018, two-year-ten-month-old Dakotah Dedios swallowed and chocked on

13  another pacifier toy from the Calico Critters Yellow Labrador Twins set, resulting in her death.

14      53.   James's injury and Dakotah's death were all the result of the Calico Critters Flocked

15  Toys and Defendants' unlawful conduct of putting a banned hazardous substance on the market.

16      54.   The Calico Critters Flocked Toys were recently identified as one of the "Ten Worst

17  Toys" by World Against Toys Causing Harm, Inc. According to the press release, "This set of cute

18  'critters' is labeled for ages '3+' on the throw-away packaging, however 'flocked animals',

19  regardless of labels, are appealing to oral-age children, as recognized by the industry small parts

20  regulation. The Calico Critters collection includes small parts, such as a pacifier, with the potential

21  for choking injuries."[3]

22  **F. Plaintiffs' Purchase of Calico Critters Flocked Toys.**

23      55.   Plaintiff Jackson-Jones purchased the following Calico Critters Flocked Toys for her

24  granddaughter on Amazon.com:

25

26

27  [2] SANTA FE NEW MEXICAN, Nov. 27, 2020, http://www.santafenewmexican.com/news/local_news/toy-linked-to-new-mexico-child-s-deathtops-watchlist/article_6cb49678-2e96-11eb-8fe3-6ffdaf34150d.html.

28  [3] *W.A.T.C.H. Reveals Its 2020 Nominees For The "10 Worst Toys" This Holiday Season* (Nov. 2020) (available at https://toysafety.org/wp-content/uploads/2020/11/2020-Ten-Worst-Toys-With-Photos.pdf)

a) Calico Critters Baby Airplane Ride, Dollhouse Playset with Maple Cat Figure Included (purchased June 11, 2021);

b) Calico Critters Sunshine Nursery Bus for Dolls (purchased June 6, 2021);

c) Calico Critters Baby Ferris Wheel, Dollhouse Playset with Toy Poodle Figure Included (purchased June 4, 2021);

d) Calico Critters Town Chocolate Lounge (purchased May 25, 2021);

e) Calico Critters, Doll House Furniture and Decor, Laundry & Vacuum Cleaner (purchased May 25, 2021);

f) Calico Critters Dress Up Set (Lavender & Aqua) (purchased May 25, 2021);

g) Calico Critters Town Girl Series - Silk Cat (purchased May 25, 2021); and

h) Calico Critters Town Tea and Treats Set (purchased May 22, 2021).

56. The Calico Critters Flocked Toys purchased by Plaintiff Jackson-Jones were and are banned hazardous substances, which Defendants unlawfully introduced and/or delivered for introduction into interstate commerce, in violation of 15 U.S.C. § 1263(a).

57. Had Plaintiff Jackson-Jones known these Calico Critters Flocked Toys were banned hazardous substances, she would not have purchased them.

58. Plaintiff Jackson-Jones has suffered an injury in fact and has lost money as a result of Defendant's unlawful sale of the Calico Critters Flocked Toys.

59. Plaintiff Santos purchased the following Calico Critters Flocked Toys for her two grandchildren, who were under the age of three at the time of purchase, from a Target store in Dublin, California:

a) Calico Critters Tuxedo Cat Family Set (purchased in November 2021);

b) Calico Critters Persian Cat Triplets (purchased in November 2021); and

c) Calico Critters Persian Cat Family (purchased in November 2021).

60. The Calico Critters Flocked Toys purchased by Plaintiff Santos were and are banned hazardous substances, which Defendants unlawfully introduced and/or delivered for introduction into interstate commerce, in violation of 15 U.S.C. § 1263(a).

1    61.   Had Plaintiff Santos known these Calico Critters Flocked Toys were banned

2   hazardous substances, she would not have purchased them.

3    62.   Plaintiff Santos has suffered an injury in fact and has lost money as a result of

4   Defendant's unlawful sale of the Calico Critters Flocked Toys.

5    63.   Defendants continue to sell Calico Critters Flocked Toys, which pose an ongoing risk

6   to children under the age of three, and Plaintiffs' grandchildren may be exposed to the products in

7   the future. Thus, injunctive relief enjoining Defendants from selling Calico Critters Flocked Toys

8   is appropriate.

9                              **CLASS ALLEGATIONS**

10    64.   Plaintiffs re-allege and incorporate by reference each and every allegation contained

11   in the preceding paragraphs as though fully set forth.

12    65.   Plaintiffs bring this action on behalf of themselves and all other similarly-situated

13   persons as a class action pursuant to Code of Civil Procedure section 382.

14    66.   Plaintiffs seek to represent a class composed of and defined as follows (the "Class"):

15
16   **All persons in the State of California who purchased at least one Calico Critters**

     **Flocked Toys Product, for personal use and not for re-sale, since January 30, 2019.**
17
18    67.   Plaintiffs reserve the right to modify or refine the Class definition based upon

    discovery of new information or in order to accommodate any concerns of the Court.
19
20    68.   Specifically excluded from the proposed Class are Defendants, their officers,

    directors, agents, trustees, parents, children, corporations, trusts, representatives, employees,
21
    successors, assigns, or other persons or entities related to or affiliated with Defendants and/or their
22
    officers and/or directors, or any of them. Also excluded from the proposed Class are the Court, the
23
    Court's immediate family and Court staff.
24
25    69.   **Ascertainable Class:** The members of the Class are readily ascertainable. The Class

    definition identifies a group of unnamed plaintiffs by describing a set of common characteristics
26
    sufficient to allow a member of that group to identify himself or herself as having a right to recover
27
    based on the description. Other than by direct notice, alternatively proper and sufficient notice of
28

1    this action may be provided to Class members through notice published in newspapers or other

2    publications.

