# 24-7157

---

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

EPOCH EVERLASTING PLAY, LLC and AMAZON.COM SERVICES LLC

*Defendants-Appellants.*

*Against*

WILLIENE JACKSON-JONES et al.,

*Plaintiff-Appellee,*

---

Appeal from the United States District Court
For the Central District of California
2:23-cv-02567-ODW
Hon. Otis D. Wright, II

---

**BRIEF OF PROPOSED *AMICI CURIAE* ANITA MEDAL, ESTHER YOO, GAYLE HAYES AND ANTOINETTE STANIEWICZ IN SUPPORT OF PLAINTIFF-APPELLEE AND IN SUPPORT OF AFFIRMANCE OF THE DECISION BELOW**

---

George F. Carpinello
Adam R. Shaw
BOIES SCHILLER FLEXNER LLP
30 South Pearl Street, 12th Floor
Albany, New York 12207
(518) 434-0600
gcarpinello@bsfllp.com
ashaw@bsfllp.com

Maia Kats
JUST FOOD LAW PLLC
5335 Wisconsin Avenue, NW, Ste. 440
Washington, DC 20015
(202) 243-7910
maiakats@justfoodlaw.com

Counsel for proposed *Amici Curiae*

March 14, 2025

## INTRODUCTION

*Amici curiae* are current and proposed plaintiffs in *Li v. Amazon.com Services, LLC*, No. 2:23-cv-01975-JHC, pending in the Western District of Washington. *Amici* have a direct interest in the outcome of this appeal, because they, like the plaintiff herein, have claims against Amazon relating to the sale on Amazon's website of banned and illegal products. Specifically, *Amici* allege in their complaint that Amazon introduces and sells in interstate commerce purported dietary supplements that are misbranded and illegal drugs. Amazon sells thousands of these banned products. As the Federal Trade Commission referenced in its Notice of Penalty to Amazon and others concerning their so-called supplement commerce, "[a]t best, many of these product claims are unreliable and waste tens of billions of consumer dollars a year, and, even worse, they can cause serious health problem requiring acute medical attention."[1] Like plaintiffs in the instant action, *Amici* bring claims against Amazon, *inter alia*, under the California Unfair Competition Remedies Act, Cal. Bus. & Prof. Code § 17200 et seq. ("UCL"). The district court in *Li v. Amazon.com Services, LLC*, 2:23-cv-01975-JHC, 2024 WL 4336432 (W.D.

---

[1] Statement of Commissioner Rebecca Kelly Slaughter Joined by Chair Lina Khan and Commissioner Alvaro M. Bedoya Regarding the Issuance of a Notice of Penalty Offenses on Substantiation of Product Claims, Federal Trade Commission, March 31, 2023.
https://www.ftc.gov/system/files/ftc_gov/pdf/rks_substantiation_pno_statement_lk_ab_final.pdf

Wash. Sept. 27, 2024), largely denied Amazon's motion to dismiss, upholding the viability of plaintiffs' claim under the UCL.

*Amici* believe that the Court would benefit from their argument with regard to California law on the question of whether plaintiffs are entitled to a full refund of the entire purchase price of a product that is banned from sale. Appellants argue that a full refund is not appropriate because there is a "residual value" to the illegal product—toys that violate the Federal Hazardous Substances Act ("FHSA") because they contain small parts which create a choking hazard in small children. Appellants make the incredible argument that there should not be a full refund because children enjoy using the product and therefore the product has value.

This argument is reminiscent of the famous Saturday Night Live skit, "Bag O' Glass" starring Dan Aykroyd and Candice Bergen, in which Mr. Aykroyd plays an unscrupulous salesperson trying to convince Ms. Bergen that obviously dangerous products, including a bag of glass, have value as toys because children find them to be fascinating and entertaining.[2]

As California courts have made clear, however, whether or not an unwitting consumer used a product that is banned because it is misbranded or inherently illegal, is not the salient query. A child will play with a toy, unaware of its dangers—

---

[2] Saturday Night Live, *Consumer Probe: Irwin Mainway - SNL*, YouTube (Dec. 4, 2018), https://www.youtube.com/watch?v=veMiNQifZcM

2

just as other consumers will unwittingly purchase and use banned products when they would not have purchased them had they known of their true nature. The proper query is whether an inherently illegal and banned product has monetary value. California courts presented with like contexts have uniformly held that they do not.