3        70.    **Numerosity:** The proposed Class is so numerous that joinder of all members would

4    be impracticable. The precise number of Class members is unknown at this time but can be readily

5    determined from public records and Defendants' records. Plaintiffs reasonably estimate that the

6    Class is likely to include over a thousand members.

7        71.    **Commonality and Predominance:** A well-defined community of interest in the

8    questions of law or fact involving and affecting all members of the Class exists, and common

9    questions of law or fact are substantially similar and predominate over questions that may affect

10   only individual Class members. The questions of law and fact common to Plaintiffs and the Class

11   include, among others, the following:

    a)  Whether the Calico Critters Flocked Toys are statutorily banned hazardous
        substances;

    b)  Whether Defendants violated the FHSA by introducing and/or delivering for
        introduction banned hazardous substances into interstate commerce;

    c)  Whether Defendants' conduct caused Plaintiffs and the Class to suffer economic
        harm;

    d)  Whether Defendants violated California Business and Professions Code section
        17200, *et seq.*;

    e)  Whether Defendants were unjustly enriched by their sale of the Calico Critters
        Flocked Toys;

    f)  Whether Plaintiffs and the Class are entitled to injunctive relief;

    g)  Whether Plaintiffs and the Class are entitled to restitution and if so, the appropriate
        measure; and,

    h)  Whether Plaintiffs and the Class are entitled to declaratory and/or other equitable
        relief.

72.   **Typicality:** Plaintiffs are members of the Class they seek to represent. Plaintiffs' claims are typical of the Class members' claims because they all were injured as a result of Defendants' conduct.

73.   **Adequacy of Representation:** Plaintiffs are adequate representatives of the Class they seek to represent and will fairly and adequately protect the interests of the Class. Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel, experienced in litigation of this nature, to represent them and the Class. There are no conflicts between Plaintiffs and the unnamed class members. Plaintiffs anticipate no difficulty in the management of this litigation as a class action.

74.   To prosecute this case, Plaintiffs have chosen the undersigned counsel, which is very experienced in class action litigation and has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

75.   **Superiority.** A class action is superior to individual actions in part because of the non-exhaustive factors listed below:

  a) Joinder of all class members would create extreme hardship and inconvenience for class members as they reside throughout the state;

  b) Individual claims by class members are impractical because the costs to pursue individual claims may exceed the value of what any one class member has at stake. As a result, individual class members may have no interest in prosecuting and controlling separate actions;

  c) There are no known individual class members who are interested in individually controlling the prosecution of separate actions;

  d) The interests of justice will be well served by resolving the common disputes of potential class members in one forum;

  e) Individual suits would not be cost effective or economically maintainable as individual actions; and

  f) This action is manageable as a class action.

76.    The Class is not so large that it would be unmanageable, and no difficulties are foreseen providing notice to individual claimants. Class members can be readily identified using records and information kept by Defendants in the usual course of business and within their control.

77.    **Final Declaratory or Injunctive Relief.** Plaintiffs also satisfy the requirements for maintaining a class seeking declaratory and/or injunctive relief. Defendants have acted or refused to act on grounds that apply generally to the proposed Class, making final declaratory or injunctive relief appropriate with respect to the proposed Class as a whole.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

**Violations of the Unfair Competition Law – Unlawful Prong**

**California Bus. and Prof. Code § 17200, *et seq.***

**(On Behalf of the Class)**

78.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs as if fully set forth herein.

79.    Plaintiffs bring this claim under the 'unlawful' prong of the UCL, on behalf of themselves and the Class, who were subject to Defendants' above-described unlawful conduct.

80.    Defendants have violated and continues to violate the FHSA by introducing and/or delivering for introduction banned hazardous substances into interstate commerce. *See* 15 U.S.C. § 1263(a). The Calico Critters Flocked Toys are banned hazardous substances under Section 15(a)(1) of the CPSA because they are intended for use by children under 3 years of age and pose a choking, aspiration, or ingestion hazard because of their small parts.

81.    Defendants' violations of the FHSA and the CLRA constitute predicate acts which violate the UCL's 'unlawful' prong.

82.    Plaintiffs have standing to pursue this claim as Plaintiffs have suffered injury in fact and have lost money or property as a result of Defendant's actions as set forth herein. Specifically, prior to filing this action, Plaintiffs purchased the Calico Critters Flocked Toys for their own personal use. In so doing, they were unaware that the Calico Critters Flocked Toys were banned

17

1  hazardous substances. Plaintiffs were harmed by Defendants' conduct because they would not have

2  purchased the Calico Critters Flocked Toys had they known they were banned hazardous

3  substances.

4      83.    Pursuant to section 17203 of the UCL, Plaintiffs and the Class seek restitution and an

5  order of this Court enjoining Defendants from engaging in the unlawful business practices alleged

6  herein in connection with the sale of the Calico Critters Flocked Toys.

7      84.    Specifically, Plaintiffs seek injunctive relief compelling Defendants to (1) recall the

8  Calico Critters Flocked Toys currently in distribution and (2) permanently refrain from selling

9  Calico Critters Flocked Toys in the future that pose a choking, aspiration, or ingestion hazard and

10  are intended for use by children under 3 years of age.

11      85.    Plaintiffs and the Class have no adequate remedy at law.

12  **SECOND CAUSE OF ACTION**

13  **Violations of the Unfair Competition Law – Unfair Prong**

14  **California Bus. and Prof. Code § 17200, *et seq.***

15  **(On Behalf of the Class)**

16      86.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs as if fully

17  set forth herein.