## ARGUMENT

### I. The Full Refund Damages Model Is Appropriate for Products Banned from Sale.

In the district court below, defendants argued that plaintiff could not meet Rule 23(b)(3)'s predominance requirement because her proposed restitution models could not reliably measure the monetary relief on a class-wide basis. The district court rejected this argument, finding that there was sufficient basis for a "Full Refund Method" as the plaintiff alleged that the products were "unlawful and unfair because they are banned hazardous substances. When a party sells products to consumers that are 'inherently unfair or illegal,' a full refund damages model is appropriate." *Jackson-Jones v. Epoch Everlasting Play, LLC*, No. 2:23-CV-02567-ODW (SKX), 2024 WL 4868263, at *5 (C.D. Cal. Sept. 5, 2024) (quoting *In re Juul Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*, 609 F. Supp. 3d 942, 976 (N.D. Cal. 2022) (citing *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th, 145, 157 (Ct. App. 2d Dist. 2010))). Added the court, "because Jackson-Jones alleges that Defendants sold banned hazardous substances in violation of the FHSA, Jackson-

3

Jones's Full Refund model is appropriate for measuring damages in a way that is consistent with her theory of liability, and supports certification." *Id*. In so holding, the court distinguished cases cited by Appellants in which courts "rejected a full refund model where plaintiffs had received some value or benefit from misbranded or misrepresented products." *Id.* The court found these cases to be inapposite because the products here are banned.

In their appellate brief, Appellants attempt to answer this argument by first stating that "awarding a full refund to a plaintiff who has benefited from the product would go beyond simply 'restoring' her to wholeness" and therefore would not be a "*restitutionary* award." Appellants' Br. at 30 (emphasis in original). Appellants then go on to assert that "plaintiff indisputably received benefits from the toys she bought. She testified that Calico Critters were her granddaughter's 'favorite toys,' and that her granddaughter played with them 'regularly' for years." *Id.* at 31. Conclude Appellants, "[i]n these circumstances, a full refund would make her more than whole—she would get all her money back *and* the benefit of the years-long use of the toys—putting her in a better position than she would have been in absent the alleged conduct." *Id.*

This amounts to the "Bag O' Glass" argument, *i.e.* that even a product banned because of its inherent danger to consumers does not justify a full refund because

4

children might have enjoyed playing with it. The argument is clearly contrary to California established law and, moreover, is anathema to prevailing public policy.

Where the purchased products are illegal, the full refund model is approved by the courts as the appropriate model of damages. Indeed, so too, where it is alleged that products, such as dietary supplements, are also fraudulent because they lack safety, efficacy, and/or are adulterated. This Court's decision in *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170 (9th Cir. 2019), *rev'd on other grounds*, 586 U.S. 188 (2019), is precisely on point. In *Lambert*, plaintiffs claimed that defendant's aphrodisiac product—Cobra Sexual Energy—was illegal because it made structure function claims on its labels, had not been through clinical testing or received FDA approval, and failed to carry the FDA disclaimer. *Id.*, 870 F.3d at 1174 (citing 21 U.S.C. § 343(r)(6)(C); 21 C.F.R. § 310.528(c); 21 C.F.R. § 310.528(b)). The trial court initially certified the class, but upon transfer, another court decertified it. *Id.* at 1174–75. On appeal, this Court reversed, finding that the lower court had abused its discretion because "Lambert presented evidence that the product at issue was valueless [illegal and fraudulent] and therefore amenable to full refund treatment." *Id.* at 1183; *see also id.* ("'Customers who purchased rhinestones sold as diamonds should have the opportunity to get all of their money back.'" (quoting *FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 606 (9th Cir. 1993)). *And see* the original district court opinion at *Ortega v. Natural Balance, Inc.*, 300 F.R.D. 422, 429–30 (C.D. Cal.