18      87.    Plaintiffs bring this claim under the 'unfair' prong of the UCL, on behalf of

19  themselves and the Class, who were subject to Defendants' above-described unfair conduct.

20      88.    As alleged hereinabove, Plaintiffs have standing to pursue this claim as Plaintiffs have

21  suffered injury in fact and have lost money or property as a result of Defendants' actions as set forth

22  herein. Specifically, prior to filing this action, Plaintiffs purchased the Calico Critters Flocked Toys

23  for their own personal use. In so doing, they were unaware that the Calico Critters Flocked Toys

24  were banned hazardous substances.

25      89.    Defendants' business practices, as alleged herein, are unfair because their conduct in

26  selling banned hazardous substances is immoral, unethical, oppressive, unscrupulous or

27  substantially injurious to consumers. The gravity of the harm to consumers is not outweighed by the

28  utility of Defendants' conduct.

90.   Defendants' business practices are also unfair because they undermine public policy, which is tethered to specific statutory provisions, including the CPSA and the FHSA.

91.   Lastly, Defendants' business practices are unfair because: (1) the injury to the consumer is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition; and (3) consumers could not reasonably have avoided the injury because they did not know the Calico Critters Flocked Toys were banned hazardous substances.

92.   There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described above.

93.   Defendants' wrongful business practices constituted, and constitute, a continuing course of conduct of unfair competition since Defendants are continuing to sell the Calico Critters Flocked Toys.

94.   Pursuant to section 17203 of the UCL, Plaintiffs and the Class seek restitution and an order of this Court enjoining Defendants from engaging in the unfair business practices alleged herein in connection with the sale of the Calico Critters Flocked Toys.

95.   Specifically, Plaintiffs seek injunctive relief compelling Defendants to (1) recall the Calico Critters Flocked Toys currently in distribution and (2) permanently refrain from selling Calico Critters Flocked Toys in the future that pose a choking, aspiration, or ingestion hazard and are intended for use by children under 3 years of age.

96.   Plaintiffs and the Class have no adequate remedy at law.

### THIRD CAUSE OF ACTION

### Unjust Enrichment

### (On Behalf of the Class)

97.   Plaintiffs re-allege and incorporate by reference the preceding paragraphs as if fully set forth herein.

98.   Defendants should have never sold the Calico Critters Flocked Toys (and were actually legally precluded therefrom) because they are banned hazardous substances under Section 15(a)(1) of CPSA because they are intended for use by children under 3 years of age and pose a choking, aspiration, or ingestion hazard because of their small parts.

19

**CLASS ACTION COMPLAINT**

99. As a result of Defendants' selling the Calico Critters Flocked Toys, Defendants received a benefit which was conferred upon them by Plaintiffs and the Class (and/or at their expense), and it is unjust for Defendants to retain that benefit.

100. Under the circumstances, it is against equity and good conscience to permit Defendants to retain the ill-gotten benefits that it received from Plaintiffs and Class members.

101. As a direct and proximate result of Defendants' actions, Defendants have been unjustly enriched. Plaintiffs and Class members have a right to restitution in an amount to be proven at trial.

102. Plaintiffs and the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of the members of the Class defined herein, pray for judgment and relief on all Causes of Action as follows:

A.   An order certifying that the action may be maintained as a Class Action;

B.   An order enjoining Defendants from pursuing the policies, acts, and practices complained of herein;

C.   Pre-judgment interest from the date of filing this suit;

D.   Restitution;

E.   Reasonable attorneys' fees under Cal. Civ. Proc. Code § 1021.5;

F.   Costs of this suit; and

G.   Such other and further relief as the Court may deem necessary or appropriate.

## JURY DEMAND

Plaintiffs and the Class by counsel hereby request a trial by jury as to all issues so triable.

1    January 30, 2023                          Respectfully submitted,

2

3                                              Gillian L. Wade
                                               Sara D. Avila
4                                              Marc A. Castaneda
                                               **MILSTEIN JACKSON FAIRCHILD & WADE,**
5                                              **LLP**

6
                                               *Counsel for Plaintiffs and the Proposed Class*
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

21

**CLASS ACTION COMPLAINT**

2019-GEN-014-00

**FILED**
Superior Court of California
County of Los Angeles

**MAY 03 2019**

Sherri R. Carter, Executive Officer/Clerk
By _____, Deputy
Rizalinda Minn

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

IN RE LOS ANGELES SUPERIOR COURT )    FIRST AMENDED GENERAL ORDER
— MANDATORY ELECTRONIC FILING )
FOR CIVIL )
)
)
)

On December 3, 2018, the Los Angeles County Superior Court mandated electronic filing of all documents in Limited Civil cases by litigants represented by attorneys. On January 2, 2019, the Los Angeles County Superior Court mandated electronic filing of all documents filed in Non-Complex Unlimited Civil cases by litigants represented by attorneys. (California Rules of Court, rule 2.253(b).) All electronically filed documents in Limited and Non-Complex Unlimited cases are subject to the following:

1) DEFINITIONS

   a) **"Bookmark"** A bookmark is a PDF document navigational tool that allows the reader to quickly locate and navigate to a designated point of interest within a document.

   b) **"Efiling Portal"** The official court website includes a webpage, referred to as the efiling portal, that gives litigants access to the approved Electronic Filing Service Providers.

   c) **"Electronic Envelope"** A transaction through the electronic service provider for submission of documents to the Court for processing which may contain one or more PDF documents attached.

   d) **"Electronic Filing"** Electronic Filing (eFiling) is the electronic transmission to a Court of a document in electronic form. (California Rules of Court, rule 2.250(b)(7).)