5

2014) (recognizing full refund model because plaintiffs assert product was valueless because it was inherently worthless and illegal).

The decision in *In re Steroid Hormone Product Cases* is also directly on point. In that case, the plaintiff brought an action under the UCL and the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq., against GNC for selling anabolic steroids, which cannot be sold without a prescription. *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th at 149. The lower court denied certification, finding that plaintiff could not show that most consumers would find the illegality of the products to be material to their purchasing decision. *Id.* The appeals court rejected this reasoning, holding, first, that plaintiff was entitled to prove that the misrepresentation at issue—that the steroid was legal—was material to the class. *Id.* at 156–57. Second, the court, applying an objective, reasonable person standard, concluded that any reasonable person would find it important to know that the product they were buying was illegal. *Id.* at 157. The court also distinguished the decision in *In re Vioxx Class Cases*, 180 Cal. App. 4th 116 (Ct. App. 2d Dist. 2009), where class certification was denied in part because of difficulty in determining the difference in value between what was sold and what was represented, explaining that:

> Unlike the allegations in *Vioxx*, where the plaintiffs put valuation at issue by alleging that due to the alleged misrepresentations they paid more for a medication than it was worth, in this case, Martinez does not

6

> put valuation at issue when he alleges that he bought a product that was illegal to sell or possess.

*Steroid Hormone Prod. Cases*, 181 Cal. App. 4th at 160–61.

*In re Juul*, in turn, relying on the *Steroid Hormone Product* cases, held that a full refund was appropriate for all sales of defendant's vaping devices sold to underage children. 609 F. Supp. 3d at 975–76. There was no "residual value" to vaping devices that are illegal to sell. *Id.* at 976. Appellants criticize *Juul*, saying that its finding of no value was "thinly supported," Appellants' Br. at 33, apparently based upon Appellants' conclusion that young people might enjoy using the vaping device, as undoubtedly many of them would. But the pleasure that a person might derive from an illegal product—no less when it is unwittingly used—has no value recognized by the law.

In contrast, the damages available to the adult class in *Juul* required an analysis of the difference in value between what was offered to users and what they received. 609 F. Supp. 3d at 985. That is because, for adult users, the vaping device was not illegal. Similarly, in *In re Tobacco Products II*, 240 Cal. App. 4th 779, 794 (Ct. App. 4th Dist. 2015), the court held that purchasers of Marlboro Light cigarettes were not entitled to a full refund despite the fact that the manufacturer had misrepresented that the light cigarettes had less tar and nicotine. There, the cigarettes had a residual value to its users and there was no claim that selling the cigarettes to adults was in any way illegal. *Id.* at 802. Moreover, as the court noted, plaintiffs did

7

not contest the court's conclusion that the cigarettes had value despite the manufacturer's misleading claim. *Id.* at 791, 802.

In *Franz v. Beiersdorf, Inc.*, 745 F.. App'x 47, 48 (9th Cir. 2018) (unpublished), this Court held that plaintiff had suffered injury in fact under California law because she alleged that, "she spent money on a product [a drug not authorized by the FDA] that should not have been on the market."