---

FIRST AMENDED GENERAL ORDER RE MANDATORY ELECTRONIC FILING FOR CIVIL

2019-GEN-014-00

e) **"Electronic Filing Service Provider"**  An Electronic Filing Service Provider (EFSP) is a person or entity that receives an electronic filing from a party for retransmission to the Court. In the submission of filings, the EFSP does so on behalf of the electronic filer and not as an agent of the Court.  (California Rules of Court, rule 2.250(b)(8).)

f) **"Electronic Signature"**  For purposes of these local rules and in conformity with Code of Civil Procedure section 17, subdivision (b)(3), section 34, and section 1010.6, subdivision (b)(2), Government Code section 68150, subdivision (g), and California Rules of Court, rule 2.257, the term "Electronic Signature" is generally defined as an electronic sound, symbol, or process attached to or logically associated with an electronic record and executed or adopted by a person with the intent to sign the electronic record.

g) **"Hyperlink"**  An electronic link providing direct access from one distinctively marked place in a hypertext or hypermedia document to another in the same or different document.

h) **"Portable Document Format"**  A digital document format that preserves all fonts, formatting, colors and graphics of the original source document, regardless of the application platform used.

2) MANDATORY ELECTRONIC FILING

a) Trial Court Records

Pursuant to Government Code section 68150, trial court records may be created, maintained, and preserved in electronic format.  Any document that the Court receives electronically must be clerically processed and must satisfy all legal filing requirements in order to be filed as an official court record (California Rules of Court, rules 2.100, et seq. and 2.253(b)(6)).

b) Represented Litigants

Pursuant to California Rules of Court, rule 2.253(b), represented litigants are required to electronically file documents with the Court through an approved EFSP.

c) Public Notice

The Court has issued a Public Notice with effective dates the Court required parties to electronically file documents through one or more approved EFSPs.  Public Notices containing effective dates and the list of EFSPs are available on the Court's website, at www.lacourt.org.

2019-GEN-014-00

d) Documents in Related Cases

Documents in related cases must be electronically filed in the eFiling portal for that case type if electronic filing has been implemented in that case type, regardless of whether the case has been related to a Civil case.

3) EXEMPT LITIGANTS

a) Pursuant to California Rules of Court, rule 2.253(b)(2), self-represented litigants are exempt from mandatory electronic filing requirements.

b) Pursuant to Code of Civil Procedure section 1010.6, subdivision (d)(3) and California Rules of Court, rule 2.253(b)(4), any party may make application to the Court requesting to be excused from filing documents electronically and be permitted to file documents by conventional means if the party shows undue hardship or significant prejudice.

4) EXEMPT FILINGS

a) The following documents shall not be filed electronically:

   i) Peremptory Challenges or Challenges for Cause of a Judicial Officer pursuant to Code of Civil Procedure sections 170.6 or 170.3;

   ii) Bonds/Undertaking documents;

   iii) Trial and Evidentiary Hearing Exhibits

   iv) Any ex parte application that is filed concurrently with a new complaint including those that will be handled by a Writs and Receivers department in the Mosk courthouse; and

   v) Documents submitted conditionally under seal. The actual motion or application shall be electronically filed. A courtesy copy of the electronically filed motion or application to submit documents conditionally under seal must be provided with the documents submitted conditionally under seal.

b) Lodgments

Documents attached to a Notice of Lodgment shall be lodged and/or served conventionally in paper form. The actual document entitled, "Notice of Lodgment," shall be filed electronically.

//

//

2019-GEN-014-00

5) ELECTRONIC FILING SYSTEM WORKING PROCEDURES

Electronic filing service providers must obtain and manage registration information for persons and entities electronically filing with the court.

6) TECHNICAL REQUIREMENTS

   a) Electronic documents must be electronically filed in PDF, text searchable format **when** technologically feasible without impairment of the document's image.

   b) The table of contents for any filing must be bookmarked.

   c) Electronic documents, including but not limited to, declarations, proofs of service, and exhibits, must be bookmarked within the document pursuant to California Rules of Court, rule 3.1110(f)(4). Electronic bookmarks must include links to the first page of each bookmarked item (e.g. exhibits, declarations, deposition excerpts) and with bookmark titles that identify the bookedmarked item and briefly describe the item.

   d) Attachments to primary documents must be bookmarked. Examples include, but are not limited to, the following:

      i)   Depositions;

      ii)  Declarations;

      iii) Exhibits (including exhibits to declarations);

      iv)  Transcripts (including excerpts within transcripts);

      v)   Points and Authorities;

      vi)  Citations; and

      vii) Supporting Briefs.

   e) Use of hyperlinks within documents (including attachments and exhibits) is strongly encouraged.

   f) Accompanying Documents

      Each document acompanying a single pleading must be electronically filed as a **separate** digital PDF document.

   g) Multiple Documents

      Multiple documents relating to one case can be uploaded in one envelope transaction.

2019-GEN-014-00

h) Writs and Abstracts

Writs and Abstracts must be submitted as a separate electronic envelope.

i) Sealed Documents

If and when a judicial officer orders documents to be filed under seal, those documents must be filed electronically (unless exempted under paragraph 4); the burden of accurately designating the documents as sealed at the time of electronic submission is the submitting party's responsibility.

j) Redaction

Pursuant to California Rules of Court, rule 1.201, it is the submitting party's responsibility to redact confidential information (such as using initials for names of minors, using the last four digits of a social security number, and using the year for date of birth) so that the information shall not be publicly displayed.