The decision in *Makaeff v. Trump University, LLC*, 309 F.R.D. 631 (S.D. Cal. 2015) is also instructive. In that case, individuals who had enrolled in Trump University claimed that they were defrauded because they were promised that they would learn Donald Trump's various techniques for selling real estate, and this claim was false. *Id.* at 634. In allowing plaintiffs to pursue a full refund damages model, the court carefully distinguished the cases such as those relied upon by Appellants here, where the product had an intrinsic value beyond the false nutritional claim made on its label. *Id.* at 638–39. For example, the court distinguished *In re POM Wonderful, LLC*, No. ML 10-02199 DDP RZX, 2014 WL 1225184 (C.D. Cal. Mar. 25, 2014), in which the plaintiffs claimed that POM misleadingly advertised that its juices had various scientifically proven health benefits. The court rejected a full refund model because the pomegranate juice being sold had inherent value, including hydration, vitamins, flavor, energy, or other things of value. *Id.*, 2014 WL 1225184 at *3 & n.2.

8

Similarly, the *Trump University* court distinguished *Werdebaugh v. Blue Diamond Growers*, No. 12-CV-2724-LHK, 2014 WL 2191901 (N.D. Cal. May 23, 2014), where plaintiffs alleged that almond milk was falsely advertised as containing no sugar and being all natural. Despite the arguable falsity of these claims, the court found that the plaintiffs received, in essence, what they were promised, that is, almond milk, and that the alleged imperfection in the milk did not render the milk worthless. *Id.*, 2014 WL 2191901, at *22. Concluded the *Trump University* court:

> The Court finds that the food misbranding cases are distinguishable. Food cases involve a tangible product obtained for sustenance…. Moreover, there is no question that food products have intrinsic value even when stripped of some advertised quality such as being "all natural." On the other hand, TU essentially marketed intellectual property based upon the singular experiences of Donald Trump. While the food products may have been missing a particular premium quality, Plaintiffs contend that TU was missing its reason for existing, i.e., Donald Trump's knowledge and experience.

309 F.R.D. at 639.

Similarly, the *Trump University* court distinguished *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 676–77, 694 (Ct. App. 2d Dist. 2006), where the court found that the plaintiffs who had bought tools falsely labeled as "Made in U.S.A." were not entitled to a full refund because, although they did not receive what they had bargained for, they nonetheless did receive usable tools.

Finally, the *Trump University* court expressly recognized the California cases holding that illegal products have no inherent value (citing in particular the *Steroid*

9

*Hormone Product Cases*). 309 F.R.D. at 639–40. The court nonetheless declined to specifically apply the *Steroid Cases* precedent to the case before it because it did not find that Trump University was operating illegally in California. *Id.* at 640. Presumably, the court would have upheld a full refund model if it found that it was illegal for Trump University to operate in the state.

There can be no residual value in a banned product,[3] and where there is no residual value, a full refund is appropriate. *Woodard v. Labrada*, No. EDCV16189JGBSPX, 2021 WL 4499184, at *38 (C.D. Cal. Aug. 31, 2021) (finding the full refund model appropriate where plaintiff alleges that the weight loss supplement is worthless and lacking in inherent value); *Mullins v. Premier Nutr. Corp.*, 178 F. Supp. 3d 867, 898–99 (N.D. Cal. 2016) (holding that the plaintiff can pursue a full refund model because it claims that the product is worthless in relieving joint pain, and distinguishing *POM* and *Tobacco II*)[4]; *Allen v. Hylands*, 300 F.R.D. 643, 671 and n.25 (C.D. Cal. 2014) (allowing plaintiffs to pursue full refund model because the homeopathic products were claimed to be entirely worthless because

---

[3] The one aberrant exception appears to be *Corbett v. PharaCare U.S., Inc.*, No. 21CV137-JES (AHG), 2024 WL 1356220, at *24–25 (S.D. Cal. Mar. 29, 2024), in which the court acknowledged the prevailing California case law that illegal drugs have no residual value, but declined to follow established law because it uniquely found the legal violations to be "technical."

[4] *Mullins* also distinguished *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 532 (N.D. Cal. 2012), where the court also said that a full refund was not appropriate because the iced tea, although allegedly not "all natural," nonetheless has value as ordinary iced tea.