7) ELECTRONIC FILING SCHEDULE

a) Filed Date

   i) Any document received electronically by the court between 12:00 am and 11:59:59 pm shall be deemed to have been effectively filed on that court day if accepted for filing. Any document received electronically on a non-court day, is deemed to have been effectively filed on the next court day if accepted.    (California Rules of Court, rule 2.253(b)(6); Code Civ. Proc. § 1010.6(b)(3).)

   ii) Notwithstanding any other provision of this order, if a digital document is not filed in due course because of:  (1) an interruption in service; (2) a transmission error that is not the fault of the transmitter; or (3) a processing failure that occurs after receipt, the Court may order, either on its own motion or by noticed motion submitted with a declaration for Court consideration, that the document be deemed filed and/or that the document's filing date conform to the attempted transmission date.

8) EX PARTE APPLICATIONS

a) Ex parte applications and all documents in support thereof must be electronically filed no later than 10:00 a.m. the court day before the ex parte hearing.

b) Any written opposition to an ex parte application must be electronically filed by 8:30 a.m. the day of the ex parte hearing. A printed courtesy copy of any opposition to an ex parte application must be provided to the court the day of the ex parte hearing.

9) PRINTED COURTESY COPIES

   a) For any filing electronically filed two or fewer days before the hearing, a courtesy copy must be delivered to the courtroom by 4:30 p.m. the same business day the document is efiled. If the efiling is submitted after 4:30 p.m., the courtesy copy must be delivered to the courtroom by 10:00 a.m. the next business day.

   b) Regardless of the time of electronic filing, a printed courtesy copy (along with proof of electronic submission) is required for the following documents:

      i) Any printed document required pursuant to a Standing or General Order;

      ii) Pleadings and motions (including attachments such as declarations and exhibits) of 26 pages or more;

      iii) Pleadings and motions that include points and authorities;

      iv) Demurrers;

      v) Anti-SLAPP filings, pursuant to Code of Civil Procedure section 425.16;

      vi) Motions for Summary Judgment/Adjudication; and

      vii) Motions to Compel Further Discovery.

   c) Nothing in this General Order precludes a Judicial Officer from requesting a courtesy copy of additional documents. Courtroom specific courtesy copy guidelines can be found at www.lacourt.org on the Civil webpage under "Courtroom Information."

10) WAIVER OF FEES AND COSTS FOR ELECTRONICALLY FILED DOCUMENTS

   a) Fees and costs associated with electronic filing must be waived for any litigant who has received a fee waiver. (California Rules of Court, rules 2.253(b)(), 2.258(b), Code Civ. Proc. § 1010.6(d)(2).)

   b) Fee waiver applications for waiver of court fees and costs pursuant to Code of Civil Procedure section 1010.6, subdivision (b)(6), and California Rules of Court, rule 2.252(f), may be electronically filed in any authorized action or proceeding.

2019-GEN-014-00

1   11) SIGNATURES ON ELECTRONIC FILING

2      For purposes of this General Order, all electronic filings must be in compliance with California

3      Rules of Court, rule 2.257. This General Order applies to documents filed within the Civil

4      Division of the Los Angeles County Superior Court.

5

6      This First Amended General Order supersedes any previous order related to electronic filing,

7   and is effective immediately, and is to remain in effect until otherwise ordered by the Civil

8   Supervising Judge and/or Presiding Judge.

9

10   DATED: May 3, 2019



KEVIN C. BRAZILE
Presiding Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

7

Electronically FILED by Superior Court of California, County of Los Angeles on 01/30/2023 04:46 PM David W. Slayton, Executive Officer/Clerk of Court, by G. Carini,Deputy Clerk
23STCV01931

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
EPOCH EVERLASTING PLAY, LLC, a Delaware limited liability company, TARGET
CORPORATION, a Minnesota corporation, and (see Attachment to Summons)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
WILLIENE JACKSON-JONES, individually and on behalf of all others situated, KAREN SANTOS,
individually and on behalf of all situated,

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* Stanley Mosk Courthouse 111 North Hill Street, Los Angeles, CA 90012 | CASE NUMBER: *(Número del Caso):* **23STCV01931** |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Gillian L. Wade, Milstein Jackson Fairchild & Wade, LLP, 10990 Wilshire Blvd., Ste. 800, Los Angeles, CA 90024, Tel.: (310) 396-9600

| DATE: 01/30/2023 *(Fecha)* | Clerk, by David W. Slayton, Executive Officer/Clerk of Court *(Secretario)* | G. Carini | , Deputy *(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Williene Jackson-Jones, et al. v. Epoch Everlasting Play, LLC, et al. | 23STCV01931 |

## INSTRUCTIONS FOR USE

➡ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
➡ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party)*:

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

AMAZON.COM SERVICES LLC, a Delaware corporation,

Page __1__ of __1__

Form Adopted by Rule 982(a)(9)(A)
Judicial Council of California
982(a)(9)(A) [New January 1, 1993]

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

American LegalNet, Inc.
www.USCourtForms.com

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association
Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:
E-MAIL ADDRESS (Optional):            FAX NO. (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – EARLY ORGANIZATIONAL MEETING | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following*:

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h.  Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i.  Whether the case is suitable for the Expedited Jury Trial procedures (see information at *www.lacourt.org* under "*Civil*" and then under "*General Information*").