10

they were ineffective, distinguishing food products that have "some *inherent nutritional value*") (emphasis original); *Farar v. Bayer AG*, No. 14-CV-04601-WHO, 2017 WL 5952876, at *10 (N.D. Cal. Nov. 15, 2017) (allowing plaintiff to pursue a full refund model where plaintiff claims that vitamins are ineffective in providing the benefit that the advertisements claim).

California law is consistent with case law in other jurisdictions. For example, in *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1080 (11th Cir. 2019), plaintiffs brought a class action against the manufacturer of an illegal supplement. The trial court dismissed the case, finding that plaintiffs suffered no injury because they got what they paid for—legal or not—and failed to allege any ill effects from taking the product. *Id.* at 1083. The Eleventh Circuit reversed, finding that "plaintiffs plausibly alleged that they suffered an economic loss when they purchased supplements that were worthless because the FDA prohibited sale of the supplements." *Id.* at 1080. In so holding, the court relied in part on this Court's decision in *Franz*. *Id.* at 1086. Similarly, in *In re Valsartan MDL*, 19-md-2875 (RBK/SAK), 2024 WL 7767571 at *5 (D.N.J. Sept. 26, 2024), the court held that plaintiffs could proceed with a class action based on a full refund model because drugs at issue did not receive FDA approval and therefore should not have been sold: "the supply side curve of the contaminated drugs the FDA never would have allowed for sale is zero." Finally, in *Rikos v. The Proctor & Gamble Co.*, 799 F.3d 497 (6th

11

Cir. 2015), the court approved a full refund model for a claim that a probiotic supplement was worthless because it did not work, even if there were "satisfied customers."

In sum, Appellants' argument that the product at issue here has residual value because children enjoy playing with it, despite the fact that it is banned by federal law as unsafe, has no support in California case law.

## CONCLUSION

For the foregoing reasons, *amici curiae* respectfully urge the Court to reject Appellants' argument that a full refund is not an appropriate damage model in this case because children enjoy using the banned product.

Dated: March 14, 2025    Respectfully submitted,

/s/ George F. Carpinello
George F. Carpinello
Adam R. Shaw
BOIES SCHILLER FLEXNER LLP
30 South Pearl Street, 12th Floor
Albany, New York 12207
(518) 434-0600
gcarpinello@bsfllp.com
ashaw@bsfllp.com

Maia Kats
JUST FOOD LAW PLLC
5335 Wisconsin Avenue, NW, Ste. 440
Washington, DC 20015
(202) 243-7910
maiakats@justfoodlaw.com

Counsel for proposed *Amici Curiae*

12

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 29(a)(4) and 32(g)(1) and Circuit Rule 32-1(e), I hereby certify that the foregoing document complies with the type-volume limitations of Federal Rule of Appellate Procedure 29(a)(5) and Circuit Rule 32-1(a). According to the word-count feature of Microsoft Word, the word-processing system used to prepare the document, the document contains 2,887 words, excluding the items that may be excluded under Federal Rule of Appellate Procedure 32(f).

I further certify that the foregoing brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in 14-point Times New Roman font, a proportionally spaced typeface.

Dated: March 14, 2025                                        /s/ George F. Carpinello

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** _____

I am the attorney or self-represented party.

**This brief contains** _____ **words,** including _____ words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

☐ complies with the word limit of Cir. R. 32-1.

☐ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

☐ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

☐ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

☐ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  ☐ it is a joint brief submitted by separately represented parties.
  ☐ a party or parties are filing a single brief in response to multiple briefs.
  ☐ a party or parties are filing a single brief in response to a longer joint brief.

☐ complies with the length limit designated by court order dated _____ .

☐ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** _____ **Date** _____
*(use "s/[typed name]" to sign electronically-filed documents)*

Feedback or questions about this form? Email us at forms@ca9.uscourts.gov

**Form 8**                                                         Rev. 12/01/22

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2025, I electronically filed the foregoing document with the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system.

I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the appellate CM/ECF system.

Dated: March 14, 2025                              /s/ George F. Carpinello