2.  The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-
        (INSERT DATE)                                              (INSERT DATE)
complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lacourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3.  The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____        ➢ _____
    (TYPE OR PRINT NAME)                              (ATTORNEY FOR PLAINTIFF)
Date:

_____        ➢ _____
    (TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)
Date:

_____        ➢ _____
    (TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)
Date:

_____        ➢ _____
    (TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)
Date:

_____        ➢ _____
    (TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)
Date:

_____        ➢ _____
    (TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)
Date:

_____        ➢ _____
    (TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

---

LACIV 229 (Rev 02/15)        **STIPULATION – EARLY ORGANIZATIONAL MEETING**        Page 2 of 2
LASC Approved 04/11

| Print | Save |
|---|---|

Exhibit A  **SER-201**

Clear

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:        FAX NO. (Optional): | | |
| E-MAIL ADDRESS (Optional): | | |
| ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – DISCOVERY RESOLUTION** | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii. Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i. Also be filed on the approved form (copy attached);

      ii. Include a brief summary of why the requested relief should be denied;

LACIV 036 (new)
LASC Approved 04/11
For Optional Use

**STIPULATION – DISCOVERY RESOLUTION**

Page 1 of 3

Exhibit A  **SER-202**

**- 52 -**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

    iii.   Be filed within two (2) court days of receipt of the Request; and

    iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

  c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

  d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

  e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

LACIV 036 (new)
LASC Approved 04/11
For Optional Use

**STIPULATION – DISCOVERY RESOLUTION**

Page 2 of 3

Exhibit A  **SER-203**

- 53 -

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

## The following parties stipulate:

Date: _____

➤ _____
      (TYPE OR PRINT NAME)                    (ATTORNEY FOR PLAINTIFF)

Date: _____

➤ _____
      (TYPE OR PRINT NAME)                   (ATTORNEY FOR DEFENDANT)

Date: _____

➤ _____
      (TYPE OR PRINT NAME)                   (ATTORNEY FOR DEFENDANT)

Date: _____

➤ _____
      (TYPE OR PRINT NAME)                   (ATTORNEY FOR DEFENDANT)

Date: _____

➤ _____
      (TYPE OR PRINT NAME)              (ATTORNEY FOR _____)

Date: _____

➤ _____
      (TYPE OR PRINT NAME)              (ATTORNEY FOR _____)

Date: _____

➤ _____
      (TYPE OR PRINT NAME)              (ATTORNEY FOR _____)

| Print | Save | | Clear |
|---|---|---|---|

LACIV 036 (new)
LASC Approved 04/11
For Optional Use

**STIPULATION – DISCOVERY RESOLUTION**

Page 3 of 3

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: FAX NO. (Optional): E-MAIL ADDRESS (Optional): ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE** (pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:

   ☐ Request for Informal Discovery Conference
   ☐ Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. **For a Request for Informal Discovery Conference, briefly describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, briefly describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

|  |
|  |

LACIV 094 (new)
LASC Approved 04/11
For Optional Use

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

Print    Save    Clear

**Exhibit A SER-205**

- 55 -

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| | | |

TELEPHONE NO.:          FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

## The following parties stipulate:

Date: _____

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR PLAINTIFF)

Date: _____

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR _____ )

Date: _____

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR _____ )

Date: _____

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR _____ )

## THE COURT SO ORDERS.

Date: _____

_____
JUDICIAL OFFICER

| Print | Save | | Clear |
|---|---|---|---|

LACIV 075 (new)
LASC Approved 04/11

**STIPULATION AND ORDER – MOTIONS IN LIMINE**

Page 2 of 2

1

2

**FILED**

LOS ANGELES SUPERIOR COURT

3                MAY 1 1 2011

4        JOHN A. CLARKE, CLERK

5        BY NANCY NAVARRO, DEPUTY

6

7        **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8        **FOR THE COUNTY OF LOS ANGELES**

9

10   General Order Re                    )    ORDER PURSUANT TO CCP 1054(a),
     Use of Voluntary Efficient Litigation  )    EXTENDING TIME TO RESPOND BY
11   Stipulations                         )    30 DAYS WHEN PARTIES AGREE
                                          )    TO EARLY ORGANIZATIONAL
12                                        )    MEETING STIPULATION
                                          )
13   _____ )

14        Whereas the Los Angeles Superior Court and the Executive Committee of the

15   Litigation Section of the Los Angeles County Bar Association have cooperated in

16

17   drafting "Voluntary Efficient Litigation Stipulations" and in proposing the stipulations for

18   use in general jurisdiction civil litigation in Los Angeles County;

19        Whereas the Los Angeles County Bar Association Litigation Section; the Los

20   Angeles County Bar Association Labor and Employment Law Section; the Consumer

21   Attorneys Association of Los Angeles; the Association of Southern California Defense

22
23   Counsel; the Association of Business Trial Lawyers of Los Angeles; and the California

24   Employment Lawyers Association all "endorse the goal of promoting efficiency in

25   litigation, and ask that counsel consider using these stipulations as a voluntary way to

26   promote communications and procedures among counsel and with the court to fairly

27   resolve issues in their cases;"

28

-1-

ORDER PURSUANT TO CCP 1054(a)

**Exhibit A  SER-208**

Whereas the Early Organizational Meeting Stipulation is intended to encourage cooperation among the parties at an early stage in litigation in order to achieve litigation efficiencies;

Whereas it is intended that use of the Early Organizational Meeting Stipulation will promote economic case resolution and judicial efficiency;

Whereas, in order to promote a meaningful discussion of pleading issues at the Early Organizational Meeting and potentially to reduce the need for motions to challenge the pleadings, it is necessary to allow additional time to conduct the Early Organizational Meeting before the time to respond to a complaint or cross complaint has expired;

Whereas Code of Civil Procedure section 1054(a) allows a judge of the court in which an action is pending to extend for not more than 30 days the time to respond to a pleading "upon good cause shown";

Now, therefore, this Court hereby finds that there is good cause to extend for 30 days the time to respond to a complaint or to a cross complaint in any action in which the parties have entered into the Early Organizational Meeting Stipulation. This finding of good cause is based on the anticipated judicial efficiency and benefits of economic case resolution that the Early Organizational Meeting Stipulation is intended to promote.

IT IS HEREBY ORDERED that, in any case in which the parties have entered into an Early Organizational Meeting Stipulation, the time for a defending party to respond to a complaint or cross complaint shall be extended by the 30 days permitted

-2-

ORDER PURSUANT TO CCP 1054(a)

Exhibit A  SER-209

1  by Code of Civil Procedure section 1054(a) without further need of a specific court

2  order.

3

4  DATED: _May 11, 2011_              _Carolyn B. Kuhl_

5                                     Carolyn B. Kuhl, Supervising Judge of the
                                      Civil Departments, Los Angeles Superior Court
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER PURSUANT TO CCP 1054(a)

Exhibit A  **SER-210**



Hasler
02/26/2023
US POSTAGE
FIRST-CLASS MAIL
$010.92
ZIP 90067
011E12651043

CERTIFIED MAIL

    ┌
─  0000  0227  3270
    └
#16...

MILSTEIN
JACKSON
FAIRCHILD
& WADE

10990 Wilshire Boulevard
Eighth Floor
Los Angeles, CA 90024

Corporation Service Company
Registered Agent for Epoch Everlasting Play LLC
251 Little Falls Drive
Wilmington, DE 19808

**Exhibit A**
**- 61 -**

1  **ARNOLD & PORTER KAE SCHOLER LLP**
   JAMES F. SPEYER (Bar No. 133114)
2  james.speyer@arnoldporter.com
   777 South Figueroa Street, 44th Floor
3  Los Angeles, CA 90017-5844
   Telephone:   1 213.243.4000
4  Facsimile:   1 213.243.4199

5  IAN S. HOFFMAN (*pro hac vice forthcoming*)
   ian.hoffman@arnoldporter.com
6  601 Massachusetts Avenue, NW
   Washington, DC 20001-3743
7  Telephone:   1 202.942.6406
   Facsimile:   1 202.942.5999
8  ian.hoffman@arnoldporter.com

9  *Attorneys for Defendant*
   EPOCH EVERLASTING PLAY, LLC

10

11              UNITED STATES DISTRICT COURT

12              CENTRAL DISTRICT OF CALIFORNIA

13

14  WILLIENE JACKSON-JONES,            Case No.:
    individually and on behalf of all others
15  situated, KAREN SANTOS, individually    **NOTICE OF REMOVAL B**
    and on behalf of all others situated,   **DEFENDANT EPOCH**
16                                          **EVERLASTING PLA, LLC**
                        Plaintiffs,
17
           vs.
18
    EPOCH EVERLASTING PLAY, LLC, a
19  Delaware limited liability company,
    TARGET CORPORATION, a Minnesota
20  corporation, and AMAZON.COM
    SERVICES LLC, a Delaware corporation,
21
                        Defendants.
22

23

24

25

26

27

28

Pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, defendant Epoch Everlasting Play, LLC ("EEP") hereby gives notice of removal of the above-captioned action, entitled *Williene Jackson-Jones, et al. v. Epoch Everlasting Play, LLC, et al.*, No. 23STCV01931, from the Superior Court of California, Los Angeles, to the United States District Court for the Central District of California.  In support thereof, EEP states as follows:

## I.    BACKGROUND

1.    On January 30, 2023, this putative class action was filed in the Superior Court of the State of California, County of Los Angeles, by plaintiffs Williene Jackson-Jones and Karen Santos ("Plaintiffs") against EEP, Target Corporation, and Amazon.com Services LLC (collectively, "Defendants").

2.    The Complaint alleges three causes of action for: (1) Violations of the "unlawful" prong of the Unfair Competition Law, Cal. Bus. & Profs. Code §§ 17200 *et seq.*; (2) Violations of the "unfair" prong of the Unfair Competition Law, Cal. Bus. & Profs. Code §§ 17200 *et seq.*; and (3) Unjust Enrichment.

3.    Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of the pleadings and other papers filed in the state court and served on EEP are appended to this Notice of Removal.  A true and correct copy of all process, pleadings, and orders served on EEP as of the date of this Notice of Removal are attached hereto as **Exhibit A**.  A true and correct copy of the state court docket and all documents filed in the state court action (other than the Complaint) are attached hereto as **Exhibit B**.

4.    Promptly after filing this Notice of Removal, EEP will give written notice of the removal to Plaintiffs, as well as to the Clerk of the Superior Court of California, County of Los Angeles, as required by 28 U.S.C. § 1446(d).

## II.    TIMELINESS OF REMOVAL

5.    On March 6, 2023, EEP's agent for service of process received a copy of the Complaint and Summons.  Under 28 U.S.C. § 1446(b)(1), this Notice of Removal is timely if filed on or before April 5, 2023.

6.     The Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), eliminates the need for the removing party to obtain the consent of other defendants to remove. 28 U.S.C. § 1453(b).  Nevertheless, undersigned counsel for EEP has conferred with defendants Target Corporation and Amazon.com Services LLC, and both consent to this removal.

### III.     VENUE AND JURISDICTION

7.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 84(c)(3), 1391, 1441(a), 1446(a), and 1453(b) because the Superior Court of California, County of Los Angeles, where the Complaint was filed, is a state court within the Central District of California.

8.     This Court has subject matter jurisdiction under CAFA because, as discussed below, (1) there is minimal diversity of citizenship between the parties; (2) there are at least 100 putative class members; and, (3) the amount in controversy exceeds $5,000,000, exclusive of interest and costs.  28 U.S.C. § 1332(d).

### IV.     THIS COURT HAS SUBJECT MATTER JURISDICTION UNDER CAFA

9.     CAFA provides for broad federal jurisdiction with a strong preference that interstate class actions be heard in federal court.  *See Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1183 84 (9th Cir. 2015).  "Congress designed the terms of CAFA specifically to permit a defendant to remove certain class or mass actions into federal court . . . [and] intended CAFA to be interpreted expansively."  *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

10.    CAFA confers federal jurisdiction over class actions that "meet three requirements: there must be minimal diversity of citizenship between the parties; the proposed class must have at least 100 members; and the aggregated amount in controversy must equal or exceed . . . $5 million."  *Id.* at 1182 (citing 28 U.S.C. § 1332(d)).

11.    Evidentiary proof that these requirements are met need not be submitted with the notice of removal.  *Lopez v. YP Holdings, LLC*, No. CV188791MWFMAAX,

2019 WL 7905748, at *2 (C.D. Cal. Jan. 23, 2019) ("In a notice of removal, a defendant need only plausibly allege that these prerequisites are met."). The notice is sufficient if it constitutes a "short and plain statement of the grounds for removal." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553 (2014) (internal quotations omitted). As this Court has held, "[t]he 'short and plain statement' language from § 1446(a) applies to the entire notice of removal, and therefore would apply . . . to all CAFA allegations" in a notice of removal. *Roa v. TS Staffing Servs., Inc.*, No. 2:14-cv-08424-ODW (MRW), 2015 WL 300413, at *2 (C.D. Cal. Jan. 22, 2015).

**A. The Parties are Minimally Diverse**

12.   This action satisfies CAFA's minimal diversity requirement. Unlike traditional diversity jurisdiction, which requires complete diversity of citizenship between the parties, CAFA requires only minimal diversity. 28 U.S.C. § 1332(d)(2)(A). This requirement is met where any member of the putative class is a citizen of a state different from any defendant. *Id.*

13.   For purposes of diversity jurisdiction, "[a] natural person's citizenship is determined by their state of domicile, which is that individual's 'permanent home, where [they] reside[] with the intention to remain or to which [they] intend[] to return.'" *Montoya v. Ariba Inc.*, No. 822CV01861FWSJDE, 2023 WL 2368701, at *4 (C.D. Cal. Mar. 6, 2023) (quoting *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001)). Plaintiffs are both domiciled in and citizens of California. *See* Compl. ¶¶ 11 12.

14.   Further, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10); *see also id.* § 1332(c)(1) (a corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business").

15.   Here, EEP is organized under the laws of Delaware and has its principal place of business in Parsippany, New Jersey. Compl. ¶ 13.

16.   Because Plaintiffs are citizens of California and EEP is a citizen of Delaware and New Jersey, CAFA's minimal diversity requirement is satisfied.  *See* 28 U.S.C. § 1332(d)(2)(A).

**B. Plaintiffs' Proposed Class Includes at Least 100 Members**

17.   Plaintiffs "reasonably estimate that the [proposed] Class is likely to include over a thousand members."  Compl. ¶ 70.

18.   Accordingly, the proposed class includes at least 100 members, and CAFA's numerosity requirement is satisfied.  *See* 28 U.S.C. §§ 1332(d)(2)(A).

**C. The Amount in Controversy Exceeds  5,000,000**

19.   "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee*, 135 S. Ct. at 554; *see also id.* at 551 ("A statement 'short and plain' need not contain evidentiary submissions" in order "[t]o assert the amount in controversy adequately in a removal notice").   "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court."  *Id.* at 553.

20.   Under CAFA, jurisdiction exists when the alleged amount in controversy—calculated by aggregating the claims of all putative class members— exceeds $5,000,000, exclusive of interest and costs.  28 U.S.C. § 1332(d)(6).

21.   Here, Plaintiffs assert claims on behalf of a putative class of "[a]ll persons in the State of California who purchased at least one Calico Critters Flocked Toys Product, for personal use and not for re-sale, since January 30, 2019."  Compl. ¶ 66. Plaintiffs allege that they and the putative class members have "suffered an injury in fact and ha[ve] lost money as a result of Defendant[s'] unlawful sale of Calico Critters Flocked Toys."  *Id.* ¶¶ 58, 62.  Plaintiffs seek, among other things, "restitution" on behalf of the California class based on the products purchased during the putative class period (January 30, 2019 to present).  *Id.* ¶¶ 7, 83, 94, 101.  Plaintiffs also seek "reasonable attorney's fees."  *Id.* at Prayer for Relief.  EEP's total sales at wholesale

for all Calico Critters products sold in California during the putative class period exceed $17 million. Accordingly, CAFA's amount in controversy requirement is satisfied.

## V. RESERVATION OF RIGHTS

22. By filing this Notice of Removal, EEP does not waive any defense that may be available to it and reserves all such defenses. If any question arises as to the propriety of the removal to this Court, EEP requests the opportunity to present a brief and oral argument in support of its position that this case has been properly removed.

## CONCLUSION

23. WHEREFORE, having timely provided notice as required by law, EEP hereby removes the above-entitled action pending before the Superior Court of the State of California, County of Los Angeles to the United States District Court for the Central District of California.

Dated: April 5, 2023      ARNOLD & PORTER KAYE SCHOLER LLP


By: */s/ James F. Speyer*
James F. Speyer
Ian S. Hoffman

*Attorneys for Defendant*
EPOCH EVERLASTING PLAY, LLC